## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A., a Maryland Professional Association | * | |
| | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No.: _____ |
| UNITED STATES OF AMERICA c/o United States Attorney – District of Maryland 36 South Charles Street, 4th Floor Baltimore, Maryland 21201 | * | |
| | * | |
| | * | |
| and c/o United States Attorney General U.S. Department of Justice 950 Pennsylvania Avenue, NW Washington, DC 20530-0001 | * | |
| | * | |
| | * | |
| and | * | |
| INTERNAL REVENUE SERVICE c/o United States Attorney – District of Maryland 36 South Charles Street, 4th Floor Baltimore, Maryland 21201 | * | |
| | * | |
| | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*          \*     \*     \*     \*     \*

## COMPLAINT FOR WRONGFUL LEVY OF PROPERTY UNDER 26 U.S.C. § 7426

### I.     Introduction

1.     Plaintiff, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. ("Plaintiff"), by and through its undersigned counsel, hereby petitions this Court for an order (i) enjoining Defendants, the United States of America and the Internal Revenue Service ("IRS") (collectively, "the United States") from enforcing its levy against the Plaintiff and (ii) requiring the United States to return the specific property levied or, alternatively, granting a judgment in Plaintiff's favor for the amount

of money levied upon.  Plaintiffs also seek damages and costs associated with the wrongful levy by the United States.

## II.     The Parties

2.     Plaintiff is a professional association organized in Maryland and having its principal place of business in Baltimore, Maryland.

3.     At all times relevant, the Unites States acted by and through its agent, the IRS.  The United States is a proper defendant in this action under 26 U.S.C. § 7426, pursuant to 28 U.S.C. § 1346(e), and has specifically waived sovereign immunity for actions under 26 U.S.C. § 7426.

## III.     Jurisdiction and Venue

4.     This Court has jurisdiction over this civil action arising under the laws of the United States, including under 26 U.S.C. § 7426(a)(1).  Plaintiff seeks relief from the wrongful levy of property in which it claims an interest.

5.     Venue in this action is governed by 28 U.S.C. § 1402(c), requiring that a wrongful levy action under 26 U.S.C. § 7426 be prosecuted "in the judicial district where property is situated at the time of the levy."  Because the United States served a Notice of Levy on the operating account of Plaintiff, which is maintained at a branch in Baltimore, Maryland, venue is proper in this District.

## IV.     Statement of Facts

### Background

6.     Plaintiff is a well-respected law firm with its principal office in Baltimore, Maryland.  Plaintiff has been in existence for more than thirty years.

7.     Plaintiff is owned and operated by twenty-two (22) principals.  In total, Plaintiff has more than thirty attorneys that practice in a variety of different areas of the law, including

corporate transactions, litigation, real estate, estates and trusts, bankruptcy, tax and intellectual property.

8.      While not a party to this action, Lechim Holdings, Inc. ("Lechim") is a Maryland corporation formed on behalf of a client of Plaintiff in Maryland in 2001.

9.      Plaintiff and Lechim are, and always have been, completely separate entities and businesses.

10.     Plaintiff or its principals have served as legal counsel to Lechim and the owners of Lechim since it was formed.

11.     Lechim is owned by non-U.S. persons that are not affiliated with Plaintiff.

12.     During the years of 2010 through 2015, Plaintiff and Lechim both observed all corporate formalities in the operation of their respective businesses.  For example, both entities filed separate income tax returns and rendered required filings to the taxing authorities.

**"Alter Ego" Levy Issued by IRS Against Plaintiff's Operating Account**

13.     On May 12, 2022, Revenue Officer Erin Kennedy of the IRS served a Notice of Levy on PNC Bank, which was directed towards the operating account of Plaintiff.  *See* **Exhibit A** ("Notice of Levy").

14.     The Notice of Levy indicated that the taxpayer was "Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Alter Ego of Lechim Holdings, Inc."

15.     The Notice of Levy indicated that Plaintiff owed the IRS significant liabilities relating to a Form 1120 (corporate income tax) and for civil tax penalties for multiple periods.  The total liability claimed owed by Plaintiff to the IRS, as indicated on the Notice of Levy, was $1,543,929.29.

3

16.     Plaintiff did not owe any corporate income tax or civil penalties for the periods specified in the Notice of Levy.  The IRS acknowledges that Plaintiff does not owe any corporate income taxes or civil penalties.

17.     Although not specified in the Notice of Levy, the levy attached to all property and rights to property of Plaintiff in the possession of PNC Bank.

18.     The Notice of Levy indicated that "[a]lthough we have told you to pay the amount you owe, it is still not paid."  The IRS had never previously indicated to Plaintiff that these amounts were owed nor had Plaintiff ever been informed by the IRS that it was an "alter ego" of Lechim.

19.     Plaintiff was never served with the Notice of Levy.

20.     Plaintiff only received a copy of the Notice of Levy from PNC Bank after PNC Bank had frozen Plaintiff's operating account, as apparently directed by the IRS in the Notice of Levy.

21.     PNC Bank froze the amount of $1,543,929.29 in Plaintiff's operating account on May 12, 2022.  The operating account remains frozen and Plaintiff has been unable to access these funds for two months.

22.     The liabilities for which the United States levied Plaintiff's property were not liabilities of Plaintiff, but were instead liabilities of Lechim.  In the Notice of Levy, the United States directed the levy against the property of Plaintiff as a purported "alter ego" of Lechim, despite lacking any legitimate support for this assertion and with actual knowledge that Plaintiff is not an alter ego of Lechim.

**Plaintiff Is Not an "Alter Ego" of the Taxpayer**

23.     Maryland courts only apply the alter ego doctrine in "exceptional circumstances" where the proponent shows: "(1) complete domination, not only of the finances, but of policy and

4

business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own, (2) that such control [was] used by the defendant to commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or dishonest and unjust act in contravention of the plaintiff's legal rights, and (3) that such control and breach of duty proximately caused the injury or unjust loss." *Hilldreth v. Tidewater Equip. Co.*, 378 Md. 724, 838 A.2d 1204, 1212-1213 (2003) (citing 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.10 at 583-86 (1999 rev. vol.)).  The alter ego doctrine was designed for cases "when the corporate shield, if respected, would inequitably prevent a party from receiving what is otherwise due and owing from the person or persons who have created the shield."  *Maryland Electrical Industry Health v. Kodiak Util. Const.*, Civil No. JFM-02-3662, at *11 (D. Md. Oct. 27, 2003).  The IRS, and the federal courts, must apply relevant state law in making an alter ego determination.  Based on prior representations made to the United States Tax Court, the IRS knows that these circumstances do not apply and Plaintiff is not an alter ego of Lechim.

24.     In Maryland, even when necessary to "enforce a paramount equity," a corporate entity is not to be disregarded merely "to prevent an evasion of legal obligations – absent evidence of fraud or similar conduct." *Roley v. Nat'l Prof'l Exch., Inc.,* 474 F.Supp.3d 708, 726 (D. Md. 2020).

25.     Lechim did not engage in any fraud or similar conduct that would be a prerequisite for asserting the alter ego theory.  Even if Lechim owes the underlying liabilities, it did not create or otherwise control Plaintiff in order to prevent any evasion of its legal obligations – Lechim was a client of Plaintiff, not vice-versa.

4893-3900-5999, v. 1

26.     Plaintiff is not dominated by Lechim in any sense of the word.  Lechim is one of many legal clients of Plaintiff and does not control Plaintiff.

27.     Plaintiff has a separate existence from Lechim altogether.  Plaintiff's existence pre-dates Lechim and Plaintiff has met all other legal and financial obligations during the course of its more than 30-year existence.

28.     Substantially all of the principals of Plaintiff have no connection to Lechim whatsoever and are not aware of its existence.  Substantially all of the income, finances, and business practices of Plaintiff have nothing to do with Lechim – Plaintiff only receives an immaterial amount of fees for legal services rendered to Lechim.

29.     Plaintiff and Lechim do not commingle funds.  The only funds controlled by Plaintiff on behalf of Lechim are maintained and accounted for in Plaintiff's attorney trust account, as required by law.  Lechim does not have control over the operating account of Plaintiff.

30.     Plaintiff and Lechim both maintain separate and accurate corporate records and separately render filings with government agencies.

31.     Even though Plaintiff is not controlled in any sense by Lechim, the relationship between these entities did not cause any injury or loss to the IRS.  Instead, the "loss" to the IRS (i.e., taxed owed by Lechim) was occasioned by disallowances of net operating losses of Lechim that stemmed from an audit of another separate partnership in which Lechim held a partnership interest.

32.     Given that the adjustments to the partnership in which Lechim held an interest were from 2006 through 2008 and caused computational adjustments and taxes owed by Lechim for 2010 through 2015, but did not become finalized until approximately 2021, it is not clear what

time period or act the IRS could conceivably suggest caused the injury to the IRS and for which Lechim was in control of Plaintiff.

33.     Based on prior representations of the IRS, the IRS knows that Plaintiff is not the alter ego of Lechim under any good faith interpretation of any laws or regulations that would bear on the situation.

**The IRS and Chief Counsel Directed the Alter Ego Levy at Plaintiff in Bad Faith**

34.     Prior to issuing an alter ego levy, the IRS is required to attempt to collect directly from the taxpayer.  The IRS has not meaningfully attempted to collect any of the underlying liabilities directly from Lechim and cannot, therefore, even know whether collection is viable.

35.     Prior to issuance of the alter ego levy, Lechim was cooperating with all collection efforts of the IRS.

36.     The IRS was aware of potential assets that it could pursue directly from Lechim, including its ownership of substantial accounts receivable, and unilaterally chose to not pursue those funds to satisfy Lechim's liabilities.

37.     Instead, the Notice of Levy issued on an alter ego basis is a malicious and abusive tactic taken to illegally seize funds from Plaintiff rather than to collect from Lechim.  Again, the IRS knows that Plaintiff is not the alter ego of Lechim.

38.     The IRS issued the Notice of Levy against Plaintiff with intentional disregard of laws and regulations in order to harass and persecute Plaintiff, thereby abusing its statutory and regulatory authority.

39.      The Office of Chief Counsel of the Internal Revenue Service ("Chief Counsel"), the legal advisor to the IRS, intentionally and maliciously directed the IRS to make the alter ego

4893-3900-5999, v. 1

levy determination in a manner attempting to negate any procedural rights that Plaintiff would normally receive prior to being deprived of property rights.

40.     Chief Counsel intentionally directed the IRS to make the levy in this manner because it knew that Plaintiff would be required to engage in expensive and lengthy litigation in order to vindicate its rights, circumventing the normal procedural safeguards ensured by the Internal Revenue Code and the Taxpayer Bill of Rights.

41.     The IRS is aware of the potential to take "abusive" collection actions against third parties under an alter ego theory to circumvent pre-deprivation rights normally afforded taxpayers. The Taxpayer Advocate Service has specifically denounced these tactics.  *See* Taxpayer Advocate Service, Legislative Recommendation: Amend IRC §§ 6320 and 6330 to Provide Collection Due Process Rights to Third Parties (Known as Nominees, Alter Egos, and Transferees) Holding Legal Title to Property Subject to IRS Collection Actions, available at: https://www.taxpayeradvocate.irs.gov/wp-content/uploads/2020/08/Legislative-Recommendations-The-IRS-Should-Provide-Collection-Due-Process-Rights-to-Third-Parties-Holding-Property.pdf (last accessed July 19, 2022) (citing reports stating that IRS actions are "abusive" and that IRS provides "illusory" due process).

42.     The IRS is aware that third party levy actions require advance approval from Chief Counsel and that an Appeals Officer "may be reluctant to override counsel" in an appeal filed under the CAP procedures, in contravention of the underlying purpose of Appeals.  *Id.*

43.     The IRS is also aware that, under existing interpretations of the regulations by the IRS, third parties obtain no protection under Collection Due Process, which is fundamentally unfair and can produce unjust results.  *Id.*  An alleged alter ego is also required to engage in a time-

8

consuming and expensive process, including litigation in federal district court, in order to vindicate its rights and those costs may exceed the person's available financial resources.  *Id.*

44.     Both the IRS and Chief Counsel directed the alter ego levy against Plaintiff in order to produce this illegal and unfair result and prevent Plaintiff from seeking meaningful redress through the administrative appeals process.

### Plaintiff Not Afforded Required Procedural Due Process

45.     Plaintiff was not afforded any meaningful opportunity to challenge this illegitimate and unsupported position of the IRS (i.e., that Plaintiff was an alter ego of Lechim) and/or did not otherwise receive any due process rights prior to the seizure of its property.

46.     Pursuant to 26 U.S.C. § 6330(a)(1), "[n]o levy may be made on any property or right to property unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made."  These hearings are referred to as "Collection Due Process" hearings and allow taxpayers to challenge the propriety of seizures, obtain an impartial review, and require an investigation before such actions are taken.  These hearings are designed to guarantee that standards of procedural due process are satisfied.

47.     Plaintiff was never afforded with any notice, as required by 26 U.S.C. § 6330(a)(1), and was, therefore, unable to request a Collection Due Process hearing.

48.     In addition, pursuant to 26 U.S.C. § 6331(d), no levy may be made against any property of a person with respect to any tax until the Secretary furnishes notices of an intent to make such levy.  That notice must be rendered by specified means and must be provided thirty (30) days in advance of the levy.

49.     Plaintiff was never provided with any required notice in advance of the levy, as specified by 26 U.S.C. § 6331(d).

**Plaintiff Requests Collection "Appeal" and IRS Provides No Legitimate Review**

50.     In addition to statutory rights pursuant to 26 U.S.C. § 6330(a)(1), the IRS is required to provide administrative rights to taxpayers under the Collection Appeals Program (CAP) procedures.  *See* Internal Revenue Manual ("IRM") 5.1.9.1.1 (08-30-2018).

51.     The CAP procedures are set forth in the IRM and the IRS is required to follow all procedures set forth in the IRM.  The CAP procedures allow taxpayers or third parties to appeal collection actions taken by the IRS, including actual or proposed levies or other seizure actions.

52.     On June 1, 2022, in response to the Notice of Levy, Plaintiff appealed the Notice of Levy pursuant to the CAP procedures ("the CAP Appeal").

53.     Within the CAP Appeal, Plaintiff noted specifically that it was not the alter ego of Lechim and provided support for its assertions.  In particular, Plaintiff indicated that it was a law firm (and was not an extension of Lechim), Lechim did not have the same owners or individuals in charge as Plaintiff, and that the entities did not commingle funds.  Based on these facts, there was no basis to affirm the alter ego levy of the IRS.

54.     In its CAP Appeal, Plaintiff also indicated that the Notice of Levy violated rights conferred by the Taxpayer Bill of Rights, including the right to be informed, the right to challenge the position of the IRS, and the right to be heard.

55.     As required by the terms of the CAP procedures, Plaintiff first expressed disagreement, and requested a managerial conference, with the manager of the revenue officer issuing the Notice of Levy.

56.     On June 2, 2022, the managerial conference was held with Plaintiff.  The manager of Revenue Officer Erin Kennedy, Michael Desrosiers, did not provide any factual basis for the

issuance of the Notice of Levy.  Further, the manager did not provide any information to confirm whether required procedures had been followed by the IRS prior to issuance of the Notice of Levy.

57.     During the managerial conference, counsel for Plaintiff specifically requested the facts or documentation underlying the alter ego determination by the IRS and related Notice of Levy, which are required to be memorialized prior to issuing an alter ego levy.  The manager, Michael Desrosiers, acted in an unprofessional manner and belligerently refused to provide this information or otherwise explain the position of the IRS.  Instead, the manager indicated that no information could be provided based on the frivolous position that such documents were subject to attorney-client privilege.

58.     Instead of providing any factual basis, the manager, Michael Desrosiers, indicated that the Notice of Levy was appropriate because it had been "approved by counsel."  When asked by counsel for Plaintiff, the manager refused to provide the approval of counsel or anything else that might shed light on the purported basis of the levy.  The manager summarily affirmed the levy action taken by the revenue officer.

59.     Since the IRS could not provide any factual support upon request, the alter ego levy was not based on any facts or documentation or, alternatively, was based on information that had been fabricated or misrepresented by representatives of the IRS.

60.     On June 6, 2022, the manager forwarded the CAP Appeal to the IRS Independent Office of Appeals ("Appeals"), as required.  The CAP procedures dictate that collection appeals are of utmost importance and should be heard by Appeals as soon as practicable, generally within a few business days.

61.     Plaintiff was not contacted by Appeals Officer Andrea Etchison of Appeals concerning the CAP Appeal until June 23, 2022 – three (3) weeks after first requesting an appeal

11

relating to the Notice of Levy.  During this time period, Plaintiff continued to suffer from a substantial economic hardship as it was unable to access funds in its operating account.

62.     When contacted by Appeals concerning the Notice of Levy, rather than review the merits of the underlying action, Appeals Officer Andrea Etchison had already taken a position to affirm the Notice of Levy.

63.     Appeals indicated that it was only required to ensure that relevant procedures had been followed for the issuance of the Notice of Levy and that it was not required to ensure that the basis for the action was legitimate and not entirely fabricated.

64.     Appeals Officer Andrea Etchison indicated that managerial approval for issuance of the Notice of Levy had been obtained by the IRS on July 14, 2021; however, although Chief Counsel is only required to provide concurrence as to that approval in order to satisfy internal procedures, Chief Counsel did not provide its approval until May 9, 2022 – three days before the levy was actually issued.

65.     The IRS is aware that, in addition to required CDP rights under 26 U.S.C. § 6330, a taxpayer is afforded appeal rights referred to as an "Equivalent Hearing," so long as such hearing is requested within one year from certain collection notices, specifically a "Final Notice of Intent to Levy" and a "Notice of Federal Tax Lien."

66.     The IRS was also aware that a Final Notice of Intent to Levy had been issued to Lechim on November 30, 2020 and that a Notice of Federal Tax Lien had been issued to Lechim on February 16, 2021.  In order to avoid having either Lechim or Plaintiff contest the merits of this alter ego determination – as IRS procedures would specifically require  – Chief Counsel intentionally withheld its concurrence until after the one-year period for Equivalent Hearing rights had lapsed and it could be certain that appeal rights were not requested by Lechim.

67.     Chief Counsel specifically directed this delay as it knew that neither Lechim nor Plaintiff was aware of its intent to issue an illegal Notice of Levy on an alter ego basis and that it would be much easier to justify its actions and/or direct it be affirmed in a CAP proceeding, rather than in a CDP hearing or an Equivalent Hearing.

68.     Contrary to the statement of Appeals Officer Andrea Etchison, in CAP appeals, Appeals is required to review the entire case for appropriateness based on the law, regulations, policy, and procedures, considering all relevant facts and circumstances.  IRM 8.24.1.3.8 (09-28-2021).

69.     Accordingly, even if specific notice requirements are satisfied (i.e., the "relevant procedures"), Appeals may not affirm a levy if there is no underlying basis for the levy.  For example, Appeals may not affirm a levy on third parties or those that do not owe tax based on sending erroneous notices or a false narrative.

70.     On June 28, 2022, subsequent to an initial discussion with Appeals Officer Andrea Etchison where it was apparent that Appeals was already predisposed to affirm the decision of the IRS, Plaintiff submitted correspondence to Appeals concerning perceived violations of its rights.

71.     In particular, within the correspondence of June 28, 2022, Plaintiff raised the following issues concerning the handling of the matter by both the IRS and Appeals and the lack of any basis for an alter ego determination:

(a) The Appeals Officer (i.e., the representative of Appeals) handling Plaintiff's appeal was the same individual that was already handling the appeal for Lechim, the alleged alter ego.  The handling of both appeals violated procedures requiring that the Appeals Officer be independent, including not having previously been involved with an appeal relating to the same taxpayer.

13

(b) The IRS had not provided any of the underlying factual basis for its allegations that Plaintiff was the alter ego of Lechim.  This failure violated procedures entitling Plaintiff to be involved in the process and to know of the basis for the decision of the IRS (i.e., the Taxpayer Bill of Rights).

(c) The IRS, through counsel, had already indicated to the United States Tax Court that it knew that Plaintiff was not the alter ego of Lechim.  In particular, the IRS, through its attorney Mary Ann Waters, in a motion to consolidate, alleged that the beneficial owners of Lechim were all "related, non-U.S. persons" (i.e., not Plaintiff).  The IRS, through its attorney Mary Ann Waters, also alleged that Lechim was managed and controlled by another individual and that Plaintiff managed transactions of Lechim through its client matter trust ledger (i.e., no funds were commingled and Lechim did not control Plaintiff).

(d) Appeals was required to provide or, alternatively, disregard certain communications made to it by the IRS under the ex parte rules applying to CAP appeals, which it refused to do.  In particular, Appeals specifically indicated it had reviewed and relied upon an opinion of counsel for the IRS in determining that the Notice of Levy was appropriate.

72.     As a result of that correspondence, on June 29, 2022, Appeals Officer Andrea Etchison indicated that the matter was being re-assigned to another representative of Appeals in order to ensure the appearance of independence.  Despite raising issues relating to ex parte communications, Appeals Officer Andrea Etchison maintained that no ex parte communications with the IRS had occurred.

73.     Despite the indication that the matter was being transferred, later that week, Appeals Officer Andrea Etchison indicated to counsel for Plaintiff that management of the IRS

14

had decided that she should retain jurisdiction over the matter (i.e., the matter was not re-assigned to another Appeals Officer despite the earlier indication).

74.     Appeals Officer Andrea Etchison, as well as Appeals Team Manager Vicki Burback-Koranda, did not meaningfully review any of the issues raised related to a lack of independence, ex parte rules, or the administrative requirements that must be satisfied in order to affirm a Notice of Levy under an alter ego theory.

75.     Furthermore, pursuant to the Internal Revenue Manual, in order to approve a Notice of Levy for an alter ego, the IRS must (1) document their internal history with a summary of facts that support the special condition request, (2) request approval from a group manager, (3) maintain a written approval of the manager in the case file, and (4) obtain review from the Advisory function of the IRS.  After all steps have been satisfied, the IRS must send the group manager approved request to Chief Counsel (the attorney for the IRS) for concurrence.  IRM 5.11.1.3.6 (11-24-2021).

76.     The IRS is not permitted to issue a Notice of Levy without first receiving legal review, advice, written direction, and approval from Chief Counsel as to the issuance of the levy and the language to be included on both pre-levy notices and the Notice of Levy.   IRM 5.11.1.3.6(6) (11-24-2021).

77.     Appeals Officer Andrea Etchison refused to provide any substantive basis for the Notice of Levy, stating that all information concerning the action was subject to attorney-client privilege or, alternatively, that it was part of the administrative file that she was not required to provide pursuant to internal policies.

78.     As the IRS is required to document the facts relating to the alter ego determination and obtain approvals prior to seeking concurrence, it is not possible that the entire file would be

15

subject to attorney-client privilege.  Furthermore, there is no basis for asserting that underlying facts and documents are subject to the attorney-client privilege.

79.     Moreover, the ex parte rules prohibit the consideration by Appeals of information relating to the facts, merits of legal interpretations, or other items relating to the strengths of weaknesses of the action unless the other party (i.e., Plaintiff) is provided access to that information and is provided a meaningful opportunity to review and respond.  *See* Rev. Proc. 2012-18 (explaining the ex parte rules).

80.     Appeals was directed by the IRS – the opposing party in the CAP Appeal – to affirm its action without considering information provided by Plaintiff and to withhold information from Plaintiff in violation of laws, regulations, and procedures and contrary to all norms of fairness and procedural due process.

81.     On July 5, 2022, Appeals Officer Etchison issued a determination concerning the review of the Notice of Levy and the CAP Appeal.  That determination stated that "Appeals conducted a through [sic] review of the Revenue Officer's case history, the administrative file and transcripts of the periods in question.  The determination is that all legal and procedural requirements were met prior to the issuance of the alter ego levy.  Based on our review, the Revenue Officer acted appropriately when issuing the levy in question on 05/12/2022.  The issuance of the alter ego levy was in compliance with the applicable provisions of the Internal Revenue Code (IRC) and the Internal Revenue Manual (IRM).  Reversal of this levy action is not warranted based on the facts of this case."

82.     The IRM provides that the determination from Appeals must "clearly outline" the rationale for its decision.  IRM 8.24.1.3.8(14) (09-28-2021).  The IRM also indicates that both the government's position and the taxpayer's proposal must be discussed in the determination, along

with an analysis of facts and reference to statutory appeal rights.  IRM 8.24.1.3.8(15) (09-28-2021).

83.     The determination of Appeals does not include any outline or rationale for its decision.  It simply contains a statement that procedures were followed and does not meet the requirements set forth in the Internal Revenue Manual.

84.     The determination of Appeals does not discuss either the positions of the respective parties or the appeal rights of the taxpayer.  The determination is materially deficient in these respects.

85.     Appeals rendered a determination on the CAP Appeal affirming the decision of the IRS because it was directed to do so by the IRS and/or Chief Counsel without consideration of the laws, regulations, and procedures, and in direct contravention of its purpose and in order to harm Plaintiff without providing required procedural due process.

86.     On July 6, 2022, Plaintiff responded to the determination from Appeals and requested that the matter be elevated for further review.

87.     Within Plaintiff's response, Plaintiff indicated again that Appeals had not retained independence, as required, and had failed to abide by procedures relating to ex parte communications and the requirement to provide information to the appealing party.  In addition, Plaintiff indicated that Appeals had failed to verify all procedural requirements and did not provide a sufficient explanation or rationale for its decision.

88.     Subsequently, Appeals Team Manager Vicki Burback-Koranda responded to counsel for Plaintiff and indicated that the matter was final and would not be reviewed further.  Appeals did not provide any substantive basis for its decision or provide any further rationale for

its decision, as required by its own procedures.  Appeals did not provide any explanation of the additional statutory rights available to contest the wrongful levy, as required.

89.     Plaintiff has no further administrative appeal rights with respect to this wrongful levy and has exhausted all potential administrative remedies to resolve this wrongful levy.

90.     Any attempts to make any further administrative claims for damages associated with this wrongful levy would be futile – Appeals has already erroneously indicated that the wrongful levy under an alter ego basis was permitted.  The same representatives would be making the same decision and there is no reason to believe the decision would change, given their prior course of conduct.

**The Taxpayer (Lechim) Has No Past or Present Interest in the Levied Property**

91.     At all times, the only person or entity with any interest in the levied property (i.e., the operating account of Plaintiff) has been Plaintiff.  Plaintiff is the sole and exclusive owner of all right and title in funds deposited in its operating account at PNC Bank.

92.     Neither Lechim nor any other person has ever held any interest – ownership or otherwise – in the operating account of Plaintiff.  Lechim has held funds in an escrow account (i.e., a lawyer's trust account) maintained by Plaintiff; however, those funds are not commingled with the operating account of Plaintiff and separate accounting is maintained for each client's funds within the escrow account, as required by law.

**REQUEST FOR RELIEF**
**Relief from Wrongful Levy – 26 U.S.C. § 7426(a)(1)**

93.     Plaintiff re-alleges paragraphs 1 through 92 above as if fully set forth herein.

94.     The United States has levied the property and rights to property of Plaintiff, despite the fact that Plaintiff is not the taxpayer for the assessed tax and related liabilities that the United States seeks to collect through the levy and, furthermore, because Plaintiff is not an alter ego of

such taxpayer.  The taxpayer assessed with and owing the tax (i.e., Lechim) has no interest in the levied property.  Accordingly, the United States' "levy is upon property in which the taxpayer had no interest at the time the lien arose or thereafter," and is wrongful under 26 U.S.C. § 7426(a)(1) and C.F.R. § 301.7426-1(b).

95.     Plaintiff has exhausted all necessary administrative remedies for recovery of the wrongfully levied property.

96.     Plaintiff is entitled to reasonable litigation costs incurred in connection with this action, pursuant to 26 U.S.C. § 7430.  Plaintiff is also entitled to recover economic damages sustained as a proximate result of the United States' reckless or intentional or negligent disregard of relevant law, and for the costs of the action, pursuant to 26 U.S.C. § 7426(h).

**WHEREFORE**, Plaintiff prays for the following relief:

A.  For an order under 26 U.S.C. § 7426(b)(1) enjoining the United States from enforcing the levy issued on May 12, 2022;

B.  For an order under 26 U.S.C. § 7426(b)(2) requiring the United States to return the wrongfully levied property in the possession of the United States or, alternatively, granting judgment in Plaintiff's favor for the amount of money levied upon;

C.  For Plaintiff's reasonable litigation costs, including but not limited to attorney's fees, as provided by 26 U.S.C. § 7430;

D.  For Plaintiff's economic damages proximately resulting from the United States' reckless, intentional, or negligent disregard of the law, under 26 U.S.C. § 7426(h); and

E.  Such other and further relief as the Court may deem just, equitable, or proper.

4893-3900-5999, v. 1

Respectfully submitted,

August 23, 2022

  /s/ James P. Ulwick
James P. Ulwick, Bar No. 00536
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21201
Telephone: 410-347-7426
Fax: 410-539-1269
Email: julwick@kg-law.com


  /s/ Brandon N. Mourges
Brandon N. Mourges, Bar No. 29477
CREPEAU MOURGES
1344 Ashton Road, Suite 110
Hanover, Maryland 21076
Telephone: 667-900-9912
Fax: 667-999-0202
Email: brandon@usataxlaw.com

4893-3900-5999, v. 1