NEUBERGER, QUINN, GIELEN,                )
RUBIN & GIBBER, P.A.                          )
                                                           )
                         Plaintiff,                   )
                                                           )          Civil Action No.: 1:22-cv-02129-BPG
v.                                                       )
                                                           )
UNITED STATES OF AMERICA and    )
INTERNAL REVENUE SERVICE,         )
                                                           )
                         Defendants.              )

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................................................... 1

II.     STATEMENT OF UNDISPUTED FACTS............................................................. 2

III.    ARGUMENT .......................................................................................................... 6

     A.    SUMMARY JUDGMENT STANDARD ................................................... 6

     B.    ANALYTICAL FRAMEWORK FOR TAX COLLECTION ACTIONS BASED
         ON THE ALTER EGO DOCTRINE ................................................... 8

         1.   Burden-Shifting Framework......................................................... 8

         2.   State Law Determines Alter Ego Test .......................................... 9

     C.    THE ALTER EGO DOCTRINE UNDER MARYLAND LAW ...................... 12

     D.    NEUBERGER QUINN WAS NOT THE ALTER EGO OF LEHCIM ........... 16

IV.    CONCLUSION .................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Adams v. NVR Homes, Inc.,* 193 F.R.D. 243, 253 (D. Md. 2000) ..............................................17

*Aquilino v. United States,* 363 U.S. 509 (1960)................................................................... 10, 11

*Baltimore Line Handling Co. v. Brophy,* No. WDQ-09-3018, at *9-10 (D. Md. Aug. 30, 2010) .............16

*Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.,* 275 Md. 295, 309 (1975)..........................................passim

*Bennett v. Green,* No. JKB-15-3026, 2016 WL 2866859, at *1 (D. Md. May 16, 2016)..........................7

*Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003)................................7

*Bregman, Berbert Schwartz v. U.S.,* 145 F.3d 664 (4th Cir. 1998) ............................................10

*Brooke Grove Found., Inc. v. Bradford,* No. 17-cv-03364-PWG (D. Md. Dec. 4, 2018) ........................10

*Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) ..................................................................7

*Chaney Enterprises Ltd. P'ship v. Windsor,* 158 Md. App. 1...............................................18

*Cody v. United States,* 348 F. Supp. 2d 682, 694 (E.D. Va. 2004)..............................................11

*Damazo v. Wahby,* 259 Md. 627, 633 (1970) ....................................................................16

*Dean v. United States,* 987 F. Supp. 1160, 1164 (W.D. Mo. 1997)..............................................8

*Dixon v. Process Corp.*, 38 Md. App. 644, 646 (1978)..............................................................2

*Doughty v. Washington Metro. Area Transit Auth.*, No. CBD-14-2902, 2015 WL 9302946, at *2 (D. Md. Dec. 21, 2015)..........................................................................................7

*Drye v. United States,* 528 U.S. 49, 58 (1999).................................................................. 10, 11

*Eagan v. Calhoun,* 347 Md. 72, 87–88 (1997) ....................................................................18

*Flores v. United* States, 551 F.2d 1169,1174-5 (9th Cir. 1977).....................................................8

*Floyd v. Internal Revenue Service,* 151 F.3d 1295 (10th Cir. 1998) ..........................................11

*Gordon v. SS Vedalin,* 346 F. Supp. 1178, 1181 (D. Md. 1972).................................................17

*Hildreth v. Tidewater Equipment Co., Inc.*, 378 Md. 724, 733 (2003).................................. 13, 14, 16, 20

*Hill v. United States,* 844 F. Supp. 263, 270 (W.D.N.C. 1993) ..............................................11

*In re Vinales,* 268 B.R. 749, 757 (W.D. Va. 2001)..............................................................17

*Jenkins v. Commissioner,* T.C. Memo. 2021-54, at *32 (U.S.T.C. May 10, 2021) ..........................11

*John S. Clark Co. v. Faggert Frieden, P.C.,* 65 F.3d 26, 28-29 (4th Cir. 1995)) ..........................19

*Lowery v. Stovall,* 92 F.3d 219, 223, 225 (4th Cir. 1996)........................................................19

*Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 884 (1990) ..........................................................6

*Mecco, Inc. v. Capital Hardware Supply, Inc.,* 486 F. Supp. 2d. 537 (D. Md. 2007) ..........................10

*Old West Annuity and Life Insurance Co. v. Apollo Group,* 605 F.3d 856 (11th Cir. 2010)..................11

*Oxford Capital Corp. v. United States,* 211 F.3d 280, 283 (5th Cir. 2000).................................8

*Philadelphia Produce Credit Bureau v. New World Wholesale, Inc.,* No. SAG-15-498, 2015 WL 7008372, at *2 (D. Md. Nov. 10, 2015)......................................................................6

*Qun Lin v. Cruz,* 247 Md. App. 606, 639 (2020)................................................................17

*Ramlall v. MobilePro Corp.,* 202 Md. App. 20, 31 (2011).........................................................14

*Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.,* 126 Md. App. 294, 306 (1999) .....................................................................................................................passim

*Roley v. Nat'l Prof'l Exch., Inc.,* 474 F. Supp. 3d 708, 726 (D. Md. 2020)..............................21

*Schofield-Johnson, LLC v. United States Comm'r of Internal Revenue Serv. (In re Schofield-Johnson, LLC)*, 462 B.R. 539, 542 (Bankr. M.D.N.C. 2011)..............................................................11

*Serio v. Baystate Properties, LLC*, 209 Md. App. 545, 560 (2013)..................................................passim
*Sirona Dental Sys., LLC v. Stevenson Grp., Inc.*, No. CCB-12-1253 (D. Md. Jul. 25, 2013) ...................16
*Spotts v. U.S.*, 429 F.3d 248, 251 (6th Cir. 2005) .......................................................................11
*Stone v. Stone*, 230 Md. 248, 253 (1962)..................................................................................18
*Towe Antique Ford Foundation v. Internal Revenue Service*, 999 F.2d 1387, 1391 (9th Cir. 1993)........11
*U.S. v. Alexander*, No. 6:08-cv-03760-GRA, at *17 (D.S.C. Apr. 21, 2010)............................................11
*United States v. Craft*, 535 U.S. 274 (2002) ............................................................................10
*United States v. National Bank of Commerce*, 472 U.S. 713, 722 (1985) ...........................................10
*United States v. Scherping*, 187 F.3d 796, 801-2 (8th Cir. 1999).....................................................11
*United States v. Williams*, No. 1:17-cv-00278, *4 (M.D.N.C. Aug. 25, 2017) .........................................11
*Wolfe v. United States*, 798 F.2d 1241, 1244 n.3 (9th Cir. 1986) ....................................................11
*Wright Sols., Inc. v. Wright*, No. CBD-12-178, 2013 WL 1702548, at *8 (D. Md. Apr. 18, 2013)............7
*Zahra Spiritual Trust v. United States*, 910 F.2d 240, 242 (5th Cir. 1990) .......................................11

**Statutes**

Corp. & Assocs. Article, Annotated Code of Maryland, § 2-101(a) ........................................... 12

**Other Authorities**

G. Michael Epperson & John M. Canny, *The Capital Shareholders Ultimate Calamity: Pierced Corporate Veils and Shareholder Liability in the District of Columbia, and Virginia*, 37 Cath. U.L. Rev. 605, 605 (1988) .................................................................................. 12
Ryan Bottegal, *Comments: Liberalizing Maryland's Approach to the Corporate Veil*, 42 U. Balt. L. Rev. 821, 822 (2013) ............................................................................................... 12

**Rules**

Fed. R. Civ. P. 1 ................................................................................................ 7, 8
Fed. R. Civ. P. 56(e)(2) ........................................................................................... 6

**Constitutional Provisions**

6 U.S.C. ("I.R.C.") § 7426 ......................................................................................... 8
I.R.C. § 6321 ...................................................................................................... 10
I.R.C. § 6331 ...................................................................................................... 10
I.R.C. § 7426(a)(1) ................................................................................................. 8

## I.     **<u>INTRODUCTION</u>**

On May 12, 2022, the United States (through the Internal Revenue Service) served a

Notice of Levy on PNC Bank, which was directed towards bank accounts belonging to the law

firm of Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. ("Neuberger Quinn" or the "Firm").

The Notice of Levy indicated that Neuberger Quinn was the "alter ego" of Lehcim Holdings, Inc.

("Lehcim"), a corporate client of Neuberger Quinn.  According to the Notice of Levy, Lehcim

owed tax liabilities to the Internal Revenue Service for corporate income taxes and penalties for

the tax years of 2010 through 2015.  As a consequence of the levy, more than $1.5 million was

seized from the operating account of Neuberger Quinn – the account it uses to operate the law

firm, pay employees, and pay vendors or other third parties.

Neuberger Quinn sought to rectify this gross error immediately through available

administrative appeals with the Internal Revenue Service.  As admitted in the United States'

Answer, Neuberger Quinn was never directly provided with notice of the levy, was denied access

to statutory due process rights before issuance of the levy, and was denied access to any

information concerning the basis of the levy – all on the grounds that Neuberger Quinn was a

taxpayer separate and distinct from Lehcim.  Now, the United States takes the opposite position

in this litigation.

Summary judgment is appropriate here.  There are no material facts in dispute, and it is

crystal clear that the United States had no basis to claim that the Neuberger Quinn law firm is the

alter ego of its client.  Indeed, the United States admitted in its Answer that Neuberger Quinn is

not an owner of Lehcim, which is a fundamental prerequisite for seeking relief from the Firm

under an alter ego theory.  Nor can the United States even come close to presenting facts that

would allow it to fulfill the "herculean task" Maryland courts have required of parties who seek to pierce a corporate veil.[1]  Neuberger Quinn is entitled to judgment as a matter of law.

## II.    STATEMENT OF UNDISPUTED FACTS

Neuberger Quinn is a law firm that has practiced in Maryland for more than thirty years. **Exhibit 1** (Affidavit of Hillel Tendler, ¶ 3).  The Firm is a professional association formed pursuant to the laws of Maryland.  Neuberger Quinn is headquartered in Baltimore, Maryland and has more than thirty attorneys practicing in different areas of the law, including business planning, real estate, estates and trusts, litigation, and taxation.  The Firm has eighteen shareholders and officers, and four duly appointed directors.  All significant decisions concerning the operations of Neuberger Quinn are resolved by its directors, officers or shareholders in accordance with its governing documents and/or applicable corporate law in Maryland.  *Id.* at ¶¶ 4-5.

As with other law firms, Neuberger Quinn generates income by billing and collecting for services rendered to its legal clients.  The Firm maintains an operating account in order to accept deposits and make payments relating to the operation of its business.  The Firm also uses this account to pay its employees.  As required by law, Neuberger Quinn separately maintains an attorney trust account for funds held on behalf of its clients.  On behalf of its clients, Neuberger Quinn will accept funds directly from clients or from third parties that are deposited into an attorney trust account (and held for their benefit).  The Firm does not commingle funds with Lehcim or any other client.  Neuberger Quinn has filed all tax returns and paid all corporate

---

[1] *Dixon v. Process Corp.*, 38 Md. App. 644, 646 (1978) (in Maryland, piercing the corporate veil is a "herculean task").

income taxes due to the Internal Revenue Service and the United States does not contend

otherwise. *Id.* at ¶¶ 6-9.

Lehcim is a corporation formed under the laws of Maryland in 2001.  Lehcim is an entity

that was incorporated by Neuberger Quinn on behalf of Michel Konig, an individual client of the

Firm.  Mr. Konig and members of his immediate family are, and always have been, the ultimate

beneficial owners of Lehcim.  The Firm renders business and tax advice to both Mr. Konig and

Lehcim.  Lehcim filed Articles of Incorporation, has corporate Bylaws, has filed its annual

personal property returns, has annually filed income tax returns and is a corporation in good

standing in the State of Maryland.    Lehcim uses the same business address as Neuberger Quinn

on its tax returns because the Firm, along with outside accountants, maintains books and records

for Lehcim.  Pursuant to the instructions of Mr. Konig and for administrative convenience,

lawyers employed by the Firm serve as the officers of Lehcim and other entities. Lehcim has

operated in this manner since its inception.  Neuberger Quinn is neither a shareholder of Lehcim

nor is it a parent company of Lehcim.  None of the Firm's shareholders are shareholders of

Lehcim.    Neuberger Quinn has no economic interest in Lehcim. *Id.* at ¶¶ 10-20.

Over the last several years, Lehcim and other businesses in which it held an ownership

interest were subjected to income tax examinations by the Internal Revenue Service.  One of

these examinations ultimately led to litigation in the United States Tax Court.  In particular, a

partnership in which Lehcim was a partner, Ramat Associates, settled that matter with the

Internal Revenue Service and agreed to a substantial adjustment of its income.   Those

adjustments related to the tax years of 2006 through 2008.[2]  Lehcim, as a party to that matter as a

---

[2] Those adjustments related almost exclusively to (1) the disallowance of a deduction for a write-off of a worthless receivable made in connection with a residential real estate project in Israel and (2) the disallowance of a deduction relating to a loss on the settlement of a foreign liability.

partner in Ramat Associates, agreed with the Internal Revenue Service that the adjustments were subject to penalties for negligence, disregard of rules or regulations, and/or substantial understatement of income.  Due to the flow-through nature of the adjustments to Ramat Associates, the resolution of the litigation had the ultimate effect of increasing, or potentially increasing, Lehcim's taxable income in later years (i.e., 2010 through 2015) due to its impact on claimed loss carryforwards.   The Internal Revenue Service did not assert that any items causing the adjustments were attributable to fraud.  In that case, the Internal Revenue Service also acknowledged that Lehcim was owned by a non-U.S. person.[3] (Mr. Konig is a non-U.S. person). *Id.* at ¶¶ 12, 21-27.

Separately, the Internal Revenue Service examined and disallowed other tax deductions claimed by Lehcim on its tax returns for 2010 through 2015.  The Internal Revenue Service ultimately disallowed significant deductions for interest expense and loss carryforwards relating to years in that examination.  With respect to those adjustments, the Internal Revenue Service assessed additional tax, accuracy-related penalties, and late filing penalties; however, the Internal Revenue Service did not assert that any items causing the adjustments were attributable to fraud.  The adjustments from the examination of Lehcim, as well as the adjustments relating to the litigation involving Ramat Associates, are the exclusive basis for the liabilities underlying the levy at issue in this case.  *Id.* at ¶¶ 27-31.

The Internal Revenue Service has never asserted that Lehcim or Neuberger Quinn engaged in any fraudulent conduct with respect to any positions taken on their tax returns.  Other than providing legal counsel, Neuberger Quinn had no involvement in the  transactions that were

---

[3] Lehcim is wholly owned by a British Virgin Islands corporation, which is wholly owned by a Maryland trust.  The beneficiaries of the Trust are Mr. Konig and/or his family.  The United States is well aware of these facts.

the subject of the Internal Revenue Service's examination.  None of these adjustments had any financial impact whatsoever on Neuberger Quinn and no funds of Neuberger Quinn were involved in these transactions.  *Id.* at ¶¶ 25, 27, 30.

Many of the same employees of the Internal Revenue Service that were involved in these examinations and litigation are the same employees involved with collecting the liability and, ultimately, issuing the alter ego levy against Neuberger Quinn.  During the examination and right up to the time of the Levy, those employees and the Internal Revenue Service dealt with Lehcim as a separate corporation with its own counsel.  For example, Lehcim and its counsel provided financial information requested by the Internal Revenue Service in 2021.  More than a year later, on May 12, 2022, the Internal Revenue Service served the Notice of Levy on PNC Bank, directed towards the bank accounts of "Neuberger, Quinn, Gielen, Rubin & Gibber P.A., Alter Ego of Lehcim Holdings, Inc.," to satisfy various tax liabilities of Lehcim in the aggregate amount of $1,543,929.29.  Neuberger Quinn did not receive a Notice of Levy from the Internal Revenue Service and was only informed of the action by PNC Bank.  Those amounts levied by the Internal Revenue Service were immediately frozen by PNC Bank.  *Id.* at ¶¶ 33-36.

After the levy was issued, Neuberger Quinn filed an administrative appeal with the Internal Revenue Service in order to contest the validity of the action and to have the funds seized from its operating account returned.  Despite claiming that Neuberger Quinn was the alter ego of Lehcim, the Internal Revenue Service stated that Neuberger Quinn did not have access to pre-levy Collection Due Process rights – which would have entitled the Firm to litigate the propriety of the action in a court of law prior to the seizure – because it was a taxpayer separate from Lehcim and such rights were only afforded to affected taxpayers.  The Internal Revenue Service also stated that Neuberger Quinn was not entitled to receive a Notice of Levy or other

notification because Neuberger Quinn and Lehcim were separate taxpayers for tax collection purposes.  During the post-levy appeal (under the "Collection Appeals Program"), the Internal Revenue Service did not provide Neuberger Quinn with any documentation concerning the theory for the alter ego levy for reasons including that it contained confidential "return" information of another taxpayer (i.e., Lehcim).  *Id.* at ¶¶ 37-40.

As a result of these machinations by the Internal Revenue Service, it appears to be the Government's position that (1) the alter ego doctrine applies one way when it provides rights to the Government and the opposite when it provides rights to Neuberger Quinn and (2) internal procedures must be followed when they deny Neuberger Quinn rights and do not apply or have force when they provide the Firm with rights.

## III.   ARGUMENT

### A.   SUMMARY JUDGMENT STANDARD

"A motion for summary judgment is granted under Rule 56 of the Federal Rules of Civil Procedure if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.'"  *Philadelphia Produce Credit Bureau v. New World Wholesale, Inc.*, No. SAG-15-498, 2015 WL 7008372, at *2 (D. Md. Nov. 10, 2015) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990)).  As this Court has said:

> If the moving party makes its motion properly, the burden shifts to the non-moving party, whose "response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Unlike the moving party, the "opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." *Id.* The opposing party must provide additional materials to successfully defend against summary judgment and those materials must include assurances to the Court that they are authentic and reliable.

*Doughty v. Washington Metro. Area Transit Auth.*, No. CBD-14-2902, 2015 WL 9302946, at *2 (D. Md. Dec. 21, 2015).

"'The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of its pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Bennett v. Green*, No. JKB-15-3026, 2016 WL 2866859, at *1 (D. Md. May 16, 2016) (quotations omitted) (quoting *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003)).  Although the evidence is viewed in the light most favorable to the non-moving party, "[t]he court must . . . also abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Id.* (quoting *Bouchat*, 346 F.3d at 526).

Critically, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Rule 56 thus mandates the entry of "summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322 (internal quotation omitted).  Further, "a moving party who does not bear the burden of proof may be granted summary judgment 'if there is an absence of evidence to support the non-moving party's case.'"  *Wright Sols., Inc. v. Wright*, No. CBD-12-178, 2013 WL 1702548, at *8 (D. Md. Apr. 18, 2013) (quoting *Celotex*, 477 U.S. at 325).

**B.** **ANALYTICAL FRAMEWORK FOR TAX COLLECTION ACTIONS BASED ON THE ALTER EGO DOCTRINE**

      **1.** **Burden-Shifting Framework**

Neuberger Quinn seeks the return of the funds that were wrongfully levied upon by the United States, pursuant to 26 U.S.C. ("I.R.C.") § 7426.  Under that statute, if a levy has been made on property, any person "who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States."  I.R.C. § 7426(a)(1).  The elements of such a claim are that (1) Neuberger Quinn possesses an interest or lien in the property levied upon and (2) "such property was wrongfully levied upon."

Neuberger Quinn has the initial burden of proving title to the levied property and that the tax assessment is for taxes owed by another taxpayer.  *Dean v. United States*, 987 F. Supp. 1160, 1164 (W.D. Mo. 1997).  The burden then shifts to the government to produce substantial evidence showing a nexus between the property and the taxpayer.  *Id.  Flores v. United* States, 551 F.2d 1169,1174-5 (9th Cir. 1977) (holding that the government has the burden of persuasion on whether the levy was wrongful where the taxpayer has no interest in the property, based on principles of fair play and common sense; otherwise, taxes of a totally unrelated person could be collected and that person would be forced to prove a negative fact about which he has no information).

As stated by the United States Court of Appeals for the Fifth Circuit in *Oxford Capital Corp. v. United States*, 211 F.3d 280, 283 (5th Cir. 2000), "the majority of other circuits addressing the issue, ha[ve] held that the IRS must prove a nexus between the property levied upon and the taxpayer by substantial evidence while a minority of circuits have required only proof by a preponderance of the evidence…The policy behind requiring such a heightened

standard of proof is that the government has unique access to the information it used as a basis for its levy and…fairness mandates that the government come forward with substantial evidence of the connection between the property levied upon and the taxpayer." *See also id.* at 285 (indicating that government must have substantial evidence of alter ego status at time of an alter ego levy and would be a wrongful levy if such evidence was only compiled after-the-fact).

Here, it is clear that Neuberger Quinn has an interest in its own operating account. Accordingly, at this stage, the burden shifts to the United States to prove the legal and factual basis that Lehcim's debt can be enforced against Neuberger Quinn.  Since the United States claims that the legal basis for the levy is that Neuberger Quinn is the alter ego of Lehcim, and since whether or not one corporation is the alter ego of another is determined by state law (*see infra* at section III.B(2)), the Government must prove that Neuberger Quinn is the alter ego of Lehcim by clear and convincing evidence, the applicable standard in Maryland (*see infra* at section III.C).

Thus, the question in this Motion for Summary Judgment becomes whether the Government can carry its burden of proving sufficient facts to convince a reasonable finder of fact, by clear and convincing evidence, that Neuberger Quinn is the alter ego of Lehcim. Because the undisputed facts show that the Government cannot come close to satisfying this demanding standard, summary judgment is appropriate.

### 2. State Law Determines Alter Ego Test

Although the United States contends in its Answer that "alter ego is determined as a matter of federal common law in a federal tax case," (Answer, ¶ 23), this assertion is erroneous as a matter of law.   In determining whether a person has a property right that can be levied upon for federal tax purposes – whether under an alter ego analysis or otherwise – the case law is clear that state law controls.

The government may impose a lien (or take action to collect taxes) pursuant to I.R.C. §

6321, which provides "[i]f any person liable to pay any tax neglects or refuses to pay the same

after demand, the amount…shall be a lien in favor of the United States upon all property and

rights to property, whether real or personal, belonging to such person." *See also* I.R.C. § 6331

(stating that a levy may be made upon property subject to the lien under I.R.C. § 6321).  In

determining whether a federal tax lien attaches to a property interest under I.R.C. § 6321, courts

must apply the two-step analysis set forth in *Drye v. United States*, 528 U.S. 49, 58 (1999).  In

*Drye*, the Supreme Court stated the test as follows:

> We look initially to state law to determine what rights the taxpayer has in the
> property the Government seeks to reach, then to federal law to determine whether
> the taxpayer's state-delineated rights qualify as "property" or "rights to property"
> within the compass of the federal tax lien legislation.

*Id*.  The Court reaffirmed the test it approved earlier in *Aquilino v. United States*, 363 U.S. 509

(1960), which held that courts should look first to state law to determine the nature of the legal

interest a taxpayer has in the property the government seeks to reach and then to determine

whether those interests are sufficient to constitute property under federal tax collection standards.

*Id.* at 59.  State law must be applied to identify the property interest because the federal statute

"creates no property rights but merely attaches consequences, federally defined, to rights created

under state law." *United States v. National Bank of Commerce*, 472 U.S. 713, 722 (1985).  This

analysis has been confirmed by the Supreme Court and federal courts many times over.  *See,*

*e.g., United States v. Craft*, 535 U.S. 274 (2002) (applying *Drye*); *Bregman, Berbert Schwartz v.*

*U.S.*, 145 F.3d 664 (4th Cir. 1998) (applying *Aquilino*); *Mecco, Inc. v. Capital Hardware Supply,*

*Inc.*, 486 F. Supp. 2d. 537 (D. Md. 2007) (applying same test); *Brooke Grove Found., Inc. v.*

*Bradford*, No. 17-cv-03364-PWG (D. Md. Dec. 4, 2018) (applying same test).  Accordingly,

state law applies in making a determination as to whether Lehcim had any interest in the property

subject to levy (i.e., the operating account of Neuberger Quinn).   In order for Lehcim to have

any such interest, the United States must ultimately show that Neuberger Quinn is its alter ego

under Maryland law.[4]

Accordingly, this Court must apply Maryland law to determine whether the United States

can carry its burden to show that Neuberger Quinn is the alter ego of Lehcim.

---

[4] Every other district court in this circuit dealing with this issue has applied state law.  *See Cody v. United States*, 348 F. Supp. 2d 682, 694 (E.D. Va. 2004) ("question whether property is held by a taxpayer's alter ego or nominee is determined by reference to state law;" also citing *Drye, Aquilino*, and *Hill infra*); *United States v. Williams*, No. 1:17-cv-00278, *4 (M.D.N.C. Aug. 25, 2017) (applying state law for alter ego analysis in federal tax collection suit and citing to *Scherping*); *Hill v. United States*, 844 F. Supp. 263, 270 (W.D.N.C. 1993) (applying state law to determine interest of alleged nominee); *Schofield-Johnson, LLC v. United States Comm'r of Internal Revenue Serv. (In re Schofield-Johnson, LLC)*, 462 B.R. 539, 542 (Bankr. M.D.N.C. 2011) (applying state law to determine alter ego); *U.S. v. Alexander*, No. 6:08-cv-03760-GRA, at *17 (D.S.C. Apr. 21, 2010) (courts apply *Drye* and the state law analysis on alter ego is determinative).  Outside of the Fourth Circuit, every other circuit that has rendered a decision on the applicable choice of law in this context – i.e., the application of the alter ego doctrine in federal tax collection suits – has held that state law must apply.  *See, e.g., Old West Annuity and Life Insurance Co. v. Apollo Group*, 605 F.3d 856 (11th Cir. 2010) (citing other circuit precedent and stating "[o]ther circuits appear uniform in their application of state law"); *United States v. Scherping*, 187 F.3d 796, 801-2 (8th Cir. 1999) ("Generally, federal courts will look to state law to determine whether an entity is an alter ego of a taxpayer."); *Floyd v. Internal Revenue Service*, 151 F.3d 1295 (10th Cir. 1998) (applying Kansas state law in alter ego analysis); *Zahra Spiritual Trust v. United States*, 910 F.2d 240, 242 (5th Cir. 1990) ("In determining whether the appellants are the alter egos of the taxpayers, and whether the taxpayer has an interest in property to which the government's tax lien attached, we look to state law."); *Wolfe v. United States*, 798 F.2d 1241, 1244 n.3 (9th Cir. 1986) ("In determining whether there exists an alter ego from whom the Government may satisfy the obligations of the taxpayer, we appear to be bound by state law"); *Towe Antique Ford Foundation v. Internal Revenue Service*, 999 F.2d 1387, 1391 (9th Cir. 1993) (apply law of forum state in determining whether corporation is alter ego of taxpayer).  *See also Spotts v. U.S.*, 429 F.3d 248, 251 (6th Cir. 2005) (applying state law and endorsing application of state law to alter ego analysis).  And, as recently as last year, the United States Tax Court determined that state law must be used in applying the alter ego doctrine.  *Jenkins v. Commissioner*, T.C. Memo. 2021-54, at *32 (U.S.T.C. May 10, 2021) (citing various circuits and stating that there was not sufficient federal interest to supplant state arrangements and apply "federal common law," as argued by the Internal Revenue Service).

C.       **THE ALTER EGO DOCTRINE UNDER MARYLAND LAW**

Under Maryland law, a corporation may be formed for any lawful purpose.  Corp. & Assocs. Article, Annotated Code of Maryland, § 2-101(a). A Maryland corporation may have "perpetual existence," can sue or be sued, and can transact business in any lawful way.  *Id.* at § 2-103.  A Maryland corporation is thus a separate legal entity.  Under Maryland law, the debts of a corporation are its own, and are not the responsibility of the shareholders except in very limited circumstances.

Maryland law on the ability of a corporate creditor to "pierce the corporate veil" is, in the view of one commentator, "unique compared to the rest of the United States." Ryan Bottegal, *Comments: Liberalizing Maryland's Approach to the Corporate Veil*, 42 U. Balt. L. Rev. 821, 822 (2013).  "In fact, Maryland is considered to have the most stringent requirements, thus rendering it the state in which piercing the corporate veil proves most difficult."  *Id.*  Referring to veil-piercing in Maryland, other commentators state that "Maryland views [it] as only a theoretical remedy." G. Michael Epperson & John M. Canny, *The Capital Shareholders Ultimate Calamity: Pierced Corporate Veils and Shareholder Liability in the District of Columbia, and Virginia*, 37 Cath. U.L. Rev. 605, 605 (1988). The Maryland appellate courts agree that "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporate veil." *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc*., 275 Md. 295, 309 (1975); *Serio v. Baystate Properties, LLC*, 209 Md. App. 545, 560 (2013).

The Supreme Court of Maryland[5] set forth the general rule in 1975, and it has been repeatedly quoted by Maryland courts:

---

[5] On December 14, 2022, the Maryland Court of Appeals was renamed the Supreme Court of Maryland.  All references herein will use the Court's new name.

12

> [T]he most frequently enunciated rule in Maryland is that although the courts will, in a proper case, disregard the substance rather than form, as though the corporation does not exist, <u>shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity</u>.

*Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 310 (1975) (emphasis added) (quoted in *Hildreth v. Tidewater Equipment Co., Inc.*, 378 Md. 724, 733 (2003)); *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md. App. 294, 306 (1999); *Serio v. Baystate Properties, LLC*, 209 Md. App. 545, 559 (2013).  As the Appellate Court of Maryland[6] summarized in *Residential Warranty,* "a Maryland Court may pierce the corporate veil *only* based on fraud or proof that it is necessary to enforce a paramount equity." 126 Md. App. at 306 (emphasis added).

"Many Maryland cases have addressed fraudulent activity justifying disregarding the corporate entity." *Serio,* 209 Md. App. at 560-61.  "But, few decisions have explicated or applied the concept of enforcing a 'paramount equity' even though the oft-repeated rhetoric suggests it as a basis to disregard the entity distinct from fraud."  *Id.* at 561.

The alter ego doctrine falls within the "paramount equity" concept.  *Hildreth*, 378 Md. at 734-35.  It is applied "with great caution and reluctance and only in exceptional circumstances." *Id*.  No Maryland court to date has found those exceptional circumstances.

"Despite the proclamation that a court may pierce the corporate veil to enforce a paramount equity, arguments that have urged a piercing of the veil 'for reasons other than fraud' have failed in the Maryland courts." *Serio,* 209 Md. App. at 561.  The Appellate Court of Maryland has observed that "notwithstanding its hint that enforcing a paramount equity might

---

[6] On December 14, 2022, the Maryland Court of Special Appeals was renamed the Appellate Court of Maryland.  All references herein will use the Court's new name.

suffice as a reason for piercing the corporate veil, the [Supreme Court of Maryland] to date has not elaborated upon the meaning of this phrase or applied it in any case of which we are aware." *Residential Warranty,* 126 Md. App. at 307.  The Appellate Court of Maryland therefore held in 2011: "With no precedent approving this extraordinary remedy, we decline to pierce the corporate veil based on the paramount equity justification."  *Ramlall v. MobilePro Corp*., 202 Md. App. 20, 31 (2011) (quoted in *Serio,* 209 Md. App. at 561).

Multiple trial courts have been reversed by Maryland appellate courts for attempting to impose "alter ego" liability or "paramount equity" liability on a shareholder or owner of a corporation.  For example, in *Hildreth*, the Supreme Court reversed the trial court's holding that a paramount equity existed to pierce the corporate veil, despite the fact that there was evidence of bad faith, the corporation was not registered to do business in Maryland, the sole shareholder was directly involved in the transactions in question, and there was evidence of conscious evasion of responsibility.  378 Md. at 733-34.  *See also* the Appellate Court's summary of *Hildreth* in *Serio*, 209 Md. App. at 562.

In *Bart Arconti,* the trial court found that the owners of the corporation allowed it to become dormant and directed business away from it to other entities they owned for the purpose of evading legal obligations, leaving the company all but insolvent.  275 Md. at 305.  *See also* summary in *Hildreth*, 378 Md. at 733-34.  It further held that the shareholders had "personally directed their operations with only one purpose in mind": to divert business away from the corporation which had contracted with plaintiff "without leaving any real asset … remaining in that corporation."  275 Md. at 305.  The trial court accordingly pierced the corporate veil and held the individual shareholders liable for the corporation's debt.  *Id.*  The Supreme Court reversed, stating that it was unaware "of any Maryland case where, on facts resembling those

14

here, the Court has allowed the corporate entity to be disregarded merely because it wished to

prevent an 'evasion of legal obligations' – absent evidence of fraud or similar conduct." *Id.* at

312.

Similarly, the Appellate Court of Maryland declined to impose alter ego liability in

*Residential Warranty* despite evidence that the sole shareholder frequently moved corporate

funds from the corporate account to his personal accounts with no business justification,

rendering the company nearly insolvent, made these transfers even though he was aware of

significant structural defects in the construction of buildings the corporation had built and sold,

and subsequently covered up the problems when contacted by a representative of the plaintiff

warranty company.  126 Md. App. at 310-311.  The Appellate Court found no basis to impose

alter ego liability.  *Id.*  Rejecting federal cases that imposed shareholder liability in similar cases,

the intermediate appellate court stated: "Although these federal cases are persuasive authority

and factually similar to the instant case, our discussion, *supra*, demonstrates that Maryland is

more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil." *Id.*

at 309. In the absence of proof of fraud, the court held, liability would not be placed on the

shareholder.  *Id.* at 311.

In *Serio*, the Appellate Court reversed a trial court's finding of a paramount equity. The

trial court found that the company had significant debt and no assets.  209 Md. App. at 560.  The

shareholder misled the creditor and the court found that the shareholder evidenced an intent to

evade the company's legal obligations.  *Id.* at 567.  The trial court concluded that it would be

"inequitable" if the corporate veil was honored.  *Id.*  Nevertheless, the Appellate Court reversed,

finding that the circumstances presented there were no worse than the facts in *Bart Arconti*.  *Id.*

In the absence of fraud, the appellate court was unwilling to disregard the corporate form.

These cases evidence the intent of the Maryland courts to require respect for the corporate form and to shield shareholders from corporate debt except in unusual circumstances. This is reflected in the burden of proof Maryland places on parties who seek to pierce a corporate veil: proof by clear and convincing evidence. *See Sirona Dental Sys., LLC v. Stevenson Grp., Inc.*, No. CCB-12-1253 (D. Md. Jul. 25, 2013) (to support veil piercing, must establish facts by clear and convincing evidence) (citing *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 728 A.2d 783, 789-91 (Md. 1999); *Baltimore Line Handling Co. v. Brophy,* No. WDQ-09-3018, at *9-10 (D. Md. Aug. 30, 2010) (to pierce corporate veil, "evidence must be tantamount to fraud or invoke a paramount equity" and satisfy clear and convincing standard).

As will be seen below, the undisputed facts in this case are less compelling than the facts found by the trial courts in *Bart Arconti*, *Hildreth*, *Residential Warranty* or *Serio* and thus do not approach the level that Maryland courts require before the corporate veil can be pierced.

### D.   NEUBERGER QUINN WAS NOT THE ALTER EGO OF LEHCIM

Applying Maryland law here, there is no basis for the assertion that Neuberger Quinn was an alter ego of Neuberger Quinn – and it is not a close call.  There are at least four reasons why the United States cannot rely on the alter ego doctrine in the circumstances presented here.

#### 1.   The Alter Ego Doctrine Applies to Owners of the Target Company and Neuberger Quinn was Never an Owner of Lehcim

In cases where the alter ego doctrine applies – or the corporate veil is pierced generally – the result is that the corporate form is disregarded.  As a consequence, *shareholders or others who own the entity* may be held responsible for debts of the subject corporation.  The alter ego doctrine can make "*shareholders*…individually liable" under appropriate circumstances.  *See Damazo v. Wahby*, 259 Md. 627, 633 (1970) (emphasis added); *Gordon v. SS Vedalin*, 346 F.

Supp. 1178, 1181 (D. Md. 1972) (alter ego imposes liability on *shareholders*); *Qun Lin v. Cruz*, 247 Md. App. 606, 639 (2020) (piercing the corporate veil is "a tool that allows courts to disregard the corporate form and hold *shareholders* individually liable under certain circumstances") (emphasis added).

Here, there can be no dispute that Neuberger Quinn does not own Lehcim and never has. While the Firm may provide advice to Lehcim and its shareholders, veil piercing does not impose liability on third parties dealing with the corporation, such as Neuberger Quinn, or even that corporation's agents or officers – it imposes liability on the corporation's owners. *See, In re Vinales*, 268 B.R. 749, 757 (W.D. Va. 2001) ("If it is true that Vinales is not a shareholder, she cannot be held liable by piercing the corporate veil. The court is not aware of the veil piercing doctrine being applied to reach officers of a corporation."). Consequently, this Court can and should end the analysis before even applying the tests and factors set forth in *Hildreth* and *Bart Aconti*. Judgment should be entered for Neuberger Quinn.

> **2.**     **The United States Is Estopped from Denying That Neuberger Quinn and Lehcim Are Separate Entities.**

The essence of the alter ego doctrine is that the separate existence of a corporation can be disregarded in the exceptional circumstance when the stockholders or a parent corporation "fail to observe the corporate entity, operating the business or dealing with the corporation's property as if it were their own." *Hildreth*, 378 Md. at 734. But, where the evidence shows the separate existence of the two companies, the alter ego doctrine cannot be applied. *See Gordon v. SS Vedalin*, 346 F. Supp. 1178 (D. Md. 1972) (even where no stock issued and no meetings held, filing of articles of incorporation enough to establish separate existence). *See also Adams v. NVR Homes, Inc.,* 193 F.R.D. 243, 253 (D. Md. 2000) (mere interrelationship such as providing services are insufficient to treat one entity as the alter ego of the other).

In this case, the Government is already on record maintaining that Neuberger Quinn and Lehcim are separate corporations and Neuberger Quinn is not entitled to assert rights the Government said were reserved for Lehcim.  In the administrative proceedings that preceded this lawsuit, the Internal Revenue Service denied Neuberger Quinn access to Collection Due Process rights and relevant information, which are afforded to taxpayers facing collection actions that would have allowed Neuberger Quinn to adjudicate this issue in United States Tax Court prior to any levy action.  The Government's stated basis for this denial was that Lehcim and Neuberger Quinn are not the same taxpayer.

The United States cannot now be permitted to take precisely the opposite position: that Neuberger Quinn and Lehcim are one and the same.  Having admitted in the administrative proceedings that Neuberger Quinn and Lehcim are, in fact and law, two separate entities, the United States is estopped from arguing to the contrary, regardless of whether Maryland or federal law applies.

Maryland has long recognized the doctrine of estoppel by admission.  Estoppel by admission instructs "that a man shall not be allowed to blow hot and cold, to claim at one time and deny at another."  *Chaney Enterprises Ltd. P'ship v. Windsor*, 158 Md. App. 1, 39-40 (cleaned up) (quoting *Eagan v. Calhoun*, 347 Md. 72, 87–88 (1997).  Under this doctrine, "a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action." *Eagan*, 347 Md. at 88.  Notably, the test of estoppel by admission "is not as to whether the admission is true, but as to whether it would be contrary to public policy and good morals to allow it to be disputed."  *Stone v. Stone*, 230 Md. 248, 253 (1962).

18

Maryland courts also decline to permit a party to pierce a corporate veil – absent fraud – where that party has dealt with the corporation in the course of its business on a corporate basis. The Appellate Court of Maryland has explained that "the decisions of this Court and the [Supreme Court of Maryland] have made clear that the corporate veil will not be pierced to redress the breach of a contractual obligation in the absence of fraud when the party seeking to pierce the corporate shield has dealt with that corporation in the course of its business on a corporate basis. Referred to as corporate estoppel, and sometimes assimilated with the doctrine of incorporation de facto, such a course of conduct, particularly in a business-to-business context, precludes a request to pierce the corporate veil." *Serio,* 209 Md. App. at 566. Corporate estoppel applies here where the Internal Revenue Service has consistently dealt with Lehcim on a corporate basis, even going so far as to deny procedural rights to Neuberger Quinn with respect to the levy in question because the firm was a separate entity from Lehcim.

Federal courts apply the related doctrine of judicial estoppel. As stated in *Lowery v. Stovall*, 92 F.3d 219, 223, 225 (4th Cir. 1996) (citations omitted), "[a]cting on the assumption that there is only one truth about a given set of circumstances, the courts apply judicial estoppel to prevent a party from benefiting itself by maintaining mutually inconsistent positions regarding a particular situation. As we have previously observed, the doctrine is invoked to prevent a party from 'playing fast and loose with the courts,' from 'blowing hot and cold as the occasion demands,' or from attempting to 'mislead the [courts] to gain unfair advantage.'" The purpose of the doctrine is "to protect the essential integrity of the judicial process." *Id.* at 223 (quoting *John S. Clark Co. v. Faggert Frieden, P.C.,* 65 F.3d 26, 28-29 (4th Cir. 1995)). This doctrine is recognized where (1) the party to be estopped is asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding, (2) the prior

inconsistent position was accepted by the tribunal, and (3) the party to be estopped took

inconsistent positions intentionally for the purpose of gaining unfair advantage. *Id.* at 224.

Having used the separate legal existence of Lehcim and Neuberger Quinn as a basis to

deny the Firm the procedural rights available to a taxpayer in the administrative proceedings

relating to this levy, the United States is estopped from contending that the two corporations are

one and the same. The alter ego doctrine cannot apply in such circumstances, and summary

judgment for Neuberger Quinn is therefore required.

### 3. There is No Basis for the United States to Claim Fraud Here.

Assuming *arguendo* that the United States can avoid judgment on the grounds set forth

above – and it cannot – it still has to satisfy the elements of the alter ego doctrine. One of those

elements is that the alter ego doctrine can only be used to pierce the corporate veil where it is

either (1) necessary to prevent fraud or (2) necessary to enforce a paramount equity. *Hildreth*,

378 Md. at 735. Here, there are no facts that could conceivably establish fraud. Lehcim was

recently assessed with additional taxes stemming from an examination of its own tax return and

also that of a business that it owned from 2006 to 2008. These assessments relate to the

disallowances of deductions and loss carryforwards. These assessments caused Lehcim to owe

the taxes and penalties underlying the alter ego levy. The Internal Revenue Service sought to

collect these newly assessed taxes from Lehcim over the past year but was apparently unable to

do so because Lehcim does not have sufficient liquid assets. There is nothing that could be

considered fraud or similar conduct that would justify this alter ego levy.

As noted above, there is no case in Maryland that has ever applied the "paramount

equity" element necessary to justify piercing the corporate veil in the alter ego context where

fraud was not found. *See Hildreth*, 378 Md. at 738 (stating the court was unaware of any case

where a corporate entity was disregarded "absent fraud or similar conduct"). *See also Roley v.*

20

*Nat'l Prof'l Exch., Inc.*, 474 F. Supp. 3d 708, 726 (D. Md. 2020) (confirming analysis in

*Hildreth*).  *Residential Warranty,* 126 Md. App. at 307 ("arguments that have urged a piercing of

the veil 'for reasons other than fraud' have failed in Maryland courts").  Summary judgment is

appropriate here.

> **4.     There is No Basis for the United States to Contend That Lehcim has Disregarded the Corporate Form.**

Finally, the United States cannot produce any allegations or information to show that

Neuberger Quinn failed to observe the corporate entity (of Lehcim), operated Lehcim as if it was

its own, or completely dominated the finances and business practices of Lehcim.  Unlike other

cases in Maryland – where the alter ego doctrine still was held not to apply – Lehcim was

properly incorporated and is in good standing, Lehcim has filed all required income tax returns,

and maintained an attorney trust account with Neuberger Quinn (as its client).  As noted above,

the separateness of Neuberger Quinn and Lehcim should be respected.  The property seized from

Neuberger Quinn's operating account should be returned to it, as there was no basis for the

Government to levy it.

## IV.     <u>CONCLUSION</u>

For the reasons set forth herein, this Court must apply Maryland law regarding alter ego

to determine if the levy was wrongful.  Maryland law applies the alter ego doctrine in only the

rarest circumstances and when significant indicia of fraud is present – not simply when a law

firm's client owes taxes to the government.  For a number of reasons, the United States can make

no showing that comes close to fulfilling its "herculean" task in imposing liability on Neuberger

Quinn.  If the United States seeks to collect taxes from Lehcim, it must respect the corporate

entity and treat it as a separate taxpayer, just as it has done in every other context prior to taking

this unjustified and wrongful levy action against Neuberger Quinn.

Accordingly, Neuberger Quinn requests that the Court grant judgment in its favor and **<u>grant</u>** such other and further relief that the Court deems appropriate.

Dated:  December 20, 2022                    Respectfully submitted,

    <u>/s/ James P. Ulwick</u>
James P. Ulwick (Federal Bar No. 00536)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
(410 752-6030
(410) 539-1269 (facsimile)
julwick@kg-law.com

Brandon N. Mourges, Bar No. 29477
CREPEAU MOURGES
1344 Ashton Road, Suite 110
Hanover, Maryland 21076
Telephone: 667-900-9912
Fax: 667-999-0202
brandon@usataxlaw.com

*Attorneys for Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*