IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-02129-BPG |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**UNITED STATES' RULE 56(D) RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Introduction ................................................................................................................ 1

Factual Background ..................................................................................................... 1

Argument ..................................................................................................................... 3

I.    Neuberger Quinn's Early motion for summary judgment before responding to any discovery in this case should be denied or deferred under rule 56(d) ........................................... 3

   A.   This is a de novo proceeding, not an action for judicial review of an administrative determination, so discovery is necessary to the resolution of this case ..................................... 4

   B.   Alter ego status is not a matter of state law because it is not a "right to property," but the Court need not resolve this legal issue before any facts have been elicited in discovery ........... 6

   C.   The United States needs discovery to show a material issue of fact as to whether Neuberger Quinn is the alter ego of Lehcim ......................................................................... 11

      1.   Under either the federal common law or Maryland alter ego standard, the discovery that the United States has already served is relevant and material to issues on which Neuberger Quinn and its attorneys have not provided, cannot provide, or refuse to provide answers .................................................................................................................... 12

           a.   Discovery about whether Neuberger Quinn and Lehcim had an attorney-client relationship is necessary for the United States to be able to show whether Neuberger Quinn fraudulently misused its IOLTA account for non-clients .....12

           b.   Discovery about the financial transactions Neuberger Quinn conducted for Lehcim is necessary for the United States to be able to show whether Neuberger Quinn attorneys executed transactional documents or sham business arrangements purportedly on behalf of Lehcim…………………………………..14

           c.   Discovery about whether Neuberger Quinn attorneys abused their control of Lehcim's finances to fraudulently defeat collection of Lehcim's taxes by transferring more than $2 million out of Lehcim's IOLTA ledger……………15

           d.   Discovery about whether Neuberger Quinn paid its attorneys and used its other resources to perform corporate officer work for Lehcim is relevant to determining whether Lehcim and Neuberger Quinn comingled funds………16

           e.   Plaintiff's attorneys could not answer even the most basic questions at the administrative level about how Lehcim conducted and documented its business……………………………………………………………………… 18

      2.   The United States' needs, at a minimum, to take Deposition Testimony from Neuberger Quinn's designee(s) under Rule 30(b)(6) to obtain information in Neuberger Quinn's exclusive control ....................................................................................................... 19

II.   Even if Plaintiff's motion were not premature, it does not show Neuberger Quinn is entitled to summary judgment now ...................................................................................................... 20

   A.   Alter ego liability does not only attach to shareholders ................................................. 20

B.    Plaintiff's Argument that the United States is "estopped" from asserting that Neuberger Quinn is Lehcim's alter ego fails as a matter of law.................................................................. 22

Conclusion .................................................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Att'y Grievance Comm'n of Maryland v. Milliken*,
348 Md. 486 (1998)....................................................................................................13

*Audio Invs. v. Robertson*,
67 F. App'x 795 (4th Cir. 2003)...................................................................................4

*Austin v. Winter*,
286 F. App'x 31 (4th Cir. 2008)..................................................................................22

*Baruch v. Starwood Hotels & Resorts Worldwide, Inc.*,
773 F. App'x 158 (4th Cir. 2019)................................................................................13

*Cody v. United States*,
348 F. Supp. 2d 683 (E.D. Va. 2004) ..........................................................................7

*Consumer Fin. Prot. Bureau v. Access Funding, LLC*,
2018 WL 11425879 (D. Md. June 5, 2018) ................................................................19

*Damazo v. Wahby*,
259 Md. 627 (1970)....................................................................................................21

*Drye v. United States*,
528 U.S. 49 (1999)........................................................................................................6

*E.I. Du Pont De Nemours and Co. v. Kolon Industs., Inc.*,
637 F.3d 435 (4th Cir. 2012).......................................................................................3

*EEOC v. MacMIillan Bloedel Containers, Inc.*,
503 F.2d 1086 (6th Cir. 1974) .....................................................................................8

*Equal Rights Center v. Equity Residential*,
2016 WL 1258418 (D. Md. 2016) ...............................................................................7

*United States ex rel. Fadlalla v. DynCorp Int'l, LLC*,
2022 WL 703918 (D. Md. Mar. 9, 2022)..............................................................7, 9, 22

*Floyd v. IRS*,
151 F.3d 1295 (10th Cir. 1998) ...................................................................................8

*Fugazy Cont'l Corp. v. N.L.R.B.*,
725 F.2d 1416 (D.C. Cir. 1984)...................................................................................22

*Gordon v. S.S. Vedalin*,
    346 F. Supp. 1178 (D. Md. 1972) ........................................................................21

*Gordon v. United States*,
    83 F.3d 414 (4th Cir. 1996) ..............................................................................4

*Hildreth v. Tidewater Equip. Co.*,
    378 Md. 724 (2003) ..............................................................................10, 19, 21

*Hill v. United States*,
    844 F. Supp. 263 (W.D.N.C. 1993) ....................................................................7

*Jenkins v. Comm'r of Internal Rev.*,
    T.C. Memo 2021-54 (2021) ..............................................................................8

*Libutti v. United States*,
    107 F.3d 110 (2d Cir. 1997) ..............................................................................21

*Magesty Sec. Corp. v. U.S. I.R.S.*,
    2012 WL 1425100 (S.D.N.Y. Apr. 24, 2012) ....................................................21

*McCray v. Maryland Dep't of Transp.*,
    741 F.3d 480 (4th Cir. 2015) ..........................................................................3, 4

*NLRB v. Greater Kansas City Roofing*,
    2 F.3d 1047 (10th Cir. 1993) ..........................................................................8, 9

*Old West Annuity & Life Ins. Co. v. Apollo Grp.*,
    605 F3d 856 (11th Cir. 2010) ..........................................................................8

*Oxford Cap. Corp. v. United States*,
    211 F.3d 280 (5th Cir. 2000) ..........................................................................5

*Park v. Stewart*,
    2014 WL 1427419 (D. Md. Apr. 10, 2014) ........................................................3

*Politte v. United States*,
    2012 WL 965996 (S.D. Cal. Mar. 21, 2012) ......................................................5

*Portsmouth Ambulance, Inc. v. United States*,
    756 F.3d 494 (6th Cir. 2014) ..........................................................................22

*Prompt Staffing, Inc. v. United States*,
    321 F. Supp. 3d 1157 (C.D. Cal. 2018) ...................................................... *passim*

*Putney v. Likin,*
    656 F. App'x 632 (4th Cir. 2016) ............................................................................3

*Qun Lin v. Cruz,*
    247 Md. App. 606 (2020)..................................................................................21

*RaceRedi Motorsports, LLC v. Dart Mch., Ltd.,*
    640 F. Supp. 2d 660 (D. Md. 2009)...............................................................9, 16

*Ross Controls Inc. v. U.S. Dep't of Treas. I.R.S.,*
    164 B.R. 721 (E.D. Pa. 1994) ...............................................................................8

*Schlossberg v. Bell Builders Remodeling, Inc.,*
    441 Md. 671 (2015)...........................................................................................10

*Schoefield-Johnson, LLC v. United States Comm'r of Internal Rev. Serv.,*
    462 B.R. 539 (Bankr. M.D.N.C. 2011) ...............................................................7

*Serio v. Baystate Properties, LLC,*
    209 Md. App. 545 (2013).........................................................................11, 15, 16

*Thomas v. Peacock,*
    39 F.3d 493 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 349 (1996) ......................7, 8

*Towe Antique Ford Found. v. IRS,*
    999 F.2d 1387 (9th Cir. 1993) ..............................................................................8

*United States v. Alexander,*
    2010 WL 1643425 (D.S.C. April 21, 2010) .........................................................7

*United States v. Anmar,*
    827 F.2d 907 (3d Cir. 1987) ...............................................................................22

*United States v. Burnett,*
    452 F. App'x 569 (5th Cir. 2011)..........................................................................6

*United States v. Emor,*
    850 F. Supp. 2d 176 (D.D.C. 2012) ...................................................................21

*United States v. Kimbell Foods, Inc.,*
    440 U.S. 715 (1979)............................................................................................8

*United States v. Pisani,*
    646 F.2d 83 (3d Cir. 1981) ...................................................................................8

*United States v. Scherping,*
   187 F.2d 796 (8th Cir. 1999) ........................................................................8

*United States v. Williams,*
   2017 WL 3700901 (M.D.N.C. Aug. 25, 2017) .............................................7

*In re Vinales,*
   268 B.R. 749 (Bankr. W.D. Va. 2001) .......................................................21

*Vitol, S.a. v. Primerose Shipping Co. Ltd.,*
   708 F.3d 527 (4th Cir. 2013) ...................................................................9, 17

*Zahra Spiritual Tr. v. United States,*
   910 F.2d 240 (5th Cir. 1990) ........................................................................8

*Ziemkiewicz v. R+L Carriers, Inc.,*
   996 F. Supp. 2d 378 (D. Md. 2014) ...........................................................20

**Statutes**

26 U.S.C. § 6321 ................................................................................................6

26 U.S.C. § 6331 ................................................................................................6

26 U.S.C. § 6334 ................................................................................................6

26 U.S.C. § 7426 ............................................................................................4, 5

**Other Authorities**

26 C.F.R. § 301.7433-1(d) ................................................................................5

Fed. R. Civ. P. 30 .......................................................................................11, 15

Fed. R. Civ. P. 34(a) .......................................................................................15

Fed. R. Civ. P. 56(d) ............................................................................... *passim*

## INTRODUCTION

Less than two weeks after this Court entered a schedule in this case and only one day after receiving the United States' first set of requests for production and interrogatories, Plaintiff Neuberger, Quinn, Gielen, Rubin & Gibber, P.A ("Neuberger Quinn") moved for summary judgment. Plaintiff asserts the IRS already obtained all the information to which it is entitled during its examination of Lehcim Holdings, Inc. ("Lehcim") before issuing a levy. Neuberger Quinn, however, never testified or otherwise shared information with the IRS and the United States is not limited to information obtained during an administrative investigation in this case.

The United States needs, and is entitled to, an opportunity to engage in discovery on the many factors that courts have determined are relevant to the alter ego analysis. *See* Fed. R. Civ. P. 56(d). The United States has already propounded discovery on Neuberger Quinn as to many of those issues, focusing specifically on matters about which two of the firm's attorneys—acting on behalf of Lehcim— could not or would not answer during the IRS's investigation.

Further, summary judgment is not appropriate here. Neuberger Quinn's legal arguments -- that it prevails based on the lack of overlapping ownership or that the United States is estopped from asserting alter ego -- fail as a matter of law.

Therefore, the United States respectfully requests, pursuant to Federal Rule of Civil Procedure 56(d), that this Court deny or defer consideration of Plaintiff's motion for summary judgment until after the close of discovery.

## FACTUAL BACKGROUND

Lehcim is an entity that was created in 2011 by two attorneys at Neuberger Quinn. Based on the information obtained so far, it appears, that Lehcim was created to generate bogus losses to offset income for one of Neuberger Quinn's clients, Michael Konig. Lehcim appears to have no legitimate economic purpose. The officers, directors, and decision makers for Lehcim are attorneys

of Neuberger Quinn. Its assets consist of nothing more than funds in Neuberger Quinn's attorney trust account ("IOLTA account"), and its records appear to be just entries in Neuberger Quinn's Client-Matter Trust Ledger and a few promissory notes.[1] During years of examination by the IRS, Lehcim, and its officers were able to provide no evidence that Lehcim was a client of Neuberger Quinn. Indeed, such evidence is glaringly missing from any evidence on summary judgment. For these and many other reasons, the IRS determined that there was sufficient evidence to believe that Neuberger Quinn was the alter ego of Lehcim.

In May 2022, the IRS served a Notice of Levy on PNC Bank for "Neuberger, Quinn, Gielen, Rubin & Gibber, P.A, Alter Ego of Lehcim Holdings, Inc." Dkt. 1, Compl. ¶¶ 13-14; Dkt. 13, Answer at ¶¶ 13-14. In response to the levy, PNC Bank froze $1,543,929.29 in Neuberger Quinn's operating account. Dkt. 1, Compl. ¶ 21; Dkt. 13, Answer ¶ 21.

On August 23, 2022, Neuberger Quinn filed this action seeking a return of the funds levied. Dkt. 1, Compl.  On October 25, 2022, the United States answered. Dkt. 13, Answer. During the meet and confer with the United States about the schedule in this matter, Neuberger Quinn indicated that they wanted this case to move expeditiously and refused the United States request for additional time to complete discovery. See Dkt. 23, Joint Status Report. On December 9, 2022, this Court entered a schedule in this case that provided some of the additional time requested by the United States—discovery is to close on June 6, 2023, and dispositive motions have to be filed by July 31, 2023. Dkt. 24, Order. It did so as an accommodation to both parties. *See Id.*

---

[1] The attorney trust account is the bank account maintained by Neuberger Quinn to hold funds for the intended benefit of its clients or third persons as required by the Maryland Rules of Professional Conduct. MD R ATTORNEYS Rule 19-407. Client-Matter Trust Ledger is the record showing the deposits and disbursements for each client into its attorney trust account which Neuberger Quinn is required to maintain. *Id*.

Eleven days after the scheduling order was entered and discovery opened, the United States served its first set of requests for production and interrogatories. Declaration of Ryan O. McMonagle ("McMonagle Dec.") at ¶¶ 13, 15, Exs. A and B.[2] Despite the schedule providing for discovery, Neuberger Quinn filed this motion for summary judgment the next day. Dkt. 25, Pl. Mot.

The United States has not received a single document in response to any of its discovery requests and not a single deposition has been taken in this action.[3]

## ARGUMENT

## II. NEUBERGER QUINN'S EARLY MOTION FOR SUMMARY JUDGMENT BEFORE RESPONDING TO ANY DISCOVERY IN THIS CASE SHOULD BE DENIED OR DEFERRED UNDER RULE 56(D)

"Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). For that reason, summary judgment is ordinarily not appropriate "where parties have not had an opportunity for reasonable discovery." *E.I. Du Pont De Nemours and Co. v. Kolon Industs., Inc.*, 637 F3.d 435, 448-49 (4th Cir. 2012); *see also Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016); *McCray*, 741 F.3d at 483.

Where (as here) the opposing party raises that discovery is needed, "the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) . . . explaining why, 'for specified reasons, it cannot present facts essential to justify its opposition,' without needed discovery." *Park v. Stewart*, 2014 WL 1427419, at *3 (D. Md. Apr. 10, 2014) (quoting Fed. R.

---

[2] All exhibits referenced in this response are those attached to the McMonagle declaration.

[3] The United States is unable to respond to Neuberger Quinn's statement of undisputed facts because it has obtained no discovery in this case. As detailed below, there are numerous areas in which discovery is necessary.

Civ. P. 56(d)). "A Rule 56(d) motion must be granted where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *McCray*, 741 F.3d at 483–84 (internal citation omitted). The United States has filed an appropriate declaration with this brief to explain its position.

### A.   This is a de novo proceeding, not an action for judicial review of an administrative determination, so discovery is necessary to the resolution of this case

To justify its attempt to evade responding to any discovery, Neuberger Quinn repeatedly insists that the issue in this case is whether the IRS had sufficient evidence to conclude that Neuberger Quinn is the alter ego of Lehcim. In short, they attempt to limit the record of this case to whatever information the IRS was able to pry from Lehcim, Neuberger Quinn, or third parties administratively. This standard is the wrong one.

A suit for wrongful levy under 26 U.S.C. § 7426 is "the exclusive means" for a third-party to challenge a levy by the IRS of property that it alleges "does not, in whole or part, belong to the taxpayer against whom the levy originated." *Audio Invs. v. Robertson*, 67 F. App'x 795, 797 (4th Cir. 2003). In such an action, the third-party (*i.e.,* Neuberger Quinn) has the initial burden of proving that it has an interest in the property. *Gordon v. United States*, 83 F.3d 414 (4th Cir. 1996); *see also Prompt Staffing, Inc. v. United States*, 321 F. Supp. 3d 1157, 1172 (C.D. Cal. 2018). Once plaintiff's initial burden is met, the burden shifts to the United States to prove a nexus between the taxpayer and the property seized. *Id*.

Judicial review in an action for wrongful levy under 26 U.S.C. § 7426 is "de novo based on the evidence before the Court, not just the information the IRS had in its possession at the time of the levies." *Prompt Staffing, Inc.*, 321 F. Supp. 3d at 1172. So, "when a Court determines whether there was an abuse of discretion by the agency [under § 7426(a)(1)], the Court should not inquire into the specific actions of the IRS in this action. Rather, the focus of the inquiry is on the

ownership of the property based on the facts before the court." *Id.; see also Politte v. United States*, 2012 WL 965996, at *7 (S.D. Cal. Mar. 21, 2012) (Because this is a de novo review, "the question to be resolved by this Court based on the record before it is whether Plaintiffs are the nominees or alter-egos of [the taxpayer], and not whether the IRS was correct in reaching this conclusion.").[4]

Neuberger Quinn relies on one Fifth Circuit case to assert that this dispute is limited to the evidence that the IRS possessed at the time of the levy. Pl. Mot. at 8-9, *quoting Oxford Cap. Corp. v. United States*, 211 F.3d 280, 286 (5th Cir. 2000). The Fifth Circuit says Neuberger Quinn is wrong.

In *Oxford Capital*, the Fifth Circuit considered what evidence the United States may rely upon to show that a levy was issued for cause. 211 F.3d at 286. Although the Court noted that the IRS must have cause before it can issue a levy, it also noted that the United States is only required to produce substantial evidence of the nexus between the property levied upon and the taxpayer "after an opportunity to fully develop the factual record." *Id*. at 283. The opinion does not say when that opportunity ends. Neuberger Quinn asserts that time ends when the levy issues. On its own, the Fifth Circuit's opinion does not stand for such a limited record. It would also deny the United States the ability to use the tools that become available in civil actions, such as the ability to issue interrogatories or take depositions under Rule 30(b)(6), that are not available to the IRS.

---

[4] The information in the possession of the IRS is relevant when the plaintiff asserts a claim for damages under 26 U.S.C. § 7426(h)(1) asserting that "any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregarded any provision of [the Internal Revenue Code]." But a plaintiff must exhaust its administrative remedies before bringing a § 7426(h)(1) claim for damages by making an administrative claim to the IRS before suing. 26 U.S.C. §§ 7426(h)(2), 7433(d)(1), 26 C.F.R. § 301.7433-1(d). As the United States raised in its answer – and Plaintiff does not dispute in its motion for summary judgment – Plaintiff has not done that. Answer at 1 (ECF No. 13, 1)

Neuberger Quinn fails to note that other levied parties have made this same administrative-level review argument to the Fifth Circuit and lost. In *United States v. Burnett*, the Fifth Circuit clarified that the United States may "properly gather[] additional evidence after the levy." *United States v. Burnett*, 452 F. App'x 569, 570 (5th Cir. 2011). That is exactly what the United States seeks to do here.

### B.   Alter ego status is not a matter of state law because it is not a "right to property," but the Court need not resolve this legal issue before any facts have been elicited in discovery

Neuberger Quinn dedicates most of its motion to arguing that Maryland law applies to the question of whether Neuberger Quinn is the alter ego of Lehcim Holdings, rather than federal common law. Neuberger Quinn claims that Maryland provides a different and more demanding standard, in which alter ego liability is imposed only "where it is necessary to prevent fraud or to enforce a paramount equity." Pl. Mot. at 12-13 (*quoting Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc*, 275 Md. 295, 310 (1975)). Because, as discussed below, Rule 56(d) requires denial of the motion anyway, this question is academic at this time. But in any event, Plaintiff is wrong that Maryland law applies, and similarly wrong that the factors to be considered under Maryland law are meaningfully different from federal standards or that the standards are materially different.

Plaintiff's argument misrepresents how federal and state law operate in a case involving the reach of federal tax collection tools. Federal tax liens and levies allow the IRS to collect from "all property and rights to property of the taxpayer," subject to exemptions that do not apply here. 26 U.S.C. §§ 6321, 6331, 6334. To determine what qualifies as property or rights to property, courts look first to state law to determine the connection between the party and the property (*e.g.*, title). *Drye v. United States*, 528 U.S. 49, 52 (1999). Then they look to federal law to determine whether the federal tax lien attaches to those state-created rights. *Id*.

6

Where, as here, someone other than the taxpayer holds the property, state law determines the connection of the party to the property (what the property rights are) and federal law determines both whether those rights are "property or rights to property" under federal law *and* the connection of the party to the taxpayer whose federal tax liability the IRS is trying to collect (whose rights the lien reaches). *See, e.g.*, *Prompt Staffing, Inc.*, 321 F. Supp. 3d at 1170 (C.D. Cal. 2018) ("The alter ego and nominee doctrines are not the same. The nominee doctrine addresses the relationship between the taxpayer and the property sought to be accessed. . . . Conversely, the alter ego examines the relationship between the taxpayer and the entity holding title to the property. Alter ego focuses on whether the taxpayer's relationship to the title holder allows the taxpayer to retain the benefits of true ownership.").

"Alter ego" is determined as a matter of federal law because it is a *theory of liability* that determines "who is liable," rather than a property right in itself. *See Thomas v. Peacock*, 39 F.3d 493, 502-03 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 349, 353-54 (1996) ("A rule of veil-piercing determined *who* is liable for breaches of ERISA fiduciary duties"); *see generally United States ex rel. Fadlalla v. DynCorp Int'l, LLC*, 2022 WL 703918, at *3 (D. Md. Mar. 9, 2022); *Equal Rights Center v. Equity Residential*, 2016 WL 1258418, at *3 (D. Md. 2016).[5] That is why

---

[5] Plaintiff is correct that many cases treat alter ego as a question of state law. For the reasons above, the United States does not agree with that conclusion. And courts in the Fourth Circuit apply federal law when federal interests, such as enforcing a federal tax lien, are the issue. Further, Plaintiff neglects to mention that most of the district court cases it cites in footnote 4 of their brief do not analyze the choice-of-law standards. *Cody v. United States*, 348 F. Supp. 2d 683 (E.D. Va. 2004); *United States v. Williams*, 2017 WL 3700901, at *2 (M.D.N.C. Aug. 25, 2017). And yet other cases do not deal with alter ego but nominee liability. *Hill v. United States*, 844 F. Supp. 263 (W.D.N.C. 1993) (applying state law to nominee analysis); *Schoefield-Johnson, LLC v. United States Comm'r of Internal Rev. Serv.*, 462 B.R. 539, 542 (Bankr. M.D.N.C. 2011) (same); *United States v. Alexander*, 2010 WL 1643425, at *8 (D.S.C. April 21, 2010) (same). Plaintiff also overstates the weight of other authority on this point. The Tax Court did in fact conduct a choice-of-law analysis and determine that state law applied to alter ego

(continued...)

the United States can obtain a money judgment against an alter ego establishing its legal liability for unpaid taxes when no specifically identified property is at issue. *Ross Controls Inc. v. U.S. Dep't of Treas. I.R.S.*, 164 B.R. 721, 727 (E.D. Pa. 1994). And it is also one of the reasons why courts have applied federal common law to alter ego claims under other federal statutes. *Thomas*, 39 F.3d at 503 (breach of fiduciary duty under ERISA); *NLRB v. Greater Kansas City Roofing*, 2 F.3d 1047 (10th Cir. 1993) (liability for unfair labor practices); *United States v. Pisani*, 646 F.2d 83 (3d Cir. 1981) (liability for Medicare fraud); *EEOC v. MacMIillan Bloedel Containers, Inc.*, 503 F.2d 1086 (6th Cir. 1974) (liability under Title VII of Civil Rights Act).[6]

Further, Plaintiffs also fail to show whether and in what respect Maryland alter ego standard actually differs from the federal common law standard. The answer is: not much, if at all.

Under the federal common law standard, "the inquiry is twofold. First, the Court must determine whether a 'unity of interest' exists between the two entities sufficient to permit treatment of the two entities as one. Next, the Court considers whether doing so would produce an inequitable

---

determinations in the federal tax context, though only in a memo (unpublished) opinion. *Jenkins v. Comm'r of Internal Rev.*, T.C. Memo 2021-54 (2021). Only the Eighth and Tenth Circuits have expressly held that federal common law does not apply when the United States seeks to enforce its tax lien against the property of an alter ego. *Old West Annuity & Life Ins. Co. v. Apollo Grp.*, 605 F3d 856 (11th Cir. 2010); *Floyd v. IRS*, 151 F.3d 1295 (10th Cir. 1998). The Fifth, Eighth, and Ninth Circuits' statements on this question were in *dicta* in cases where the United States did not argue for the application of federal common law. *Zahra Spiritual Tr. v. United States*, 910 F.2d 240, 242 (5th Cir. 1990); *United States v. Scherping*, 187 F.2d 796, 801 (8th Cir. 1999); *Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391 (9th Cir. 1993). Indeed, courts in the Ninth Circuit have reached the opposite conclusion. *E.g.*, *Prompt Staffing*, 321 F. Supp. 3d at 1170.

[6] Plaintiffs' brief ignores all the cases discussing the standards the Supreme Court uses for deciding whether federal common law is applied to federal programs and statutes rather than state law. *See, e.g., United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726 (1979).

result." *United States ex rel. Fadlalla*, 402 F. Supp. 3d at 193.[7] In examining the relationship between the two entities, the Court looks to the commonly understood non-exhaustive list of factors, including: "the identity of ownership; commonality of officers and directors; the financial relationship between parent and subsidiary; whether the two maintain separate books, records, offices, and the like; and whether the property of one is used by the other as essentially its own." *Id.* (quoting *Hockett v. United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 60 (D.D.C. 2009)).[8] As to the second prong, courts ask "whether adherence to the corporate fiction [would] sanction a fraud, promote injustice, or lead to an evasion of legal obligations." *NLRB v. Greater Kansas City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993).

Under Maryland law, courts also employ a two-prong approach. Like the federal standard, Maryland courts employ a non-exhaustive list of factors to examine the nature of the relationship between the parties, including: "(1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records." *RaceRedi Motorsports, LLC v. Dart Mch., Ltd.*, 640 F. Supp. 2d 660, 669-70 (D. Md. 2009). But then, the doctrine is applied "only when

---

[7] Although *United States ex rel. Fadlalla* applied the alter ego standard in the context of a claim under the False Claims Act, the test is identical in the tax context. *See, e.g.*, *Prompt Staffing, Inc.*, 321 F. Supp. 3d at 1175.

[8] Other factors that courts have considered include: "Gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities and maintain proper corporate records, nonfunctioning of officers, control by a dominant stockholder, injustice or fundamental unfairness, intermingling of funds, overlap in ownership, common office space, the degrees of discretion shown by the allegedly dominated corporation, and whether the dealings of the entities are at arm's length." *Vitol, S.a. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 545 (4th Cir. 2013).

necessary to prevent fraud or to enforce a paramount equity." *Hildreth*, 378 Md. at 733. Given these two standards, there is no meaningful distinction.

Neuberger Quinn asserts that Maryland law requires the United States to show fraud or paramount equities and says the United States cannot meet that burden. Pl. Mot. at 13-16. But this Maryland law firm ignores more recent Maryland Supreme Court precedent.[9] In answering a Certified Question from the United States Bankruptcy Court for the District of Maryland, the Maryland Supreme Court confirmed that "[u]nder Maryland law, where there is no allegation of fraud, evidence or finding of fraud, the corporate veil may be disregarded nonetheless and personal liability established upon proof of a paramount equity." S*chlossberg v. Bell Builders Remodeling, Inc.*, 441 Md. 671, 672 (2015). Therefore, contrary to Neuberger Quinn's suggestion, paramount equities is a valid basis for disregarding the corporate form under Maryland law. Hence, even if Maryland law was to apply to this case, the United States can prevail by showing that either fraud or paramount equities justify disregarding Lehcim's corporate form.[10]

Further, Plaintiff's insistence that the "prevent fraud or enforce a paramount equity" prong could never be satisfied in this case fails on its own terms. The Supreme Court held in *United States v. Rodgers* that the United States has a "**paramount interest in prompt and certain collection of delinquent taxes.**" 461 U.S. 677, 711 (emphasis added). That is precisely the issue in this case: Neuberger Quinn's attempt to use Lehcim's corporate form to defeat the collection of taxes. Second, the second prong is satisfied when the entity used its domination of the subject

---

[9] The Maryland Supreme Court was named the Maryland Court of Appeals prior to December 14, 2022. All references to cases decided by the Maryland Court of Appeals will use the new Supreme Court name.

[10] Even if Neuberger Quinn was correct that the United States would have to prove fraud to prevail—which it is not—the United States would be entitled to discovery before it was required to prove its case on summary judgment.

entity to "commit fraud or wrong, to perpetuate the violation of [a] statutory or other positive legal duty, or dishonest and unjust act in contravention of [the creditor's] legal rights." *Serio v. Baystate Properties, LLC*, 209 Md. App. 545, 563 (2013). "Perpetuating" Lehcim's violation of its duty to pay taxes (if not also causing that violation in the first place) is also an issue in this case.

### C.   The United States needs discovery to show a material issue of fact as to whether Neuberger Quinn is the alter ego of Lehcim

Regardless of the alter ego standard the Court ultimately decides to apply here, the United States still needs discovery on the many factors that courts have determined are relevant to the alter ego analysis set forth above. As described in the attached Rule 56(d) declaration of Ryan O. McMonagle, the United States has already propounded discovery on Neuberger Quinn as to many of those issues, focusing specifically on matters about which the firm attorneys, Mr. Tendler and Mr. Neuberger, could not or would not answer questions before the IRS during Lehcim's examination.

The United States will need follow-up discovery after its first set as well, including, but not limited to, conducting depositions of both individuals and organizations. Fed. R. Civ. P. 30(b)(1), (6). Among other things, Neuberger Quinn itself has *never* answered questions (under oath or otherwise) about Lehcim. Mr. Tendler and Mr. Neuberger were testifying before the IRS as officers of Lehcim. And as officers, they could not answer many questions, including how Lehcim Holding was a client that could use Neuberger Quinn's IOLTA account.

Those answers may be different when asked to the Neuberger Quinn's or Lehcim representatives when they are obligated to testify about "information known or reasonably available" to the entities. Fed. R. Civ. P. 30(b)(6). Or they may be the same, since Lehcim's officers are also the very same Neuberger Quinn partners relevant here. Notably, only one of whom has submitted a declaration in this case. The United States needs to obtain information from *both*

Lehcim *and* Neuberger Quinn, at minimum, to be able to oppose a summary judgment motion on alter ego. It cannot—and should not—be forced to litigate this case solely based on information obtained from an audit, and the selective, self-serving declaration of only one Neuberger Quinn attorney attached to its motion.

> **1.    Under either the federal common law or Maryland alter ego standard, the discovery that the United States has already served is relevant and material to issues on which Neuberger Quinn and its attorneys have not provided, cannot provide, or refuse to provide answers**

The United States has already issued nine interrogatories and twenty document requests. Exs. A and B. The United States expeditiously served this discovery within two weeks of the Court entering a scheduling order in this case, at which time discovery was permitted to commence.

As set forth in the McMonagle Declaration filed with this brief, all of the discovery is relevant for the United States to show a material issue of fact as to: (1) whether Neuberger Quinn and Lehcim had an attorney-client relationship; (2) whether Neuberger Quinn conducted legitimate or sham business transactions "for" Lehcim; (3) whether Neuberger Quinn helped Lehcim evade collection by depleting its lone source of funds in Neuberger Quinn's IOLTA account; (4) how much Neuberger Quinn used its own resources to conduct Lehcim's corporate business; and (5) whether Lehcim observed any corporate formalities.

> *a.  Discovery about whether Neuberger Quinn and Lehcim had an attorney-client relationship is necessary for the United States to be able to show whether Neuberger Quinn fraudulently misused its IOLTA account for non-clients*

Throughout its brief, Neuberger Quinn calls Lehcim a "client," repeatedly suggesting that it was simply using its IOLTA account for Lehcim like it does for any client. Pl. Mot. at 1, 6*; see also* Dkt. 1, Compl. ¶¶ 8, 26. Yet Neuberger Quinn provides no support for this supposed attorney-client relationship, nor does it explain how it was permitted to deposit Lehcim's funds in its

attorney-trust account if Lehcim was not a client.[11] The United States needs – and has propounded – discovery on this topic.

The United States needs this discovery in part because of Mr. Tendler and Mr. Neuberger's evasive answers to questions during Lehcim's IRS examination. When asked how Lehcim became a client, Mr. Tendler answered that "[i]t was formed on behalf of, you know, [lists various clients], so by extension, it became a client. It was a client from birth." Ex. D at 37:15-38:5. When asked if Neuberger Quinn had "an engagement letter" or other documents describing the terms of engagement, Mr. Neuberger answered "I don't know." Ex. C at 39:10.[12]

Neuberger Quinn's summary judgment brief now claims that Lehcim is a client. But Mr. Tendler's declaration is silent on this issue. Silence on this point cannot justify granting summary judgment. Fed. R. Civ. P. 56(c)(1)(A); *Baruch v. Starwood Hotels & Resorts Worldwide, Inc.*, 773 F. App'x 158, 159 (4th Cir. 2019) ("[W]here the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied").

Similarly, when asked what Neuberger Quinn was engaged to do for Lehcim, Mr. Tendler answered "[n]othing, other than recording. I mean it was in a deal. You know, handling its money." Ex. D at 38:17-20. Later, he said "Lehcim was an entity where it was a member in a deal. I

---

[11] Of course, Lehcim could not use the account if not a client or related to a client issue. MD R ATTORNEYS Rule 19-404 (funds in the account must be "from a client or third person to be delivered in whole or in part to a client or third person"), 19-408 (generally barring commingling of client and non-client funds); *Att'y Grievance Comm'n of Maryland v. Milliken*, 348 Md. 486, 504 (1998) (attorney violated rules of professional conduct by, among other things, holding funds of non-clients in his attorney trust account).

[12] When asked the same question, Mr. Tendler answered "No." Ex. D at 38:21-4.

explained how we move the money around. That's it. There's nothing more I ever did for Lehcim." Ex. D at 38:11-15.

The United States' Interrogatories Nos. 4-7 ask Neuberger Quinn to describe separately all the matters on which Neuberger Quinn has provided legal representation to Lehcim, all work Neuberger Quinn performed on behalf of Lehcim that did not involve legal services, and all individuals at the firm who provided either kind of service. Ex. A at 6-7. The United States has also requested Plaintiff produce retention agreements, documents related to conflict checks, and all other documents Plaintiff alleges shows an attorney-client relationship, as well as bills and time entries for all legal and non-legal work Neuberger Quinn performed for Lehcim. Ex. B, Req. Nos. 1-4, 8-9. All of this is necessary to determine whether Lehcim was a client, as plaintiff alleges.

> *b.   Discovery about the financial transactions Neuberger Quinn conducted for Lehcim is necessary for the United States to be able to show whether Neuberger Quinn attorneys executed transactional documents or sham business arrangements purportedly on behalf of Lehcim*

Plaintiff also suggests that it was not "involved" in Lehcim's financial transactions despite allegedly being its lawyers in those transactions. Mot. at 5, Tendler Aff. ¶¶ 25, 27, 30. The Client-Matter Trust Ledger for money moving through Neuberger Quinn's IOLTA account under Lehcim's name references many loans. But Lehcim could not provide documentation for many of those loans and what loan documents it did provide were signed by Mr. Neuberger, sometimes on behalf of both lender and debtor. McMonagle Dec. ¶ 32. And he could not explain being on both sides of a transaction. For example, there was a "loan" in 2011 from Lehcim to Nightingale Ventures, Ltd. Mr. Neuberger signed as the "authorized person" for Nightingale. When asked how he was an "authorized person" to sign promissory notes on behalf of Nightingale, he said he was "certain" he was, but could not identify how he was authorized or who would know whether he was authorized. Ex. C at 158:3-10.

As far as the missing documents, when the IRS asked whether promissory notes exist for those loans, Mr. Neuberger testified either "I am not aware" or "I do not know." Ex. C at 225:13-220, 265:14:17. Mr. Tendler told the IRS there's a "good chance" that if a promissory note for any specific loan was not provided to the IRS during the examination, then it does not exist. Ex. D at 75:8-13.

However, Lehcim and Neuberger Quinn have never been forced to address whether such loan documents exist under the standards required under the Federal Rules. In discovery, the United States has requested "all documents related to the credits and debits shown on [Neuberger Quinn's] ledgers for Lehcim, including but not limited to any loan agreements and supporting documents, contracts, correspondence with third parties, or any other notes purporting to show a liability owed to a third party by Lehcim or a liability owed to Lehcim by a third party." Ex. B, Req. No. 13. It can now get answers using the Federal Rules—tools that were not available to the IRS during its examination of Lehcim. *See, e.g.*, Fed. R. Civ. P. 30(b)(6), 34(a)(1).

Again, discovery as to the many financial transactions of Lehcim reflected on Neuberger Quinn's Client-Matter Trust Ledger for Lehcim is necessary to determine whether there are triable issues of material fact. For example, it is necessary to test Neuberger Quinn's contention that it was not "involved" in Lehcim's transactions. And it is necessary to determine whether Neuberger Quinn helped Lehcim generate fraudulent financial transactions. These are all factual questions relevant to the alter ego analysis. *Serio*, 209 Md. App. at 563 (perpetuate the violation of a statutory or other positive legal duty).

> c. *Discovery about whether Neuberger Quinn attorneys abused their control of*
> *Lehcim's finances to fraudulently defeat collection of Lehcim's taxes by*
> *transferring more than $2 million out of Lehcim's IOLTA ledger*

Plaintiff's suggestion that the United States already has all the information it could need from Lehcim's examination conveniently ignores the fact that Neuberger Quinn attorney's

depleted Lehcim's funds in the firms IOLTA account after Lehcim received a notice of deficiency that was issued by the IRS on November 20, 2019. From November 20, 2019 until March 5, 2020, Mr. Neuberger transferred $2,627,280 of Lehcim's funds to repay purported "loans" from third parties. McMonagle Dec. ¶ 37, Ex. F. Based on the Client-Matter Trust Ledger, Lehcim's balance in Neuberger Quinn's IOLTA account has been zero since March 5, 2020.

The IRS interviewed Mr. Neuberger and Mr. Tendler in 2017. Accordingly, the IRS has not obtained information—other than the ledger—about these transactions from Lehcim.

The United States has thus requested "all documents related to the credits and debits shown on [Neuberger Quinn's] ledgers for Lehcim, including but not limited to any loan agreements and supporting documents, contracts, correspondence with third parties, or any other notes purporting to show a liability owed to a third party by Lehcim or a liability owed to Lehcim by a third party." Ex. B, Req. No. 13. The United States has also requested "all documents showing the authority of Lehcim's officers, directors, or employees to bind or sign documents on behalf of Lehcim." Ex. B, Req. No. 18.

The requested information is necessary to learn whether Lehcim was solvent at the time of these transactions on account of legitimate loans payable or receivable. Or whether, instead, the transfers reflected on its Client-Matter Trust Ledger were not legitimate, and were to defeat collection of Lehcim's tax liabilities. These are all recognized as material factual questions for alter ego analysis. *See, e.g.*, *RaceRedi Motorsports, LLC*, 640 F. Supp. 2d at 670 (insolvency); *Serio*, 209 Md. App. at 563 (perpetuate the violation of a statutory or other positive legal duty).

> d. *Discovery about whether Neuberger Quinn paid its attorneys and used its other resources to perform corporate officer work for Lehcim is relevant to determining whether Lehcim and Neuberger Quinn comingled funds*

The United States needs discovery about how much Neuberger Quinn used its resources for Mr. Tendler and Mr. Neuberger to conduct purely corporate tasks on behalf of Lehcim.

McMonagle Dec. ¶ 43. When and how these attorneys were compensated will shed light on whether Lehcim was an alter ego of Neuberger Quinn or a client allowed with funds held in their IOLTA account.

During Lehcim's examination, both Mr. Tendler and Mr. Neuberger were asked if they received compensation for the tasks they performed as corporate officers of Lehcim. Mr. Tendler answered they received "no compensation." Ex. D at 36:12-16. Mr. Neuberger gave an evasive answer that they are paid by billing "whatever time is expended providing this service for clients" to Lehcim through Neuberger Quinn. Ex. C at 32:8-15.

Mr. Tendler and Mr. Neuberger's answers raise a question of whether they were billing time they were acting as Lehcim's corporate officers as time they were acting as lawyers representing Lehcim, and were being compensated by Neuberger Quinn as a result. This factual question is material to the issue of whether Neuberger Quinn and Lehcim commingled funds by, among other things, Neuberger Quinn paying Lehcim's officers as officers, directors, or employees of Lehcim when they were "on the clock" for Lehcim. *Vitol, S.A. v. Primerose Shipping Co., Ltd.*, 708 F.3d 527, 545 (4th Cir. 2013) ("intermingling of funds" and "common office space" factors in alter ego analysis).

The United States, as noted above, has asked Neuberger Quinn "[f]or individuals at Neuberger Quinn who were officer, directors, or employees of Lehcim , [to] describe whether and to what extent those firm employees performed their tasks in their roles as officers, directors, or employees of Lehcim using Neuberger Quinn Resources." Ex. A, Interrogatory No. 8. The United States has also asked "how Neuberger Quinn logged, billed, or otherwise accounted for time performing their responsibilities as officers, directors, or employees of Lehcim." Ex. A,

Interrogatory No. 9. The United States has also asked for Neuberger Quinn's relevant timesheets and bills. Ex. B, Request No. 8.

> ### e.  Plaintiff's attorneys could not answer even the most basic questions at the administrative level about how Lehcim conducted and documented its business

The United States needs discovery about whether Lehcim observed corporate formalities. Mr. Neuberger, the President of Lehcim and its alleged attorney, is also listed as its sole director. But neither Mr. Neuberger or Mr. Tendler were able to answer basic questions about how Lehcim conducted and documented its business.

During Lehcim's examination, Mr. Tendler could not answer questions about whether Lehcim observed any corporate formalities. When asked whether Lehcim held meetings or kept corporate minutes, Mr. Tendler answered "I don't recall," "[t]here could be, I don't know[,]" and "I don't have any minutes." Ex. D at 35:9-10, 18-19. And, as noted above, no financial books— other than the Client-Matter Trust Ledger, and adjusting journal entries from Lehcim's tax return preparer—were provided to the IRS during Lehcim's examination. McMonagle Dec. ¶ 52.

Thus, the United States has asked Neuberger Quinn to "describe how Lehcim made its decisions regarding its operations." Ex. A, Interrogatory No. 3. It has requested "all documents showing actions by Lehcim's board of directors, shareholders, or officers, including but not limited to minutes of meetings of Lehcim's board of directors and resolutions of its board of directors." And finally, it has requested "all documents showing the authority of Lehcim's officers, directors, or employees to bind or sign documents on behalf of Lehcim." Ex. B, Request No. 18.

The requested information is necessary to learn whether Lehcim observed corporate formalities and maintained proper corporate records, and whether there were "nonfunctioning officers or directors" for Lehcim, whose functions were instead being dominated by Neuberger Quinn attorneys. These are all recognized as material factual questions for alter ego analysis. *See,*

*e.g.*, *Hildreth v. Tidewater Equip. Co.*, 378 Md. 724, 735 (2003) (absence of corporate records and non-functioning officers or directors).

### 2.   The United States' needs, at a minimum, to take Deposition Testimony from Neuberger Quinn's designee(s) under Rule 30(b)(6) to obtain information in Neuberger Quinn's exclusive control

Neuberger Quinn urges the Court to rule that the United States cannot prevail in this case without proving fraud (including fraudulent intent), but that the United States must somehow prove fraud here without being afforded the benefit of *any* discovery.[13]

The Fourth Circuit has held "discovery is appropriate when 'the main issue' is 'one of motive' and 'when most of the key evidence lies in the control' of the party moving for summary judgment." *Consumer Fin. Prot. Bureau v. Access Funding, LLC*, 2018 WL 11425879, at *2 (D. Md. June 5, 2018) (quoting *McCray*, 741 F.3d at 484). And the question of whether Neuberger Quinn (through certain of its partners) had fraudulent intent is information that lies "in the control" of Neuberger Quinn; indeed, scienter is in Neuberger Quinn's *exclusive control*.

Also, what information the IRS pried from Mr. Tendler and Mr. Neuberger about Lehcim's business dealings consisted of many iterations of "I don't know."[14] They could not answer even basic questions like: how were you authorized to sign this document on behalf of X entity? Ex. C at 172:15-173:2.

Even then the interviews were not Neuberger Quinn's answers. They were two individuals talking as representatives of Lehcim. When Mr. Neuberger and Mr. Tendler sat for interviews (which predate the levy in this case by over four years), they appeared as officers of Lehcim and

---

[13] As explained previously, the United States does not agree that it must prove fraud to prevail.

[14] During his interview before the IRS, Mr. Neuberger said "I don't know" one-hundred and sixty-four times. McMonagle Dec. ¶ 23.

not as designated representatives of Neuberger Quinn. Ex. C at 6:18-20, Ex. D at 6:17-20. So Neuberger Quinn has never answered *any* questions about these transactions in its own right.

These "I do not knows" do not suffice. Under Federal Rule of Civil Procedure 30(b)(6), an authorized representative of Neuberger Quinn will be required to "testify about information known or reasonably available to" the firm. The United States needs to conduct discovery, including depositions, for many reasons including to see if someone within Plaintiff's entire firm can do better than an "I don't know" regarding transactions directed by its attorneys, that generated more than $2 million of tax liabilities, and moved more than $2 million out of its IOLTA account after the IRS notified Lehcim of those liabilities.

## III. EVEN IF PLAINTIFF'S MOTION WERE NOT PREMATURE, IT DOES NOT SHOW NEUBERGER QUINN IS ENTITLED TO SUMMARY JUDGMENT NOW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A material fact is one that "might affect the outcome of the suit under the governing law." *Ziemkiewicz v. R+L Carriers, Inc*., 996 F. Supp. 2d 378, 387 (D. Md. 2014).

### A. Alter ego liability does not only attach to shareholders

Plaintiff asserts that alter ego only imposes liability on a corporation's owners. Pl. Mot. at 16-17. That is not a requirement of Maryland law or federal common law. Such a limitation would allow a taxpayer with a willing law firm to evade ever paying taxes. Courts have admonished that courts examining the alter ego or other tests "must avoid an over-rigid preoccupation with questions of structure." *Libutti v. United States*, 107 F.3d 110, 119 (2d Cir. 1997); *see also United States v. Emor*, 850 F. Supp. 2d 176, 205 (D.D.C. 2012); *Magesty Sec. Corp. v. U.S. I.R.S.*, 2012 WL 1425100, at *4 (S.D.N.Y. Apr. 24, 2012).

Plaintiff proposes their rigid test by relying on cases that cannot bear that weight. Plaintiff cites a case from the United States Bankruptcy Court for the Western District of Virginia applying Virginia law. Pl. Mot. at 17 (*citing In re Vinales*, 268 B.R. 749, 757 (Bankr. W.D. Va. 2001)). Virginia law does not matter here. Moreover, *In re Vinales* does not foreclose the application of veil piercing to reach a corporate officer under Virginia law, but merely holds that it is "the subject of a bona fide dispute" and holds that it is not available based on the facts of that case. *Id*.

Similarly, Neuberger Quinn's reliance on three Maryland cases is misplaced. None of those cited cases state that alter ego liability is *limited* to shareholders under Maryland law. *See Gordon v. S.S. Vedalin*, 346 F. Supp. 1178, 1181 (D. Md. 1972); *Qun Lin v. Cruz*, 247 Md. App. 606, 639 (2020); *Damazo v. Wahby*, 259 Md. 627, 633 (1970). Instead, the Maryland cases cited by Plaintiff discuss shareholders because the party involved in each case was a shareholder.

The actual rule is more flexible. The Maryland Supreme Court has explained that "[c]ourts will apply the [alter ego] doctrine when plaintiff shows [among other things] (1) complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own… ." *Hildreth*, 378 Md. at 735. The rule is not limited to shareholders. A director, employee, or someone who is on paper a bystander could fit the bill of exercising complete dominion. It is the control, not the title, that matters under this test.

Federal common law has similarly never held that overlapping ownership is an alter ego requirement. "A 'unity of interest' may be established through showing common ownership *or* officers and directors, *or* sharing property, finances, personnel or infrastructure." *United States ex rel. Fadlalla*, 2022 WL 703918, at *3 (emphasis added); *see also Fugazy Cont'l Corp. v. N.L.R.B.*,

725 F.2d 1416, 1420 (D.C. Cir. 1984) ("[C]ommon ownership is not an absolute prerequisite to a finding of alter ego status.").

**B.   Plaintiff's Argument that the United States is "estopped" from asserting that Neuberger Quinn is Lehcim's alter ego fails as a matter of law**

Plaintiff asserts the United States is estopped from asserting that Neuberger Quinn and Lehcim are alter egos because the United States did not provide Neuberger Quinn with collection due process rights that are only available to a taxpayer (and are not available to an alter ego under applicable law). This argument fails for two reasons.

First, when asserting equitable estoppel against the government, a plaintiff must first show that the "traditional" elements of estoppel are present—*i.e.,* that the United States made an affirmative representation that the plaintiff reasonably relied on to its detriment. *United States v. Anmar*, 827 F.2d 907, 912 (3d Cir. 1987). But the plaintiff must also meet the added burden of showing "affirmative misconduct" on the part of the government. *Austin v. Winter*, 286 F. App'x 31, 38 (4th Cir. 2008). Neuberger Quinn does not even attempt to explain how the IRS's failure to provide it with collection due process rights, which Neuberger Quinn itself admits are not available to alter egos (Compl. ¶ 43), rises to the level of affirmative misconduct.

Second, asserting alter ego liability does not transform two entities into the same taxpayer for all purposes. It just subjects one taxpayer to another taxpayer's liabilities. *Portsmouth Ambulance, Inc. v. United States*, 756 F.3d 494, 501 (6th Cir. 2014). Despite Neuberger Quinn's repeated assertion that it was not afforded the rights due a *taxpayer*, who in this case was Lehcim, Neuberger Quinn has not identified a single statutory right that it was supposedly denied at the administrative level. Federal regulations do not provide an alter ego with the same rights that a taxpayer receives, as Neuberger Quinn acknowledged in its complaint. Use of alter ego is an equitable remedy and does not confer rights on the wrongdoer. There is no basis to assert that the

United States is estopped from arguing alter ego liability here because it did not provide Neuberger Quinn with rights to which it was not entitled at the administrative level.

## CONCLUSION

As outlined above and in the McMonagle declaration, the United States needs discovery to obtain and present facts essential to its opposition or to agree that certain facts are not in dispute. Further, Neuberger Quinn's legal arguments that it prevails based on the lack of overlapping ownership or that the United States is estopped from asserting alter ego fail as a matter of law. Therefore, the United States requests that the Court deny or defer consideration of Plaintiff's motion for summary judgment until after the close of discovery.

Dated: January 18, 2023                          Respectfully submitted,

                                                 DAVID A. HUBBERT
                                                 Deputy Assistant Attorney General

                                                 */s/ Kristina M. Portner*
                                                 RYAN O. MCMONAGLE
                                                 KRISTINA M. PORTNER
                                                 Trial Attorneys, Tax Division
                                                 U.S. Department of Justice
                                                 P.O. Box 227
                                                 Washington, D.C.  20044
                                                 202-307-1355 (ROM)
                                                 202-514-0451 (KMP)
                                                 202-514-6866 (f)
                                                 Ryan.Mcmonagle@usdoj.gov
                                                 Kristina.M.Portner@usdoj.gov