IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NEUBERGER, QUINN, GIELEN, RUBIN &, GIBBER, P.A., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 1:22-cv-02129-BPG |

**DECLARATION OF RYAN O. MCMONAGLE
PURSUANT TO FED. R. CIV. P. 56(d)**

I, Ryan O. McMonagle, pursuant to 28 U.S.C. § 1746 and Fed. R. Civ. P. 56(d) declare as follows:

1. I am a Trial Attorney with the United States Department of Justice, Tax Division and am counsel for the United States in this matter involving Neuberger, Quinn, Gielen, Rubin & Gibber, PA ("Neuberger Quinn").

2. I have knowledge of the matters set forth in this declaration based on my review of documents provided by the Internal Revenue Service and the filings in this case.

3. Isaac Neuberger and Hillel Tendler ("Mr. Neuberger" and "Mr. Tendler," respectively) are attorneys with Neuberger Quinn. They are also officers and directors of Lehcim Holding, Inc. ("Lehcim").

4. The Internal Revenue Service conducted an examination of Lehcim. The examination encompassed potential income tax liabilities of Lehcim for the 2010 through 2015 tax years.

1

5. On September 25, 2017, the Internal Revenue Service interviewed Mr. Neuberger, as part of the Internal Revenue Service's examination of Lehcim Holdings. Lehcim and Mr. Neuberger had counsel present during the interview. A true and correct copy of excerpts of that interview are attached as Exhibit C.

6. On September 26, 2017, the Internal Revenue Service interviewed Mr. Tendler as part of the Internal Revenue Service's examination of Lehcim. Lehcim and Mr. Tendler had counsel present during the interview. A true and correct copy of excerpts of that interview are attached as Exhibit D.

7. On December 5, 2017, the Internal Revenue Service interviewed Mr. Neuberger a second time as part of the Internal Revenue Service's examination of Lehcim Holdings. Lehcim and Mr. Neuberger had counsel present during the interview.

8. On November 20, 2019, the Internal Revenue Service issued a Notice of Deficiency to Lehcim for the 2010 through 2015 tax years.

9. On July 13, 2020, tax liabilities were assessed against Lehcim for the 2010 through 2015 tax years.

10. Since interviews in 2017, neither Mr. Neuberger nor Mr. Tendler has provided sworn answers to any questions by the United States.

11. On March 31, 2021, Neuberger Quinn's counsel provided to the IRS the attached Client-Matter Trust Ledger from its IOLTA account for Lehcim. A true and correct copy of the Client-Matter Trust Ledger for Lehcim is attached hereto as Exhibit E.

**Matters about Which the United States Needs to Take Discovery**

12. The United States needs discovery as to – at minimum – the subject matter areas described in the following paragraphs 18 through 59 to obtain facts to oppose Plaintiff's summary judgment motion.

13. On December 20, 2022, the United States served its First Set of Interrogatories, consisting of nine interrogatories, on Plaintiff. A true and correct copy of the United States' First Set of Interrogatories is attached hereto as Exhibit A.

14. Plaintiff has not answered the United States' interrogatories.

15. On December 20, 2022, the United States served its First Set of Requests for Production, consisting of twenty document requests, on Plaintiff. A true and correct copy of the United States First Set of Requests for Production is attached hereto as Exhibit B.

16. Plaintiff has not produced documents in response to the United States' Requests for Production.

17. After the United States receives discovery responses, it anticipates seeking, at a minimum, the depositions of Mr. Neuberger, Mr. Tendler, Neuberger Quinn, and Lehcim.

**I. Discovery About Whether there was an Attorney-Client Relationship Between Plaintiff and Lehcim**

18. Plaintiff alleges in its complaint and throughout its motion for summary judgment that Lehcim is its client and that, as result, its movement of funds into, out of, and within its IOLTA account is proper.

19. Plaintiff has submitted no evidence that Lehcim was a client.

20. During the examination of Lehcim, Neuberger Quinn lawyers made statements that cast doubt on whether Lehcim was in fact a Neuberger Quinn client.

21.     When asked how Lehcim became a client, Mr. Tendler answered that "[i]t was formed on behalf of, you know, [lists various clients], so by extension, it became a client. It was a client from birth." Ex. D at 37:15-38:5.

22.     When asked if Neuberger Quinn had "an engagement letter or other documents describing … the terms of the engagement," Mr. Tendler answered "[n]o." Ex. D at 38:21-39:4. When asked the same question, Mr. Neuberger answered "I don't know." Ex. C at 39:10-13.

23.     This was just one of the one hundred and sixty-four times that Mr. Neuberger answered a question with "I don't know" during his interview.

24.     When asked what Neuberger Quinn was engaged to do for Lehcim, Mr. Tendler answered "[n]othing, other than recording. I mean it was in a deal. You know, handling its money." Ex. D at 38:17-20. Later, he said "Lehcim was an entity where it was a member in a deal. I explained how we move the money around. That's it. There's nothing more I ever did for Lehcim." Ex. D at 39:11-15.

25.     The United States' Interrogatories Nos. 4-7 ask Neuberger Quinn to describe separately all the matters on which Neuberger Quinn has provided legal representation, all work Neuberger Quinn performed on behalf of Lehcim that did not involve legal services, and all individuals at the firm who provided either kind of service. Ex. A.

26.     The United States has also requested Plaintiff produce retention agreements, documents related to conflicts checks, and all other documents Plaintiff alleges shows an attorney-client relationship, as well as bills and time entries for all legal and non-legal work Neuberger Quinn performed for Lehcim. Ex. B, Req. Nos. 1-4, 8-9.

27.     Discovery on this topic is necessary is to determine whether Lehcim was a client of Neuberger Quinn.

**II. Discovery About Whether the Financial Transactions Neuberger Quinn Attorneys Conducted for Lehcim Were Legitimate**

28. The Client-Matter Trust Ledger attached as Exhibit E for money moving through Neuberger Quinn's IOLTA account under Lehcim's name reference numerous loans.

29. During Lehcim's examination, the IRS did not receive documentation (e.g., promissory notes or other debt instruments) from Lehcim documenting some of these loans.

30. When asked whether promissory notes exist for those loans, Mr. Neuberger testified either "I am not aware" or "I do not know." Ex. C at 225:13-20, 265:14:17.

31. Mr. Tendler told the IRS there's a "good chance" that if a promissory note for any specific loan was not provided to the IRS during the examination, then it does not exist. Ex. D at 75:8-13.

32. What loan documents Lehcim provided in its examination were signed by Mr. Neuberger.

33. For one alleged 2011 "loan" from Lehcim to Nightingale Ventures, Ltd., Mr. Neuberger signed as the "authorized person" for Nightingale. When asked how he was an "authorized person" to sign promissory notes on behalf of Nightingale, he said he was "certain" he was, but could not identify how he was authorized or who would know whether he was authorized. Ex. C at 158:3-10.

34. The United States has requested "all documents related to the credits and debits shown on [Neuberger Quinn's] ledgers for Lehcim, including but not limited to any loan agreements and supporting documents, contracts, correspondence with third parties, or any other notes purporting to show a liability owed to a third party by Lehcim or a liability owed to Lehcim by a third party." Ex. B, Req. No. 13.

35.     Discovery as to the many financial transactions of Lehcim reflected on Neuberger Quinn's Client-Matter Trust Ledger for Lehcim is necessary.  For example, it is necessary to test Neuberger Quinn's contention that it was not "involved" in Lehcim's transactions.  And it is necessary to determine whether Neuberger Quinn assisted Lehcim in generating fraudulent financial transactions. These are all recognized as material factual questions for alter ego analysis.

**III. Discovery About Whether Neuberger Quinn Attorneys Abused their Control of Lehcim's Finances to Fraudulently Defeat Collection of Lehcim's Taxes by transferring more than $2 million Out of Lehcim's IOLTA Ledger From 2019-2020 after Lehcim Received a Notice of Deficiency From the IRS**

36.     As averred in paragraph 8, above, the Internal Revenue Service sent a notice of deficiency to Lehcim at Neuberger Quinn's offices on November 20, 2019.

37.     From November 20, 2019 until March 5, 2020, Lehcim transferred $2,627,280 of Lehcim's funds to repay purported "loans" from third parties. Ex. E.

38.     Based on the Client-Matter Trust Ledger, Lehcim's balance in Neuberger Quinn's IOLTA account has been zero since March 5, 2020.

39.     These transactions took place years after Mr. Neuberger and Mr. Tendler's interviews in 2017, and after the examination of Lehcim concluded. Accordingly, the IRS has not obtained information – other than the ledger – about these transactions from Lehcim.

40.     The United States has requested "all documents related to the credits and debits shown on [Neuberger Quinn's] ledgers for Lehcim, including but not limited to any loan agreements and supporting documents, contracts, correspondence with third parties, or any other notes purporting to show a liability owed to a third party by Lehcim or a liability owed to Lehcim by a third party." Ex. B, Req. No. 13.

6

41. The United States has also requested "all documents showing the authority of Lehcim's officers, directors, or employees to bind or sign documents on behalf of Lehcim." Ex. B, Req. No. 18.

42. The requested information is necessary to learn whether Lehcim was solvent at the time of these transactions on account of legitimate loans payable or receivable, or whether instead the transfers reflected on its Client-Matter Trust Ledger were not legitimate. These are all recognized as material factual questions for alter ego analysis.

**IV. Discovery about whether Neuberger Quinn paid its attorneys and used other of its resources to preform corporate officer work for Lehcim**

43. The United States needs discovery about the extent to which the Neuberger Quinn law firm used its resources for Mr. Tendler and Mr. Neuberger to conduct purely corporate tasks on behalf of Lehcim.

44. During Lehcim's examination, both Mr. Tendler and Mr. Neuberger were asked if they received compensation for the tasks they performed as corporate officers of Lehcim. Mr. Tendler answered they received "no compensation." Ex. D at 36:12-16.  Mr. Neuberger answered that they are paid by billing "whatever time is expended providing this service for clients, to the entity" through Neuberger Quinn. Ex. C at 32:8-15.  This testimony is contradictory.

45. The United States has asked Neuberger Quinn "[f]or individuals at Neuberger Quinn who were officer, directors, or employees of Lehcim, [to] describe whether and to what extent those firm employees performed their tasks in their roles as officers, directors, or employees of Lehcim using Neuberger Quinn Resources." Ex. A, Interrogatory No. 8.

46. The United States has also asked "how Neuberger Quinn logged, billed, or otherwise accounted for time performing their responsibilities as officers, directors, or employees of Lehcim." Ex. A, Interrogatory 9.

47.     The United States has also asked for Neuberger Quinn's relevant timesheets and bills. Ex. B, Req. No. 8.

48.     Mr. Tendler and Mr. Neuberger's answers raise a question as to whether they were billing time they were acting as Lehcim's corporate officers as time they were acting as lawyers representing Lehcim and Neuberger Quinn was compensating them as a result. This factual question is material to the issue of whether Neuberger Quinn and Lehcim commingled funds by, inter alia, Neuberger Quinn paying Lehcim's officers when they were "on the clock" for Lehcim.

**V. Discovery About Whether Neuberger Quinn Attorneys Acting as Lehcim's Officers Respected Any Corporate Formalities**

49.     Mr. Tendler could not answer questions about whether Lehcim observed any corporate formalities.

50.     Mr. Neuberger, in addition to being the President of Lehcim and its alleged attorney, is also listed as its sole director.

51.     When asked whether Lehcim held meetings or kept corporate minutes, Mr. Tendler answered "I don't recall," "[t]here could be, I don't know" and "I don't have any minutes." Ex. D at 35:1-10, 18-19.

52.     Moreover, no financial books—other than the Client-Matter Trust Ledger and adjusting journal entries from Lehcim's tax return preparer—were provided to the IRS in Lehcim's examination.

53.     The United States has asked Neuberger Quinn to "describe how Lehcim made its decisions regarding its operations." Ex. A, Interrogatory No. 3.

54.     The United States has requested "all documents showing actions by Lehcim's board of directors, shareholders, or officers, including but not limited to minutes of meetings of Lehcim's board of directors and resolutions of its board of directors." Ex. B, Req. No. 7.

55.     The United States has also requested "all documents showing the authority of Lehcim's officers, directors, or employees to bind or sign documents on behalf of Lehcim." Ex. B, Req. No. 18.

56.     The requested information is necessary to learn whether Lehcim observed corporate formalities and maintained proper corporate records, and whether there were nonfunctioning officers or directors for Lehcim, whose functions were instead being dominated by Neuberger Quinn attorneys. These are material factual questions for alter ego analysis.

**VI. Other Matters Relevant to Alter Ego Factors and Testimony from Neuberger Quinn**

57.     The United States also needs the opportunity to depose Neuberger Quinn and Lehcim representatives about all the above topics and other relevant alter ego topics. That is because the only testimony and answers from Mr. Neuberger and Mr. Tendler is when they sat for interviews (which predate the levy in this case by over four years) as officers of Lehcim and not as designated representatives of Neuberger Quinn. Ex. C at 6:18-20, Ex. D at 6:17-20.

58.     Neuberger Quinn has never answered *any* questions about these transactions in its own right in either the tax examination or during discovery. The United States needs to conduct discovery, including depositions, among reasons, to see if someone within Plaintiff's entire firm can do better than an "I don't know" regarding transactions directed by its attorneys, that generated more than $2 million of tax liabilities, and moved more than $2 million out of its IOLTA account after the IRS notified Lehcim of those liabilities.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 18th day of January 2023 in Washington D.C.

*/s/ Ryan O. McMonagle*
Ryan O. McMonagle