IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A. | * |
| | * |
| Plaintiff, | Case No. 1:22-cv-02129-BPG |
| | * |
| v. | |
| | * |
| THE UNITED STATES OF AMERICA, | |
| | * |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S REPLY IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Although the Government's Opposition spends many pages trying to avoid the subject, it is very clear that there are dispositive facts which are not in dispute, and there are legal issues which can and should be ruled on now. The correct resolution of those legal issues, applied to the undisputed facts, mandates summary judgment in favor of Plaintiff Neuberger Quinn.

The Government does not dispute, because it cannot, that Neuberger Quinn is not an owner of Lehcim Holdings, Inc., ("Lehcim"), the corporation which actually owes the taxes that are the basis for the Government's levy against Neuberger Quinn. This fact is dispositive here because the alter ego liability theory is a legal mechanism that allows a creditor, in exceptional circumstances, to pierce the corporate veil and attach liability to shareholders and owners of a corporation. The theory is used to set aside the corporate protection that is ordinarily afforded to shareholders. It has never been used in Maryland to attach liability to third parties who have no ownership interest in the debtor company, and the Government cites no cases to support its remarkable assertion that "the rule is not limited to shareholders." Opposition at 21.

To decide this purely legal issue, the Court must first determine whether federal common law applies, as the Government contends, or Maryland State law applies, as the unanimous caselaw in this circuit demonstrates. The issue of which law applies here is, of course, an entirely legal issue for the Court to resolve. And it is not a hard one. The Government admits that "Plaintiff is correct that many cases treat alter ego as a question of state law." Opposition at 7, n.5. "Many cases" understates the weight of authority here. "Every case in this Circuit" would be more accurate. The Government plainly wants to <u>change</u> the law, because it "does not agree" with the cases which treat alter ego as a question of state law. *Id.* This Court should decline the Government's invitation to commit error, and hold that Maryland State law applies.

Once the Court holds, as it must, that alter ego is a question of state law, the only remaining question that the Court needs to resolve is whether Maryland law contemplates the use of an alter ego theory to render liable a third party that has no ownership interest in the company that owes the debt. The Government concedes that this is a purely legal issue, (Opposition at 1, 20-22), but argues incorrectly and without any support that the alter ego theory can be expanded to include third parties who are not owners of the corporate debtor. Because the concept of veil piercing under Maryland law and the specific subset of alter ego liability are aimed at owners, and because the caselaw uniformly is restricted to owners, the Court should find summary judgment appropriate here where there is no dispute that Neuberger Quinn was not a shareholder or owner of Lehcim, the corporate debtor.

Although the Court need not reach any of the other bases available to award summary judgment to Neuberger Quinn, the Court should find that the Government is estopped from denying that Neuberger Quinn and Lehcim are separate and distinct entities. Given the undisputed fact that the Government denied procedural rights to Neuberger Quinn that were
4878-3646-8814, v. 2                              2

afforded to Lehcim on the basis that they are different entities, it cannot now claim they should be treated as the same entity for liability purposes. Neuberger Quinn showed in its Opening Memorandum that the elements necessary for the application of judicial estoppel or estoppel by admission are all present. The Government does not dispute that this is a purely legal issue, (Opposition at 1, 22), but attempts to defend by asserting that the doctrine of equitable estoppel does not apply. It is wrong as a matter of law, and summary judgment is appropriate.

Finally, the Government's admission that it is not able to respond to Neuberger Quinn's statement of undisputed facts effectively concedes that it did not have proof of fraud or a paramount equity at the time of the levy. The Government apparently contends that its "Ready-Fire-Aim" approach is acceptable, and that it was allowed to levy Neuberger Quinn's accounts without having adequate proof of the alter ego theory it alleged. Neuberger Quinn respectfully suggests that is not the law and the Court should reject the Government's Rule 56(d) Opposition to the Motion for Summary Judgment.

## II. STANDARD FOR GRANTING RELIEF UNDER RULE 56(d)

Rule 56(d) provides that if, "for specified reasons, [a nonmovant] cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." By its express terms, relief under Rule 56(d) is discretionary and may only be granted if the nonmovant "cannot present facts **essential** to justify its opposition." (Emphasis supplied).

As stated in *Celotex v. Catrett*, 477 U.S. 317, 333 (1986), notwithstanding a motion under Rule 56(d), "[s]ummary judgment should be granted if…after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial." Citing *First National Bank of Arizona v.*

*Cities Service Co.*, 391 U.S. 253, 289 (1968). Facts and issues that are not "outcome determinative" do not serve as a basis for granting relief under Rule 56(d). *See U.S. v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 978 (E.D. Va. 1997) ("[T]he court need only concern itself with contradictions of salient facts; factual disputes over issues not germane to the claim are simply irrelevant because they are not outcome determinative. The court may grant a motion, immaterial factual disputes notwithstanding.") (citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986)).

Moreover, "[a] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial…. [O]n those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial." *U.S. v. Kitila*, Civil Action No. DKC 09-0455, at *5-6 (D. Md. Feb. 25, 2010) (citing to *Celotex*, 477 Us. At 323-24). *See also Venable v. Pritzker*, Civil Action No. GLR-13-1867, at *22-23 (D. Md. May 30, 2014) (granting summary judgment where "none of that discovery would be sufficient to place facts in dispute and defeat summary judgment"). *See also Strag v. Board of Trustees*, 55 F.3d 943, 954 (4th Cir. 1995) ("The denial of a Rule 56(f) motion for extension should be affirmed where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.").

For the reasons explained *infra*, there is no reason for the Court to indulge the Government in its request for further discovery as there is no further discovery necessary to resolve this matter. That is, the Government concedes all facts necessary to grant the Motion for Summary Judgment in favor of Neuberger Quinn, as explained herein. As a result, the many pages devoted by the Government to describing discovery it wants to take, (Opposition at. 11-

20), are, to quote one of former United States District Judge J. Frederick Motz's favorite phrases, "splendidly irrelevant." None of this discovery addresses the legal issues that are the basis of Neuberger Quinn's Motion for Summary Judgment, and are thus immaterial to the resolution of this case.

III. **MARYLAND LAW APPLIES TO DETERMINE ALTER EGO STATUS**

There is no case supporting the Government's contention that "[a]lter ego status is not a matter of state law because it is not a 'right to property.'" Opposition, at 6. The Government admits that there is no support for this argument, but it nonetheless makes the argument because it does not like the existing standards. Even the Internal Revenue Service, which initiated the levy, knows this is a clear misstatement of the law but nonetheless claims that every circuit is wrong:

> In cases concerning the alter ego status of a party with respect to a taxpayer, recent decisions have emphasized that a federal court must look to state property law concerning alter ego (often referred to as "piercing the corporate veil") before it can determine whether a federal tax lien attaches to the alter ego's property or rights to property.

IRS Office of Chief Counsel, *Whether Federal Common Law or State Law Governs Alter Ego Status* (CC-2012-002), at *1 (December 2, 2011). The Government makes this argument, contrary to Supreme Court precedent, because it wants to *change* the law which it deems to be "erroneous." *Id.* at *1. The United States has repeatedly made the same argument in tax collection cases – both before and after that memo was authored – and has been turned back by the courts every single time. *See, e.g., Fourth Investment LP v. United States*, 720 F.3d 1058, 1067 (9th Cir. 2013) (rejecting the same argument in a nominee context, "just as it has been uniformly rejected by our sister circuits and nearly every federal court that has examined the issue") (citing cases and indicating that a prior unpublished opinion appeared to apply federal

law but was being overruled); *Mama's Enterprises, LLC v. United States*, 883 F. Supp. 2d 1128, 1134 (N.D. Ala. 2012) (all decisions cited from cases in that circuit applied state law and the vast majority of decisions through the United States have squarely applied state law); *Old West Ann. v. Apollo*, 605 F.3d 856, 861 (11th Cir. 2010) (rejecting argument by government to apply federal law "because the tax code is a nationwide program" and affirming application of Florida law on alter ego) (citing cases); *WRK Rarities, LLC v. United States*, 165 F. Supp. 3d 631, 637 (N.D. Ohio 2016) (applying Ohio law on alter ego despite argument by United States for application of federal law); *United States v. T.J. Enters. & Acoustical, Inc.*, No. 2:15-cv-00065-DN, at \*30 (D. Utah May 31, 2019) (rejecting application of federal nominee theory argued by United States and finding in favor of taxpayer because United States failed to "identify or plead a nominee theory under Utah law" and undisputed facts showed taxpayer was not a transferee or alter ego); *Acheff v. Lazare*, No. 12-CV-100 JCH/RHS, at \*8 (D.N.M. Mar. 29, 2013) (rejecting United States' theory to foreclose lien where based upon federal nominee theory rather than any recognized state law principles); *Acheff v. Lazare*, No. 1:12-cv-00100 JCH-RHS, at \*13 (D.N.M. Sep. 20, 2013) ("The Government cites no authority, legal or otherwise, in support of its position [that federal law controls alter ego analysis]…"). Simply put, the Government's argument here is not credible.

Indeed, the Government admits: "Plaintiff is correct that many cases treat alter ego as a question of state law. For the reasons above, the Government does not agree with that conclusion." Opposition at 7. As noted above, "many cases" actually understates the weight of authority against the Government's position. Indeed, the sole tax case that the Government cites for applying a federal common law of alter ego in tax cases clearly supports application of state

law.  Specifically, in *Prompt Staffing, Inc. v. United States*, 321 F. Supp. 3d 1157, 1170 (C.D. Cal. 2018), the Court clearly held that state law (not federal common law) is applicable:

> If Byrne was the alter ego, then the Court must decide if the IRS can levy the corporations through piercing the veil.  Thus, *the Court first looks to California state law to determine the factors necessary to determine an alter ego relationship*.

*Id.* at 1175 (emphasis supplied) (spending the next five pages of the opinion to discuss veil piercing under California law using the analysis in *Drye*).

And all of the other federal cases cited by the Government – where alter ego is a "theory of liability" dictated by federal common law – involve other federal statutory regimes.  Even those cases acknowledge that collection of a judgment is directed by state law, similar to the *Drye* analysis.  *See Thomas v. Peacock*, 39 F.3d 493, 502 (4th Cir. 1994).  And for good measure, the Government cites to a case in support of application of federal law even though it involves a different theory of liability *and it still applies state law*.  *See, e.g., Ross Controls, Inc. v. U.S. Dept. of Treasury,* 160 B.R. 527, 532 (affirming levy based on successor liability and applying state law).  The Government is simply wrong on the state of the law – Maryland State law regarding alter ego applies.[1]

---

[1] The Government uses a footnote to attempt to state why all the cases cited in the Motion for Summary Judgment do not apply; however, all of those contentions are misleading.  For example, the Government claims that *Cody v. United States*, 348 F. Supp. 2d. 683 (E.D. Va. 2014), did not deal with "choice-of-law" standards; however, that case said: "As is generally true of property rights in tax-enforcement disputes, the question whether property is held by a taxpayer's alter ego or nominee is determined by reference to state law." *Id.* at 694.  In *United States v. Williams*, Case No. 17-cv-00278, * 4 (M.D.N.C. Aug. 25, 2017), the Court stated it "finds that this tax liability is attributable to Williams in his individual capacity because under North Carolina law, he is the alter ego of the Foundation."

And despite the Government's attempt to distance itself from the clear holdings in other cases applying state law, by claiming language is dicta, that is simply incorrect.  A holding cannot be called dicta just because it goes against the Government's theory.  The conclusions formed by

### IV. MARYLAND LAW IS MUCH STRICTER THAN THE "FEDERAL STANDARD" AND REQUIRES OWNERSHIP BY THE ALLEGED ALTER EGO

After misstating the overwhelming authorities that confirm state law, (Maryland law in this case), regarding alter ego must be applied, the Government then claims that Maryland law and the "federal common law standard" differ "not much, if at all." Opposition at. 8. Much like its analysis regarding the applicable law, this argument could not be much farther off the mark.

#### A. MARYLAND COURTS RESPECT THE CORPORATE FORM AND RESTRICT VEIL-PIERCING THEORIES LIKE ALTER EGO

"The law of Maryland with respect to disregarding the corporate entity can be characterized as inordinately protective of limited liability for shareholders." G. Michael Epperson & John M. Canny, *The Capital Shareholders Ultimate Calamity: Pierced Corporation Veils and Shareholder Liability in the District of Columbia, Maryland and Virginia*, 37 Cath. U.L. Rev. 605, 637 (1988); Ryan Bottegal, *Comments: Liberalizing Maryland's Approach to the Corporate Veil*, 42 U. Balt. L. Rev. 821, 822 (2013) (Maryland is "unique" and is "the state in which piercing the corporate veil proves most difficult"). *See also Dixon v. Process Corp.*, 38 Md. App. 644, 645 (Md. App. 1978) (in Maryland, piercing the corporate veil is a "herculean task").

As indicated in the Motion for Summary Judgment, cases before the Supreme Court of Maryland have dealt with situations where the entity was "clearly designed to cause the corporation to evade a legal obligation" and it still did not result in application of the alter ego doctrine. *Hildreth v. Tidewater*, 378 Md. 724, 738 (2003) (citing *Bart Aconti*) (must have "evidence of fraud or similar conduct"). In *Hildreth*, which involved a sole shareholder, liability

---

the courts in every other case cited was essential to the holding and each has been cited for its precedential value many times over.

was not imposed under a "paramount equity" theory even though he had "dirty hands," there was "evidence of bad faith," he conducted "illegal business transactions," and there was evidence of a "conscious evasion of responsibility." *Id.* at 734. Without fraud, the Maryland court held there was not enough to trigger a paramount equity. And in *Bart Aconti*, the Court similarly found no grounds for application of the doctrine without fraud or the necessity to enforce a paramount equity, even where the sole shareholders had used assets as their own, evaded legal obligations, and rendered the corporation insolvent. 275 Md. at 304-5.

The quantum of proof required to show alter ego status is another example of the very different treatment of alter ego by the federal and Maryland courts. Federal courts appear to require the proponent of alter ego status to prove its case by a preponderance of the evidence, *LiButti v. United States*, 107 F.3d 110, 118 (2nd Cir. 1997), or more often by "substantial evidence." *Oxford Capital Corp. v. United States,* 211 F.3d 280, 283 (5th Cir. 2000). As pointed out in Neuberger Quinn's opening Memorandum, however, and nowhere disputed by the Government in its Opposition, the burden of proof to show alter ego in Maryland is by clear and convincing evidence. Memorandum at 16, citing *Sirona Dental Sys., LLC v. Stevenson Grp., Inc.*, No. CCB-12-1253 (D. Md. Jul. 25, 2013) (to support veil piercing, must establish facts by clear and convincing evidence) (citing *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc*., 728 A.2d 783, 789-91 (Md. 1999); *Baltimore Line Handling Co. v. Brophy*, No. WDQ-09-3018, at *9-10 (D. Md. Aug. 30, 2010) (to pierce the corporate veil, "evidence must be tantamount to fraud or invoke a paramount equity" and satisfy clear and convincing standard).[2]

---

[2] There are federal courts that agree with Maryland that the burden of proof for the IRS is clear and convincing evidence: "The IRS's fallacy lies in the assumption that since RahnDee would bear the ultimate burden of persuasion in a wrongful lien case, that it must bear all burdens along

In any event, the best judge of whether the federal standard differs from Maryland law is the Maryland judiciary itself. In rejecting "factually similar" federal cases that pierced a corporation's veil, Maryland's intermediate appellate court explained that "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil." *Residential Warranty Corporation v. Bancroft Homes of Greenspring Valley, Inc.,* 126 Md. App. 294, 309 (Md. App. 1999). The Government is flatly wrong to say that there is little difference between the federal standard and the Maryland standard for alter ego.

### B. MARYLAND LAW APPLIES ALTER EGO LIABILITY OF A CORPORATION SOLELY TO ITS SHAREHOLDERS OR OWNERS

Every Maryland case that has considered alter ego liability has done so in the context of common ownership. Again and again, the Maryland courts describe the doctrine as one where, in very limited circumstances, liability for a corporation's debts can be imposed on its shareholders. For example, in *Barti Aconti* Maryland's highest court stated that "shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity." 275 Md. at 310. And *Hildreth* reiterates:

> **Where the stockholders themselves**, or a parent corporation owning the stock of a subsidiary corporation, **fail to observe the corporate entity, operating the business or dealing with the corporation's property as if it were their own**, the courts will also disregard the corporate entity for the protection of third persons.

---

the way. Not so. After RahnDee proves its standing to bring this action—a matter that is not contested—the burden of production is then placed on the IRS to prove a nexus between RahnDee and Beryllium/FCI. That nexus, whether under a theory of alter ego or successor liability, must be proven by substantial evidence. To the extent either of those theories involves the issue of fraud, the IRS must carry its burden by clear and convincing evidence. Only after the IRS proves a sufficient nexus between RahnDee and FCI, will the ultimate burden of persuasion shift to RahnDee to prove that the issuance of the Tax Lien was wrongful." *Rahndee Indus. Servs., Inc. v. United States ex rel. Internal Revenue Serv. (In re Rahndee Indus. Servs., Inc.)*, No. 13-11210-M, at *22-23 (Bankr. N.D. Okla. Sep. 18, 2015).

378 Md. at 734 (*emphasis in original*) (citing Brune, *Maryland Corporation Law and Practice*, § 371 (1953)); *Gordon v. SS Vedalin*, 346 F. Supp. 1178, 1181 (D. Md. 1972) ("rule seems to be that the shareholders of a corporation are not to be held personally answerable for the obligations of the corporation in the absence of fraud or of the necessity of protecting a paramount equity"); *Serio v. Baystate Properties, LLC*, 209 Md. App. 545, 559-60 (Md. Ct. Spec. App. 2013) (doctrine so narrowly construed that Maryland appellate courts have never ultimately "found an equitable interest more important than the state's interest in limited shareholder liability") (citing cases).

Not only is the Government's claim that the alter ego theory "is not limited to stockholders," (Opposition at 21), completely unsupported by caselaw, it does not comport with the rationale or the background of the theory. The alter ego theory is a subset of an exception to the general rule that shareholders of a corporation are not liable for the corporation's debts, and stand only to lose their investments if the corporation is unable to pay its debts. In *Hildreth,* Maryland's highest court described the alter ego doctrine as the third of three circumstances when a corporate entity will be disregarded. That disregard – also referred to as piercing the corporate veil – is a means "to hold stockholders personally liable for corporate obligations." *Id*. at 734. Thus, one does not "pierce the corporate veil" to attempt to attach liability to <u>non-owners</u> of a corporation. The entire concept is an attempt to remove the limited liability protections of the corporate form, and those protections are exclusively for the benefit of shareholders. There is simply no basis in caselaw or logic to apply this theory to third parties such as Neuberger Quinn.

Even federal cases cited by the Government acknowledge that piercing the corporate veil is only a mechanism to negate the "insulation of a stockholder from the debts and obligations of

his corporation." *See, e.g., N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1051 (10th Cir. 1993) ("In extreme circumstances, however, the corporate form will be disregarded and the personal assets of a controlling shareholder or shareholders may be attached in order to satisfy the debts and liabilities of the corporation."); *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981) (alter ego theory used where the corporation is "merely a facade for the operations of the dominant stockholder or stockholders").

There are, of course, other theories of liability where a creditor can seek to collect from persons or entities that are not the owner of the corporate debtor. Indeed, some of the cases cited by the Government for applying the alter ego theory actually deal with a different theory of liability. *See, e.g., Equal Employment Opportunity Commission v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086 (6th Cir. 1974) (dealing with successor liability). Examples include the nominee theory, in which a party holds property or assets for a debtor's benefit, or the various fraudulent conveyance statutes.[3] But, the Government levied Neuberger Quinn's account solely on the basis of the alter ego theory, and that theory requires that the creditor proceed against the owner or shareholders of the debtor corporation, at least in Maryland. Because it is undisputed that Neuberger Quinn has no ownership interest at all in the corporate debtor Lehcim, summary judgment is mandated here.

## V. THE GOVERNMENT CANNOT MEET ITS NEXUS SHOWING

The Government also argues that this is a de novo proceeding and that, in and of itself, entitles it to broad-based discovery. However, under the burden-shifting frame work that both sides agree is applicable here, the Government fails to provide even a good faith basis for its alter

---

[3] As the Court knows, the Government has actually sued one of Neuberger Quinn's members, Isaac Neuberger, on a fraudulent conveyance theory. *United States v. Neuberger*, No. 22-cv-02977-BPG.

ego levy in the first place. Therefore, regardless of whatever post-hoc justifications the Government wants to find in discovery, the levy was nonetheless wrongful and the motion must be granted.

Despite the Government's argument (Opposition at 5-6), the Fifth Circuit in *Oxford Capital Corp. v. United States* could not have been clearer as to when substantial evidence of nexus is required – it is at the time the levy was imposed. 211 F.3d 280, 285 (5th Cir. 2000) (stating multiple times that nexus analysis based on "cause to believe alter ego status at the time the levy was imposed"). But the Fifth Circuit is not alone; probable cause (at least) is required in all jurisdictions that have been presented with the issue. *See, e.g., Valley Finance, Inc. v. United States*, 629 F.2d 162, 171 n.19 (D.C. Cir. 1980) (in a post-levy proceeding, the IRS must justify its extraordinary action and must make a showing of probable cause to rebuff immediate challenges to its propriety); *Flores v. United States*, 551 F.2d 1169, 1174-5 (9th Cir. 1977) ("just as police need probable cause…so, too, the Internal Revenue Service needs probable cause at the time assets are initially seized to connect those assets to a taxpayer with outstanding taxes due"); *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 339 (1977) (indicating that IRS must have probable cause in order to effect administrative seizures).

In his concurrence in *Oxford Capital*, Judge Dennis explained that burden-shifting is necessary to comply with the Fourth Amendment "to prevent abusive enforcement of the tax laws through the baseless seizure of property," and "a levy made without probable cause to believe the property seized belongs to the taxpayer amounts to an unconstitutional seizure and is thus wrongful for purposes of section 7426 regardless of any *post hoc* justification offered by the IRS." *Id.* at 288 (emphasis in original). *See Certified Enters., Inc. v. United States*, No. 4:17-CV-202 SNLJ, at *4 (E.D. Mo. Dec. 13, 2017) (indicating that the three circuits addressing the

issue held that probable cause at time of levy is needed to comply with the Fourth Amendment).

This is the same conclusion reached by the Ninth Circuit:

> At the time of proceedings under § 7426 which will either sustain or void that seizure, it is equally necessary that the Revenue Service show that a nexus exists between the taxpayer and the property, or the permanent deprivation that has resulted from the seizure would be arbitrary and as a result offensive to the requirements of due process of law. Since the Internal Revenue Service has this obligation in any event, it seems highly appropriate for the Government to bear the burden of persuasion on what is really the identical question raised by the terms of the statute — whether the levy is wrongful because the taxpayer has no interest in the property…By holding that the Internal Revenue Service has the burden of persuasion on this issue, we are determining that in the absence of proof, the plaintiff will prevail. *See* 9 *Wigmore on Evidence* § 2485 (3d ed. 1940). Were this not the case, the taxes of a California resident could be collected from a totally unrelated person in New York, and the New Yorker would be forced to prove a negative fact about which he has absolutely no information, *i.e.,* that the Californian has no interest in his property. Principles of fair play and common sense dictate the result which we reach.

*Flores v. United States*, 551 F.2d 1169, 1175-76 (9th Cir. 1977). Accordingly, even prior to engaging in any discovery, the Government is required to show that it had <u>at least</u> probable cause for initiating this levy.[4] That, in turn, requires the Government to present evidence that it was reasonable for the Government to believe that Neuberger Quinn was the alter ego of Lehcim in order to pursue that levy.

Here, there is no evidence that supports even a finding of probable cause for alter ego liability at the time of the levy. The Government admits that Lehcim was not owned by Neuberger Quinn. In support of its alter ego theory, the Government provides evidence that Lehcim had funds in an attorney-client trust account at Neuberger Quinn and possessed promissory notes from other entities. Recognizing that the meager snippets of evidence it has

---

[4] For the reasons set forth in Neuberger Quinn's Opening Memorandum, the Government's burden in this case should be to present clear and convincing evidence, the standard in Maryland. But, as the Government brought forward almost no evidence at all, it fails the test on a probable cause standard as well.

provided do not come close to fulfilling its burden the show that Neuberger Quinn is the alter ego of Lehcim, the Government has submitted lengthy requests for discovery about the relationship between Neuberger Quinn and Lehcim. The Government's failure to present evidence sufficient to show that it had at least probable cause to levy Neuberger Quinn's operating account, requires that the Court grant summary judgment. Indeed, the Government's discovery requests effectively confirm that the Government lacked any factual basis at the time of the levy to assert that Neuberger Quinn was the alter ego of Lehcim, even leaving aside the irreparable legal flaws of the levy.

The arguments made by the Government do not rise to the level of reasonable suspicion, much less the probable cause needed to satisfy the nexus threshold at the time of the alter ego levy.[5] And without adequate evidence, the actions of the Government run roughshod over constitutional protections within the Fourth Amendment. For the reasons stated in *Oxford Capital* and *Flores*, summary judgment should be granted in favor of Neuberger Quinn.

## VI.     PRINCIPLES OF ESTOPPEL APPLY IN THIS SITUATION

And while the lack of allegations of common ownership and evidence supporting alter ego liability are enough to resolve this case now in favor of Neuberger Quinn, the Government is also wrong on the application of principles of estoppel. Before concluding its Opposition, the United States argues that it was appropriate to deny Neuberger Quinn all rights to Collection Due Process – and treat Lehcim and Neuberger Quinn as separate persons for administrative purposes except when necessary to seize its funds. Both of the reasons that it provides do not pass muster.

---

[5] The Government must provide admissible evidence, beyond conjecture and speculation, to establish nexus. One of the cases relied upon heavily by the Government, , *Prompt Staffing, Inc. v. United States*, 321 F. Supp. 3d 1157 (C.D. Cal. 2018), confirms this: "The opinions, conclusions and reasoning of IRS Revenue Officers who imposed the levies are irrelevant and unlikely to lead to relevant evidence."

First, while the Government seems to acknowledge that traditional elements of estoppel are present, it argues that Neuberger Quinn has not shown that there was "affirmative misconduct" necessary to apply the principle against the government. In support, it cites principles set forth in an unpublished opinion from the Fourth Circuit. *Austin v. Winter,* 286 F. App'x 31, 38 (4th Cir. 2008). Setting aside the lack of precedential value of an unpublished decision, that case did not deal with either estoppel by admission or judicial estoppel; instead, it dealt with a separate principle: equitable estoppel. *Id.* Judicial estoppel is a distinct principle with a wholly different policy rationale and different legal elements. As explained in *Guiness PLC v. Ward*, 955 F.2d 875, 899 (4th Cir. 1992):

> That an estoppel can arise because of a prior inconsistent claim or position taken in a judicial proceeding is clear. A party cannot have its cake and eat it too. Although there are several species of estoppel, the court is here dealing with what is generally known as judicial estoppel or the doctrine of preclusion against inconsistent positions. **This type of estoppel protects interests different from those protected by equitable estoppel**, the type referred to in 31 C.J.S. Estoppel § 117a (1964),… Equitable estoppel is designed to protect any adversary who may be prejudiced by the attempted change of position. On the other hand, judicial estoppel, or preclusion against inconsistent positions, is designed to protect the integrity of the courts and the judicial process. (Emphasis supplied).

*See also Lowery v. Stovall*, 92 F.3d 219, 223 n.3 (4th Cir. 1996) ("judicial estoppel may apply in a particular case 'where neither collateral estoppel nor equitable estoppel…would apply'"). Similarly, estoppel by admission is a different principle than equitable estoppel. *See Presidential Towers Condo., Inc. v. Republic Servs., Inc.*, Case No.: GJH-16-3673, at *9 n.5 (D. Md. Feb. 20, 2018) (explaining that estoppel by admission prevents a party from taking a position inconsistent with that in prior legal proceedings and is different than equitable estoppel). *See also Nusbaum v. Nusbaum*, 243 Md. App. 653, 666 (Md. Ct. Spec. App. 2019) (indicating they are different

doctrines and judicial estoppel is derived from principles of estoppel by admission in English jurisprudence).

Accordingly, since equitable estoppel does not apply here, there is no need to discuss the affirmative misconduct committed by the Internal Revenue Service in its dealings with Neuberger Quinn. And since the Government does not contend that Neuberger Quinn has failed to satisfy the actual requirements for the doctrine of judicial estoppel, the Government should now be prevented from adopting a position opposite of what it has taken to this point.

The Government also contends that alter ego liability does not transform an entity for all purposes and, therefore, it can argue contrary positions without implicating principles of corporate estoppel. This argument also fails. The case cited by the Government, *Portsmouth Ambulance, Inc. v. United* States, 756 F.3d 494, 501 (6th Cir. 2014), held that treatment of an entity as an alter ego for <u>collection purposes</u> did not transform them into the same entity for tax <u>assessment purposes</u>. Unlike that situation, here the Government contends that it can treat Neuberger Quinn as the same as Lehcim for <u>tax collection purposes</u>, but that Neuberger Quinn is not entitled to any rights afforded for <u>tax collection purposes</u>. This is a substantially different situation than in *Portsmouth Ambulance*.[6]

---

[6] Neuberger Quinn is not arguing that application of the alter ego doctrine transforms the entities into one for all purposes. Instead, under principles of estoppel, Neuberger Quinn is entitled to be treated consistently for tax collection purposes. In other words, under principles of estoppel, the United States cannot deny the procedural ability of a person to challenge a levy on any basis, including alter ego theory, while also claiming that person is liable. Indeed, the statutory language in 26 U.S.C. § 6330 specifically requires that a person be entitled to pre-levy appeal rights, which were denied to Neuberger Quinn: "No levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made…" 26 U.S.C. § 6330(a)(1). The Government's only basis for not complying with this statute was that Neuberger Quinn and Lechim were different entities. It cannot now reverse course.

In terms of specific statutory rights that were denied to Neuberger Quinn by seizing its property without providing administrative rights, several statutes are implicated. For instance, 26 U.S.C. § 6330(a) states that any "[n]o levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made." Known as Collection Due Process rights, these laws provide "any person" with the right to challenge levies and seizures in a pre-seizure judicial forum. Had these rights been recognized, this case would have been resolved administratively or in United States Tax Court prior to the seizure. Also, separate statutes require further notice and demand for payment and notification of impending levies. *See, e.g.,* 26 U.S.C. §§ 6303, 6331.

## VII. CONCLUSION

In summary, Maryland law clearly determines the application of the alter ego doctrine and, coupled with the indisputable fact that Neuberger Quinn was not a shareholder or owner of Lehcim, requires summary judgment in favor of Neuberger Quinn. Without ownership of Lehcim by Neuberger Quinn, no alter ego theory can succeed. While some of the requested discovery may be germane to other issues for alter ego, (e.g. alleged fraud or alleged failure to observe corporate formalities), the discovery is nonetheless irrelevant and immaterial. None of the requests are aimed at the ownership of Lehcim and/or Neuberger Quinn and nothing that might be produced would affect the ownership issue. And none of the additional discovery requests would remedy the Government's utter failure to provide any good faith justification for the levy – which is based upon evidence at the time of levy and required by the Fourth Amendment.

The alter ego doctrine does not provide any legal basis for the Government to seize a law firm's property when a taxing agency is unable to collect taxes from one if its clients. For the

reasons stated herein, the Motion for Summary Judgment should be granted, and the United States should be ordered to return the funds it wrongfully seized from Neuberger Quinn's operating account which indisputably have no connection to Lehcim.

Dated: February 1, 2023                                Respectfully submitted,

                                              */s/ James P. Ulwick*
James P. Ulwick (Federal Bar No. 00536)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
(410 752-6030
(410) 539-1269 (facsimile)
julwick@kg-law.com

Brandon N. Mourges, (Federal Bar No. 29477)
CREPEAU MOURGES
1344 Ashton Road, Suite 110
Hanover, Maryland 21076
Telephone: 667-900-9912
Fax: 667-999-0202
brandon@usataxlaw.com

*Attorneys for Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*