# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NEUBERGER, QUINN, GIELEN, RUBIN      *
& GIBBER, P.A.

               *

   **Plaintiff,**

                *

**v.**                 **Civil Action No. EA-22-2129**

                *

**UNITED STATES OF AMERICA,**

                *

   **Defendant.**

                *

## MEMORANDUM OPINION

Plaintiff Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. (NQGRG) initiated this action on August 23, 2022, challenging a tax levy by Defendant United States of America and seeking injunctive and monetary relief, damages, and costs pursuant to 26 U.S.C. §§ 7426 and 7430. ECF No. 1.  Pending before the Court are NQGRG's Renewed Motion for Summary Judgment (ECF No. 67), the United States' Cross-Motion for Partial Summary Judgment (ECF No.70), and related motions to seal (ECF Nos. 69 and 71).  The issues are fully briefed (ECF Nos. 67-71, 75, and 77), and a hearing on the motions was held on May 30, 2024 (ECF No. 86).  For the reasons set forth below, NQGRG's motion is denied, the United States' motion is granted, and the motions to seal are denied.

## I.  Background

NQGRG and the United States present starkly different accounts of the material facts in their summary judgment filings.  *Compare* ECF No. 67-1 at 10-13 *with* ECF No. 70-1 at 14-24.[1] In essence, NQGRG contends that it is a well-respected law firm that provided business and tax

---

[1] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system printed at the top of the cited document.

advice to its client Lehcim Holdings, Inc. (Lehcim), whose beneficial owner is Michel Konig, and that the Internal Revenue Service (IRS) unlawfully levied funds in NQGRG's bank account to satisfy Lehcim's federal tax liability.  ECF No. 67-1 at 10-12.  The United States, on the other hand, contends that NQGRG incorporated and ran Lehcim for the purpose of generating unlawful tax deductions for Mr. Konig, and that principals of NQGRG transferred assets out of Lehcim to avoid payment of federal tax liabilities.  ECF No. 70-1 at 13.  Suffice to say, disputed issues of material fact abound.  What follows is a brief synthesis of what the Court understands to be the undisputed facts that frame the parties' legal claims.

For more than 30 years, NQGRG has been a law firm organized as a Maryland professional association with a principal place of business in Baltimore.  ECF Nos. 1 ¶¶ 2 and 6, 13 ¶¶ 2 and 6.  Lehcim is a Maryland corporation that NQGRG incorporated in 2001 on behalf of Mr. Konig, one of NQGRG's clients, who is the beneficial owner of Lehcim.  ECF Nos. 1 ¶ 8, 13 ¶ 8, 67-4 at 4, 70-3 at 7, 70-4 at 8, and 70-7.  Lehcim's articles of incorporation list its principal office as that of NQGRG and its resident agent as Hillel Tendler, one of NQGRG's principals.  ECF Nos. 70-2 at 5 and 70-7 at 1.  NQGRG is not a shareholder or owner of Lehcim, although throughout Lehcim's existence Mr. Tendler has served as a corporate officer and Issac Neuberger, another NQGRG principal, has served as an officer and Lehcim's sole director.  ECF Nos. 67-4 at 5, 70-2 at 28-29, 70-3 at 10, 70-5 at 21, and 70-8 at 1.  Lehcim does not have a separate bank account of its own and from 2010 through 2015, NQGRG and Lehcim filed separate income tax returns.  ECF Nos. 1 ¶ 12, 13 ¶ 12, and 70-3 at 19.

On May 12, 2022, the IRS served a Notice of Levy on PNC Bank to satisfy Lehcim's tax liabilities from 2010 through 2015.  ECF Nos. 67-2 at 2, 70-4 at 11, and 70-39 at 9.  The Notice of Levy identified the taxpayer as "Neuberger, Quinn, Gielen, Rubin, & Gribber, P.A., Alter Ego

of Lehcim Holdings, Inc," and indicated that NQGRG had a tax liability in the amount of $1,543,929.29. ECF Nos. 67-2 at 2 and 70-39 at 9. On the same date that the Notice of Levy was served, PNC Bank froze the levied funds in NQGRG's account. ECF Nos. 1 ¶ 21 and 13 ¶ 21.

On June 2, 2022, NQGRG filed a Collection Appeal Request challenging the levy and requesting a conference with the IRS Independent Office of Appeals. ECF No. 70-39 at 1-2. In this request, NQGRG argued that it was not Lehcim's alter ego and that the levy violated "multiple subsections of I.R.C. § 7803(a)(3), i.e., the Taxpayer Bill of Rights." *Id*. at 3. NQGRG addressed the Collection Appeal Request to an IRS Revenue Officer and requested that if the levy were not reversed, the Collection Appeal Request be forwarded to the IRS Independent Office of Appeals. *Id.* at 4. NQGRG subsequently initiated this wrongful levy action on August 23, 2022.

## II.   Discussion

Pending before the Court are cross-motions for full and partial summary judgment and accompanying motions to seal. ECF Nos. 67 and 69-71. Each motion is addressed in turn below.

### A.   Motions to Seal

The Court entered a Confidentiality Order in this action (ECF No. 46), which governs confidential information exchanged in discovery. Among other things, it directs the parties to file any materials subject to the Confidentiality Order with an interim sealing motion. ECF No. 46 ¶ 2. Consistent with the relevant terms of the Confidentiality Order, the parties' summary judgment motions are accompanied by interim sealing motions. ECF Nos. 69 and 71. NQGRG seeks to file Exhibits 6 and 7 to its motion under seal, whereas the United States asserts that

neither its motion nor any of the accompanying exhibits should be sealed.  ECF Nos. 69 and 71 at 1.

The designation of confidential materials has been the subject of debate in this action. *See* ECF Nos. 52, 54, 57, 72, 76, 77, and 83.  Regardless of the merits of the confidentiality designations in the course of discovery, the Court must consider the propriety of sealing summary judgment filings separately because of the public's right of access to court filings.  As the Fourth Circuit has observed, "discovery, which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court." *Rushford* v. *New Yorker Mag., Inc.*, 846 F.2d 249, 252 (4th Cir. 1988) (holding that documents filed in support of summary judgment would be unsealed despite having been produced pursuant to a protective order in discovery).  Accordingly, "the district court must address the question [of sealing] at the time it grants a summary judgment motion and not merely allow continued effect to a pretrial discovery protective order."  *Id.* at 253.

The public's right of access to the courts and court records is paramount.  "Transparency is not only important for its own sake.  It is integrally linked to the need of courts to maintain public trust."  *Doe* v. *Sidar*, 93 F.4th 241, 250 (4th Cir. 2024) (Wilkinson, J., concurring).  This important right "springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny."  *Doe* v. *Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014).  Key to the Court's analysis is the source of the right of public access, for "the strength of the right of access varies depending on whether the public's right of access to the document or proceeding derives from the common law or the First Amendment."  *United States* v. *Doe*, 962 F.3d 139, 145 (4th Cir. 2020).  Under the common law, the "presumption of access . . . can be rebutted if countervailing interests heavily outweigh the public interests in access."

*Rushford*, 846 F.2d at 253.  "Under the First Amendment, on the other hand, the denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest."  *Id.*  Thus, the "public's right to access documents under the First Amendment is narrower in scope but stronger in force."  *United States* v. *Doe*, 962 F.3d at 145.  The Court of Appeals for the Fourth Circuit has "squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion."  *Doe* v. *Pub. Citizen*, 749 F.3d at 267; *see also Springs* v. *Ally Fin. Inc.*, 684 Fed. Appx. 336, 338 (4th Cir. 2017).  This is because "summary judgment adjudicates substantive rights and serves as a substitute for a trial."  *Rushford*, 846 F.2d at 252.

The United States does not assert any compelling basis for sealing its motion and related exhibits.  In fact, it affirmatively states that its filings should not be sealed.  ECF No. 71 at 1.  NQGRG also does not assert any compelling basis or argument for sealing Exhibits 6 and 7 to its motion.  Instead, it references only the Confidentiality Order that governed discovery and a desire to "maintain the confidentiality of this material."  ECF No. 69 at 1.  Exhibits 6 and 7 to NQGRG's motion (ECF No. 68-1) consist of emails sent by Mr. Neuberger seeking payment for services rendered and an internal NQGRG email regarding outstanding client payments and its impact on Mr. Tendler's compensation.  Nothing about these emails suggests a compelling interest in sealing; a substantial probability that, in the absence of sealing, a compelling interested would be harmed; or that there are no alternatives to sealing that would adequately protect the compelling interest.  *See United States* v. *Doe*, 962 F.3d at 146.  Additionally, pursuant to Local Rule 105.11, the parties have not indicated that they wish to withdraw any of the filings that were sealed on an interim basis pursuant to the Confidentiality Order.  Therefore,

as stated on the record at the outset of the May 30, 2024 motion hearing, the motions to seal are denied.

### B.    Summary Judgment Standard of Review

Summary judgment motion practice "is properly regarded . . . as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Federal Rule of Civil Procedure 56 provides that the district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Thus, to defeat summary judgment, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat. Bank of Ariz.* v. *Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968).  On the other hand, summary judgment "is justified if, from the totality of the evidence presented, including pleadings, depositions, answers to interrogatories, and affidavits, the court is satisfied that there is no genuine factual issue for trial and the moving party is entitled to judgment as a matter of law."  *Sylvia Dev. Corp.* v. *Calvert Cnty., Md.*, 48 F.3d 810,

817 (4th Cir. 1995).  "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law."  *Rossignol* v. *Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted).

The Fourth Circuit has cautioned that summary judgment "cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits."  *Jacobs* v. *N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-569 (4th Cir. 2015) (quoting 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 2728 (3d ed. 1998)).  At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  In doing so, the district court "must view the evidence in the light most favorable to . . . the nonmovant[ ] and draw all reasonable inferences in [its] favor without weighing the evidence or assessing the witnesses' credibility."  *Baynard* v. *Malone*, 268 F.3d 228, 234-235 (4th Cir. 2001).  Accordingly, "[i]n the face of conflicting evidence, such as competing affidavits, a court must deny summary judgment, because it is the function of the factfinder to resolve factual disputes."  *Middleton* v. *Koushall*, Civil Action No. ELH-20-3536, 2024 WL 1967816, at *9 (D. Md. May 3, 2024).

C.      NQGRG's Motion for Summary Judgment

NQGRG initiated this action and moves for summary judgment on the grounds that the United States improperly levied funds held in NQGRG's bank account to satisfy Lehcim's federal tax liability.  ECF Nos. 1, 67-1, and 75.  The United States contends that the tax levy was proper because NQGRG is Lehcim's alter ego.  ECF Nos. 13, 70-1, and 77.  NQGRG contests both the factual and legal support for this contention, arguing that NQGRG and Lehcim are

separate entities and, in any event, that Maryland alter ego law requires a judgment in favor of NQGRG.  *E.g.*, ECF No. 67-1 at 7-8.

### 1.      Wrongful Levy Actions

Title 26, United States Code, Section 6321 "authorizes the imposition of a lien in favor of the government in the amount of unpaid taxes on 'all property and rights to property, whether real or personal, belonging to [a delinquent taxpayer].'" *Bregman, Berbert & Schwartz, L.L.C.* v. *United States*, 145 F.3d 664, 668 (4th Cir. 1998) (alteration in original) (quoting 26 U.S.C. § 6321).  "A federal tax lien, however, is not self-executing.  Affirmative action by the IRS is required to enforce collection of the unpaid taxes."  *United States* v. *Nat'l Bank of Com.*, 472 U.S. 713, 720 (1985).  One such method of collection is an administrative levy, which is governed by 26 U.S.C. § 6331.  *Id.*  "This levy power extends to property held in the name of persons or entities other than the delinquent taxpayer, to the extent that the taxpayer has an interest in such property."  *Scoville* v. *United States*, 250 F.3d 1198, 1201 (8th Cir. 2001) (citing *G.M. Leasing Corp.* v. *United States*, 429 U.S. 338, 350 (1977)).  When "a taxpayer's property is held by another, a notice of levy upon the custodian is customarily served pursuant to § 6332(a)," which "gives the IRS the right to all property levied upon."  *Nat'l Bank of Com.*, 472 U.S. at 720.

This statutory scheme provides a mechanism for a third party to challenge a tax levy. Section 7426 provides, in pertinent part, that:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

26 U.S.C. § 7426(a)(1).  Such a claim requires evidence that (1) the plaintiff is not the person against whom the tax has been assessed, (2) the plaintiff has "an interest in or lien on" the levied

property, and (3) the "property was wrongfully levied upon." *Id.* A levy "is wrongful if imposed upon property in which the taxpayer had no interest . . . or if the levy . . . effectively destroys . . . a person's proprietary interest that is senior to the Federal tax lien." *Oxford Cap. Corp.* v. *United States*, 211 F.3d 280, 283 (5th Cir. 2000); *see also Scoville*, 250 F.3d at 1201 ("A levy is wrongful when made on property in which the delinquent taxpayer actually has no interest.") (citing *Pate* v. *United States*, 949 F.2d 1059, 1060 (10th Cir. 1991)). A wrongful levy suit under Section 7426 "is the exclusive remedy available to parties (other than the taxpayer) claiming an interest in property upon which the IRS has levied." *Tompkins & McMaster* v. *United States*, Civil Action No. 95-1882, 1996 WL 389483, at *2, 91 F.3d 134 (Table) (4th Cir. July 12, 1996); *see also Audio Invs.* v. *Robertson*, 67 Fed. Appx. 795, 797 (4th Cir. 2003). In any action filed under Section 7426, "the assessment of tax upon which the interest or lien of the United States is based shall be conclusively presumed to be valid." 26 U.S.C. § 7426(c); *see also Brooks* v. *United States*, 833 F.2d 1136, 1147 (4th Cir. 1987).

"To prove that a levy is wrongful, (1) a plaintiff must first show some interest in the property to establish standing, (2) the burden then shifts to the IRS to prove a nexus between the property and the taxpayer, and (3) the burden then shifts back to the plaintiff to prove the levy was wrongful, e.g., that the property in fact did not belong to the taxpayer." [2] *Oxford Cap. Corp.*, 211 F.3d at 283. Here, the parties concur that NQGRG has an interest in the levied funds, thus alleviating the need to examine the first step of the burden-shifting analysis. *E.g.*, ECF Nos.

---

[2] NQGRG and the United States disagree as to the quantum of evidence required to establish a nexus between the taxpayer and the levied property, with NQGRG arguing that it is "clear and convincing evidence" because of the Maryland law analysis at the second step of the burden-shifting analysis, and the United States arguing that it is "substantial evidence" based on the weight of authority from the United States Circuit Courts of Appeals. *Compare* ECF Nos. 67-1 at 18-19 and 75 at 21-22 *with* ECF No. 70-1 at 30. At this juncture, it is unnecessary to resolve this issue.

67-1 at 9, 12-13, and 16; 67-2 at 2; 70-1 at 24; and 70-39 at 9; *see also* ECF No. 13 ¶ 4 ("the United States admits that Plaintiff claims an interest in the levied property").  As to the second step, the United States may establish the requisite nexus between the levied property and the taxpayer through evidence that a third party holding the property is the taxpayer's alter ego.  *E.g.*, *Towe Antique Ford Found.* v. *I.R.S.*, 999 F.2d 1387, 1390 (9th Cir. 1993) (collecting cases).  "Alter ego means 'other self'—where one person or entity acts like, or, for another to the extent that they may be considered identical."  *United States* v. *Scherping*, 187 F.3d 796, 801 (8th Cir. 1999); *see also Prompt Staffing, Inc.* v. *United States*, 321 F. Supp. 3d 1157, 1170 (C.D. Cal. 2018) ("Alter ego focuses on whether the taxpayer's relationship to the title holder allows the taxpayer to retain the benefits of true ownership.").  Ultimately, to prevail in this action, NQGRG must prove "that the property in fact did not belong to the taxpayer."  *Oxford Cap. Corp.*, 211 F.3d at 283; *see also Scoville*, 250 F.3d at 1201; *LiButti* v. *United States*, 107 F.3d 110, 118 (1997).

## 2.    Choice of Law

With respect to establishment of the nexus between NQGRG and Lehcim, the parties disagree as to whether federal common law or Maryland law governs the alter ego analysis.  NQGRG and the United States each rely on *Drye* v. *United States*, a wrongful levy case in which the United States Supreme Court reiterated the two-step inquiry used to determine "whether a taxpayer has a beneficial interest in any property subject to levy for unpaid federal taxes."  528 U.S. 49, 57 (1999).  The *Drye* Court explained:

> We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as "property" or "rights to property" within the compass of the federal tax lien legislation.

*Id.* at 58; *see also Bregman, Berbert & Schwartz, L.L.C.*, 145 F.3d at 668.

*Drye* is one in a series of Supreme Court decisions that articulates and affirms the principle that "state law controls in determining the nature of the legal interest which the taxpayer had in the property." *Nat'l Bank of Com.*, 472 U.S. at 722-723.  This is because the "federal tax lien statute itself 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.'"  *United States* v. *Craft*, 535 U.S. 274, 278 (2002) (quoting *United States* v. *Bess*, 357 U.S. 51, 55 (1958)).  Put differently, state law "determines only which sticks are in a person's bundle," but federal law determines whether "those sticks qualify as 'property' for purposes of the federal tax lien statute." *Id.* at 278-279.  In the end, "the [Internal Revenue] Code and interpretive case law place under federal, not state, control the ultimate issue whether a taxpayer has a beneficial interest in any property subject to levy for unpaid federal taxes." *Drye*, 528 U.S. at 57.

Notwithstanding this clear line of cases, the United States argues that federal common law applies to the alter ego analysis because it involves a theory of liability as opposed to a property right.  ECF No. 70-1 at 31.  In support of its position, the United States relies on case law addressing alter ego claims under other federal statutes. *Id.* at 31-32 (collecting cases). Nevertheless, the United States has acknowledged both in its brief and at the motions hearing, that "many cases treat alter ego as a question of state law." *Id.* at 31 n.13.  Indeed, the considerable weight of authority, including Supreme Court precedent, dictates this approach.

Although not yet addressed by the Fourth Circuit, the clear majority of other Circuit Courts of Appeals have approved of the application of state law to determine whether a third party is a taxpayer's alter ego in the context of a tax levy. *Old W. Annuity & Life Ins. Co.* v. *Apollo Grp.*, 605 F.3d 856, 861 (11th Cir. 2010) ("Other circuits appear uniform in their application of state law to this issue.") (collecting cases); *accord Berkshire Bank* v. *Town of*

*Ludlow, Mass.*, 708 F.3d 249, 251-252 (1st Cir. 2013); *Scherping*, 187 F.3d at 802 (8th Cir.

1999); *Floyd* v. *Internal Revenue Serv.*, 151 F.3d 1295, 1297 (10th Cir. 1998); *Zahra Spiritual*

*Tr.* v. *United States*, 910 F.2d 240, 242 (5th Cir. 1990); *Wolfe* v. *United States*, 806 F.2d 1410,

1411 (9th Cir. 1986).  Moreover, courts have rejected variations of the United States' argument

here in the context of alter ego and nominee analysis.[3]  *E.g.*, *Fourth Inv. LP* v. *United States*, 720

F.3d 1058, 1067 (9th Cir. 2013) (rejecting the United States' argument that "federal common law

must govern nominee determinations because the ability to collect taxes is a vital federal

interest"); *Old W. Annuity & Life Ins. Co.*, 605 F.3d at 861 (rejecting the United States' argument

that alter ego was "not as a question of property under the . . . *Drye* framework, but instead as an

issue of the taxpayer's identity").

      The divergent approaches suggested by the parties may be attributable to the lack of

clarity as to how the two-step state and federal law analysis applies in practice.  The backdrop to

this analysis is the Supreme Court's recurring observation that the "broad" language of the

federal tax lien statute "reveals on its face that Congress meant to reach *every interest* in property

that a taxpayer might have."  *Drye*, 528 U.S. at 56 (emphasis added) (quoting *Nat'l Bank of*

*Com.*, 472 U.S. at 719-720); *see also Craft*, 535 U.S. at 283 ("Stronger language could hardly

have been selected to reveal a purpose to assure the collection of taxes.") (internal quotation

marks and citation omitted).  Thus, once "it has been determined that state law creates sufficient

interests in the [taxpayer] to satisfy the requirements of [the federal tax lien provision], state law

is inoperative to prevent the attachment of liens created by federal statutes in favor of the United

States."  *Drye*, 528 U.S. at 52 (quoting *Bess*, 357 U.S. at 56-57) (alteration in original).

---

[3]  "A nominee is one who holds bare legal title to property for the benefit of another."
*Fourth Inv. LP* v. *United States*, 720 F.3d 1058, 1066 (9th Cir. 2013).

Accordingly, the Supreme Court has not allowed state law to divest a taxpayer of a property interest to the detriment of federal tax collection.  For example, when considering the right to withdraw proceeds from a joint bank account or to compel an insurer to pay the cash surrender value of a life insurance policy, the Supreme Court has found both to be property subject to attachment for unpaid federal taxes even though state law shielded such assets from creditors.  *Drye*, 528 U.S. at 58-59.  Similarly, in the context of federal tax liability, the Supreme Court has not allowed legal fictions or disclaimers of a property interest approved under state law, such as a renunciation of marital or inheritance assets, to preclude tax collection.  *Id.* at 58-61; *Craft*, 535 U.S. at 279.

The lower courts have taken divergent approaches in their application of the two-step inquiry, leaving quite murky the question of where the state law analysis ends, and the federal law analysis begins.  For example, in *Prompt Staffing, Inc.* v. *United States*, the district court applied California law to determine whether the taxpayer was the alter ego of the plaintiff corporations and then applied federal law to determine if the IRS could permissibly levy the corporations' funds.  321 F. Supp. 3d at 1175-1179.  On the other hand, the district court's analysis in *Old W. Annuity & Life Ins. Co.* v. *Apollo Grp.* rested entirely on state law, finding that Florida's restrictive alter ego law precluded the IRS from levying the corporate assets.  Civil Action No. 5:03-CV-354-OC-10GRJ, 2008 WL 2993958, at *7-11 (M.D. Fla. Aug. 1, 2008), *aff'd*, 605 F.3d 856 (11th Cir. 2010).  At this juncture, it is unnecessary to determine precisely where to draw the line between the operation of state and federal law with respect to the alleged nexus between the funds in NQGRG's bank account and Lehcim.  Suffice to say, the first step of the alter ego nexus analysis in this action is rooted in Maryland law.

### 3.      Maryland Alter Ego Law

As the United States correctly notes, the alter ego doctrine is an equitable theory of liability.  *See Cahall* v. *Tyler Donegan Duncan Real Est. Servs., Inc.*, Nos. 195 and 450, Sept. Term, 2020, 2022 WL 4286235, at *9 (Md. Ct. Spec. App. Sept. 16, 2022), *cert. denied sub nom.*, 482 Md. 264 (2022), *and cert. denied sub nom.*, 482 Md. 270 (2022).  It is therefore a peculiar analytical framework for assessing a taxpayer's property interest, as required in the first step of the *Drye* analysis.  Yet, in the context of unlawful levy actions, federal courts have widely employed state alter ego law to determine if the United States had established the requisite nexus.  *See supra* pp. 10-11.  Given its role as a theory of liability, it is unsurprising that the alter ego doctrine arises in a several areas of Maryland law.  *See*, *e.g.*, *Hildreth* v. *Tidewater Equip. Co.*, 378 Md. 724 (2003) (corporations and business organizations); *Three Garden Vill. Ltd. P'ship* v. *U.S. Fid. & Guar. Co.*, 318 Md. 98 (1989) (insurance); *Board of Educ. of Prince George's Cnty.* v. *Prince George's Cnty. Educators' Ass'n, Inc.*, 309 Md. 85 (1987) (labor and employment); *Continental Cas. Co.* v. *Mirabile*, 52 Md. App. 387 (1982) (worker's compensation).  Here, NQGRG points the Court to Maryland's alter ego law in the context of piercing the corporate veil.[4]

Under Maryland law, "a corporate entity may be disregarded when necessary to prevent fraud or to enforce a paramount equity."  *Schlossberg* v. *Bell Builders Remodeling, Inc.*, 441 Md. 671, 672 (2015).  In *Hildreth* the Supreme Court of Maryland synthesized veil-piercing case law

---

[4]  As noted, the United States contends that the nexus analysis is governed by federal alter ego law.  *See supra* p. 11.

and delineated the circumstances in which courts may disregard the corporate form.[5]  378 Md.

724 (2003).  The *Hildreth* Court outlined that, in Maryland, the corporate entity will be

disregarded in the following circumstances:

> *First.* Where the corporation is used *as a mere shield for the perpetration of a fraud,* the courts will disregard the fiction of separate corporate entity.
>
> *Second.* The courts may consider a corporation as unencumbered by the fiction of corporate entity and deal with substance rather than form as though the corporation did not exist, *in order to prevent evasion of legal obligations.*
>
> *Third.* Where the stockholders themselves, or a parent corporation owning the stock of a subsidiary corporation, *fail to observe the corporate entity, operating the business or dealing with the corporation's property as if it were their own,* the courts will also disregard the corporate entity for the protection of third persons.

*Id.* at 734 (emphasis in original).

The "third circumstance embodies what is sometimes called the 'alter ego' doctrine," the

rationale for which is that "if the shareholders or the corporations themselves disregard the

proper formalities of a corporation, then the law will do likewise as necessary to protect

individual and corporate creditors."  *Id.* at 735 (quoting Alter ego or mere instrumentality

doctrine, 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations

§ 41.10 (1999 Rev. Vol.)) (internal quotation marks omitted).  To invoke the alter ego theory of

liability, a plaintiff must show a "complete domination" of the corporate entity that was used "to

commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or

---

[5]  Effective December 14, 2022, the name of Maryland's highest court was changed from the "Maryland Court of Appeals" to the "Supreme Court of Maryland" and the name of Maryland's intermediate court was changed from "Maryland Court of Special Appeals" to "Appellate Court of Maryland."  *E.g., Middleton*, 2024 WL 1967816, at *21 n.16.  The undersigned will use the Courts' present names throughout this opinion.

dishonest and unjust act" that "proximately caused the injury or unjust loss" and involved fraud or would lead to "an inequitable result, involving fundamental unfairness."  *Id.*

While there is "no universal rule as to the specific criteria that courts will consider in determining whether to apply the [alter ego] doctrine," the *Hildreth* Court outlined a series of relevant factors, drawing on the Fletcher treatise and case law.  *Id.*  These factors include:

> (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records.

*Id.*  As this list and interpretive case law suggest, the inquiry is directly tied to the facts and circumstances of each case.  *See, e.g.*, *Vitol, S.A.* v. *Primerose Shipping Co.*, 708 F.3d 527, 544 (4th Cir. 2013) ("At its core, the question of whether to pierce the corporate veil is a fact-intensive inquiry, because the circumstances necessarily vary according to the circumstances of each case, and every case where the issue is raised is to be regarded as sui generis to be decided in accordance with its own underlying facts.") (internal quotation marks and citation omitted). For this reason, the alter ego analysis typically does not lend itself to resolution on summary judgment, particularly in a case such as this where the parties dispute so many issues of material fact.  *See, e.g.*, *Johnson* v. *Ross*, 419 Fed. Appx. 357, 363 (4th Cir. 2011) (noting that "the propriety of piercing the corporate veil usually involves numerous questions of fact for the trier of the facts to determine upon all of the evidence") (internal quotation marks and citation omitted); Question of law or fact, 1 FLETCHER CYC. CORP. § 41.95 (Nov. 2023 Update) (observing that "the decision to pierce the corporate veil is ultimately a fact-sensitive inquiry to be determined after consideration of all evidence submitted, and is rarely appropriate on summary judgment").

Nevertheless, NQGRG argues that it is entitled to judgment as a matter of law because Maryland corporate veil-piercing law is so restrictive that the United States cannot possibly prove the facts required to invoke the doctrine.  ECF No. 67-1 at 18-30.  Case law is clear that, in the context of disregarding the corporate form, the alter ego doctrine "is applied 'with great caution and reluctance' and only in 'exceptional circumstances.'"  *Hildreth*, 378 Md. at 735 (quoting 1 FLETCHER CYC. CORP. § 41.10).  And, as NQGRG correctly notes, "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil." *Residential Warranty Corp.* v. *Bancroft Homes Greenspring Valley, Inc.*, 126 Md. App. 294, 309 (1999).  But to prevail at summary judgment, after viewing the evidence in the light most favorable to the United States and drawing all inferences in its favor, NQGRG must establish that no reasonable juror could conclude that Lehcim did not have a property interest in the levied funds in NQGRG's operating account.  NQGRG has not carried this burden.  Although Maryland courts infrequently pierce a corporate veil, the state's highest court continues to reaffirm the availability of the doctrine.  *Schlossberg*, 441 Md. at 672 (holding, in response to a certified question from this District's United States Bankruptcy Court, that the corporate form may be disregarded upon a showing of fraud or paramount equity, consistent with the factors outlined in *Hildreth*).

Moreover, the rationale for the infrequent application of piercing the corporate veil under Maryland law is "the state's interest in limited shareholder liability."  *Serio* v. *Baystate Properties, LLC*, 209 Md. App. 545, 559-560 (2013); *see also Dixon* v. *Process Corp.*, 38 Md. App. 644, 645 (1978) ("A commercial corporation is a legal entity conceived by the mind of [humans] and legitimated by statute for the avowed purpose of achieving a maximum profit with a minimum exposure to liability.").  The federal tax collector, however, is no ordinary creditor.

17

The Supreme Court has repeatedly distinguished between tax collection and other debts and noted that the Internal Revenue Code endows the IRS with enforcement powers that exceed those of an ordinary creditor.  *United States* v. *Rodgers*, 461 U.S. 677, 697 (1983) (observing that use of the power granted by the federal tax code "is not the act of an ordinary creditor, but the exercise of a sovereign prerogative, incident to the power to enforce the obligations of the delinquent taxpayer himself, and ultimately grounded in the constitutional mandate to 'lay and collect taxes'") (internal citation omitted); *accord United States* v. *McDermott*, 507 U.S. 447, 455 (1993); *United States* v. *Whiting Pools, Inc.*, 462 U.S. 198, 209-210 (1983); *Schlossberg* v. *Barney*, 380 F.3d 174, 181 (4th Cir. 2004).  Indeed, the treatise the Supreme Court of Maryland cited favorably when detailing the appropriate grounds to disregard the corporate form notes that the "guiding principle concerning observance or disregard of the entity in tax matters is the protection of the government against tax evasion."  Taxing the corporate entity, 1 FLETCHER CYC. CORP. § 45.10 (Nov. 2023 Update).  The availability of the alter ego doctrine under Maryland law, together with the tax collection context in which Maryland law is to be applied and the breadth of disputed material facts, forecloses a decision at this juncture that, as a matter of law, the levy was unlawful.

NQGRG further argues that it is entitled to summary judgment because piercing the corporate veil under Maryland law permits access only to shareholder assets and it is undisputed that NQGRG is not a Lehcim shareholder.  ECF Nos. 70-1 at 21-23 and 75 at 5-6, 10-13.  In support of this argument, NQGRG points to no specific authority holding that Maryland law restricts piercing the corporate veil or the alter ego theory of liability to shareholders.  Instead, NQGRG's argument appears to rest on its assessment that many Maryland veil-piercing decisions arise in the context of cases involving shareholders.  *E.g.*, ECF No. 67-1 at 21-22.

While that observation may be sound, as the United States notes (ECF No. 70-1 at 33 n.15), discussion of facts involving shareholders does not equate to a holding that veil-piercing or the alter ego doctrine applies exclusively to corporate shareholders.

A review of caselaw suggests that the equitable theories of relief are not as narrow or clearly defined as NQGRG suggests.  None of the enumerated circumstances for veil-piercing, required elements for an alter ego finding, or the list of suggested factors outlined in *Hildreth*, 378 Md. at 734-735, and reaffirmed in *Schlossberg*, 441 Md. at 672, specify that the equitable doctrines are available exclusively to access shareholder assets.  Indeed, Maryland courts have discussed piercing the corporate veil to reach corporate presidents, officers, directors, and agents, in addition to shareholders.  *E.g.*, *Damazo* v. *Wahby*, 259 Md. 627, 634 (1970); *Ace Dev. Co.* v. *Harrison*, 196 Md. 357, 365 (1950).  The Appellate Court of Maryland recently affirmed a trial court's alter ego ruling based on the finding that the alter ego corporation was "associated with" two individuals.  *Holder* v. *Estes*, No. 61, Sept. Term, 2023, 2024 WL 1975249, at *18 (App. Ct. Md. May 3, 2024).  Another recent appellate decision approved of a "reverse veil-piercing" claim that sought to hold personally liable an individual to whom ownership of a corporation was fraudulently transferred to avoid a debt liability.[6]  *Kochhar* v. *Miller, Long & Arnold Co.*, No. 897, Sept. Term, 2022, 2023 WL 3558490, at *5-6 (App. Ct. Md. May 19, 2023).

Treatises, including the one the *Hildreth* Court cited with approval, also suggest that the alter ego doctrine is more expansive than NQGRG argues.  Fletcher explains that "when a

---

[6]  "Reverse veil-piercing" is "a theory which extends the 'traditional veil-piercing doctrine to permit a third-party creditor to "pierce[ ] the veil" to satisfy the debts of an *individual* out of the corporation's assets.'"  *Greystone Operations, LLC* v. *Steinberg*, No. 454, Sept. Term, 2016, 2017 WL 1365365, at *4 n.4 (App. Ct. Md. Apr. 12, 2017) (quoting *C.F. Trust, Inc.* v. *First Flight Ltd. P'ship*, 306 F.3d 126, 134 (4th Cir. 2002)) (alteration in original) (emphasis in original).

corporation is the mere instrumentality or business conduit of *another corporation or person*, the corporate form may be disregarded."[7]  1 FLETCHER CYC. CORP. § 41.10 (Nov. 2023 Update) (emphasis added); *id*. at § 41.82 (Piercing veil to reach nonshareholders) (recognizing veil-piercing to reach an equitable owner of a corporation, "with the primary consideration being the element of control or influence exercised by that person in the affairs of the corporation").  The list of factors Fletcher outlines to determine whether there is unity of ownership and interest between two entities or an entity and an individual underscores that the alter ego doctrine applies "in cases where the corporate entity has been used as a subterfuge and to observe it would work an injustice."[8]  *Id.* at § 41.10.

This is consonant with the theme that connects all three circumstances delineated in *Hildreth*:  abuse of the corporate form to facilitate (1) fraud, (2) avoidance of legal obligations, and (3) self-dealing.  378 Md. at 734.  It is also consistent with the application of alter ego

---

[7]  It is worth noting that, according to another treatise, courts in other jurisdictions have held "nonshareholders who exercise significant control over corporations liable as corporate alter egos" upon a showing that the "equitable owner controls the corporation to the extent that the corporate form is disregarded."  106 CAUSES OF ACTION 2d 349 § 2. Background (June 2024 Update).  This treatise posits that although caselaw is divided on the issue, "the majority of jurisdictions that have addressed the question allow veil-piercing against nonshareholders."  *Id.* at § 11 (collecting cases).  Maryland, however, does not appear to have explicitly confronted this question as of yet.  *Id.*; *cf. Marroquin* v. *Canales*, 505 F. Supp. 2d 283, 299 (D. Md. 2007) (acknowledging that some jurisdictions allow suits against individuals who are not named directors or employees of corporation when those individuals exercise sufficient control over the corporation, but finding that there were no facts demonstrating such control in instant case).

[8]  This treatise notes that the relevant factors may include:  "(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere façade for the operation of the dominant stockholders."  1 FLETCHER CYC. CORP. § 41.

liability in Maryland cases.  For example, in *Colandrea* v. *Colandrea*, the Appellate Court of

Maryland reversed the trial court and disregarded the corporate entity to hold the director,

president, and sole shareholder personally liable.  42 Md. App. 421, 428 (1979).  In its analysis,

the Court did not focus on the particular role of the individual within the corporate organization,

but rather on the manner in which the corporation had been created and utilized to perpetrate a

fraud.  *Id.* at 427-433.  In so holding, the Court favorably cited precedent that echoes *Hildreth*'s

alter ego factors, observing that where the "chief actor in the fraud . . . ha[s] dominated and

controlled the intervening corporate entities . . . to . . . accomplish[ ] . . . personal ends and

enterprises[,] [i]t is appropriate that equity should deal with [them] according to the verities and

not to [their] simulations."  *Id.* at 433 (quoting *Crocker* v. *Pitti*, 179 Md. 52 (1940)) (internal

quotation marks omitted).

    The focus on the misuse of an entity and the relationship between the parties engaged in

such misconduct is also reflective of how the alter ego analysis is applied in other areas of

Maryland law.  For example, in the labor and employment context, the alter ego doctrine, which

"holds the new employer responsible for the unfair labor practices and collective bargaining

obligations of the old employer[,] . . . applies when an employer, in an attempt to circumvent

labor obligations, discontinues operations and creates an entirely new entity to perform the same

operations without a substantive change in ownership or management."  *Board of Educ. of

Prince George's Cnty.*, 309 Md. at 108; *see also Continental Cas. Co.*, 52 Md. App. at 397

(assessing the employee's relationship with the corporation to determine if the alter ego theory

applied).

Here, the United States argues that NQGRG:

> incorporated and ran a corporation that did little but generate bogus tax deductions for one of [NQGRG's] clients. That company—Lehcim— . . . was unprofitable, insolvent, and conducted its "business" exclusively on [NQGRG's] IOLTA account. Lehcim's officers and directors were NQ[GRG] principals Isaac Neuberger and Hillel Tendler. They did not keep normal corporate records for Lehcim. Lehcim operated only through [NQGRG's] IOLTA account and had no accounts of its own. [Mr.] Neuberger and [Mr.] Tendler simply handed [NQGRG's] IOLTA ledgers to an accountant at tax time. They did not conduct arm's length transactions: Lehcim's "business" (to the extent that it had any) consisted of paper transactions with other entities that [Mr.] Neuberger and [Mr.] Tendler also operated for their client. On their watch, save for one year, Lehcim generated no meaningful income or capital gains. But it did claim huge deductions every year.

ECF No. 70-1 at 13. The United States further asserts that after the IRS

> assessed more than $1.4 million against Lehcim, rejecting as bogus transactions NQ[GRG] directed and for which it was paid by its client as "Tax Planning[,]" . . . NQ[GRG] did not adjust Lehcim's business . . . nor did it cause Lehcim to pay the IRS. It did the opposite. Precisely *because* of the impending assessments—and over the objection of Lehcim's experienced outside tax counsel—Neuberger and Tendler moved over $8 million from Lehcim to other entities overseas. Because [Mr.] Neuberger emptied Lehcim's coffers when the IRS tried to collect the liabilities from Lehcim, it was uncollectible.

*Id.* (emphasis in original)*; see also id.* at 14-24. As noted, NQGRG disputes these alleged facts.

*See supra* pp. 1-2. It remains to be seen whether the United States can produce the requisite

quantum of evidence to support these allegations and establish a nexus between NQGRG and

Lehcim. But in the absence of Maryland precedent clearly foreclosing application of the alter

ego doctrine in this case, it cannot be said, as a matter of law, that NQGRG is entitled to

summary judgment simply because it is not a shareholder of Lehcim.

NQGRG's remaining arguments are unavailing, as they either rely upon material facts

that are in dispute or raise legal issues that are not germane to the pending motion and thus they

are not ripe for resolution.

D.     **The United States' Cross-Motion for Summary Judgment**

In its Complaint, NQGRG pleaded that it "exhausted all necessary administrative remedies" and that it is entitled to reasonable litigation costs, including attorney's fees, and economic damages.  ECF No. 1 ¶¶ 95-96 and 96C-D.  The United States moves for partial summary judgment on the grounds that NQGRG is not entitled to damages because it failed to exhaust its administrative remedies.  ECF No. 70-1 at 25.  In opposition, NQGRG asserts that it engaged in some measure of administrative review and that damages are not precluded because further administrative review would have been futile.  ECF No. 75 at 22-30.

"Under settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued."  *United States* v. *Dalm*, 494 U.S. 596, 608 (1990) (internal quotation marks and citation omitted); *Webb* v. *United States*, 66 F.3d 691, 693 (4th Cir. 1995).  A sovereign immunity waiver "must be unequivocally expressed in statutory text" and it will "be strictly construed, in terms of its scope, in favor of the sovereign."  *Lane* v. *Pena*, 518 U.S. 187, 192 (1996).  Accordingly, any ambiguities must be construed in favor of immunity and exceptions to the conditions upon which the United States consents to be sued will not be implied.  *United States* v. *Williams*, 514 U.S. 527, 531 (1995); *Lehman* v. *Nakshian*, 453 U.S. 156, 161 (1981).

Title 26, United States Code, Section 7426, which authorizes a wrongful levy civil action, is such a waiver of sovereign immunity for the limited purpose and on the conditions outlined in the statute.  Section 7426 provides for the recovery of "actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent disregard of any provision of this title by the officer or employee" and "costs of the action."  26 U.S.C. § 7426(h)(1)(A)-(B).  As a precursor to recovery, the statute requires that administrative

remedies be exhausted as set forth in Section 7433(d).  26 U.S.C. § 7426(h)(2) ("The rules of section 7433(d) shall apply for purposes of this subsection.").  Section 7433(d), in turn, provides that a "judgment for damages shall not be awarded . . . unless the court determines that the plaintiff has exhausted the administrative remedies available."  26 U.S.C. § 7433(d)(1).

Section 7426's implementing regulations provide additional detail regarding the statute's administrative exhaustion requirement.  An award of damages is unavailable "unless the court determines that the plaintiff has filed an administrative claim" consistent with the specified requirements set out in the regulation.[9]  26 C.F.R. §§ 301.7426-2(b), (d).  Further, a request for damages may not be maintained in federal district court before a decision is rendered on the administrative claim or six months after such a claim is filed in accordance with the regulations.  26 C.F.R. § 301.7426-2(c)(i)-(ii).  The amount of any damage award is limited by statute and the amount identified in the administrative claim.  26 U.S.C. § 7433(b); 26 C.F.R. § 301.7426-2(e).

In sum, the "statute and accompanying regulations set forth by the Department of Treasury are clear about the prerequisites to maintain an action under Section 7426(h)—and thus the terms by which the Government consents to be sued."  *Shippensburg Urb. Devs.* v. *United States*, 510 F. Supp. 3d 284, 289 (E.D. Pa. 2020).  Under the governing framework, "only an administrative claim for damages will satisfy the exhaustion requirement."  *Marcello* v. *United States*, Civil Action No. RDB-08-2796, 2010 WL 1663994, at *3 (D. Md. Apr. 21, 2010), *aff'd sub nom.*, 414 Fed. Appx. 560 (4th Cir. 2011), *and aff'd sub nom.*, 414 Fed. Appx. 560 (4th Cir. 2011).  For this reason, when analyzing claims for damages under Section 7433, courts have

---

[9]  The applicable regulation requires that an administrative claim "shall be sent in writing to the Area Director, Attn: Compliance Technical Support Manager of the area in which the taxpayer currently resides."  26 C.F.R. § 301.7426-2(d)(1).  This regulation further details all of the information required to be included in the administrative claim.  26 C.F.R. § 301.7426-2(d)(2)(i)-(v).

routinely rejected futility and related arguments designed to avoid the administrative exhaustion requirement.  *E.g.*, *Venen* v. *United States*, 38 F.3d 100, 104 (3d Cir. 1994), *abrogated on other grounds by Hassen* v. *Gov't of Virgin Islands*, 861 F.3d 108 (3d Cir. 2017) (futility); *Williams* v. *United States*, Civil Action No. 97-5820, 1998 WL 537579, at *5, 165 F.3d 30 (Table) (6th Cir. Aug. 7, 1998) (futility); *Chowns Fabrication & Rigging Inc.* v. *United States*, Civil Action No. 5:21-CV-03543, 2022 WL 131376, at *3 (E.D. Pa. Jan. 14, 2022) (substantial compliance); *Marcello*, 2010 WL 1663994, at *4 (futility and constructive exhaustion).[10]

The undisputed facts reflect that prior to initiating this action NQGRG filed a Collection Appeal Request challenging the levy.  ECF No. 70-39.  NQGRG addressed this request to an IRS Revenue Officer and requested that if the levy were not reversed, the Collection Appeal Request be forwarded to the IRS Independent Office of Appeals.  *Id.* at 4.  This action, however, does not comport with the administrative exhaustion requirements of Section 7426.  The implementing regulations mandate that an administrative claim be submitted to an identified office with specified content.  26 C.F.R. § 301.7426-2(d).  NQGRG's failure to comply with these requirements is fatal to its damages claim.

In its defense, NQGRG argues that it was "obvious" that further administrative action would not have resulted in an award of damages had any claim been filed.  ECF No. 75 at 29. That assertion, however, does not relieve NQGRG of compliance with the statutory and

---

[10]  The Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, Title III, Subtitle B, § 3102, 112 Stat. 685 (1998), "added section 7426(h), which authorizes persons who bring wrongful levy actions under section 7426 to sue for damages caused by the reckless or intentional, or negligent, disregard of any provision of the Code, plus costs of the action."  68 Fed. Reg. 14,316-02, at *14317 (March 25, 2003) (Civil Cause of Action for Damages Caused by Unlawful Tax Collection Actions, Including Actions Taken in Violation of Section 362 or 524 of the Bankruptcy Code).  Section 7426's implementing regulations were modeled after the corresponding regulations for Section 7433, *id.*, and therefore cases interpreting 26 C.F.R. § 301.7433 are persuasive authority.

regulatory requirements because the "mere probability of administrative denial is insufficient to waive exhaustion." *Gaines* v. *United States*, 424 F. Supp. 2d 219, 224 (D.D.C. 2006) (internal quotation marks and citation omitted).  Simply put, there is no futility or other exception in the statute or implementing regulations.  Precedent precludes this Court from reading any such exception into the waiver of sovereign immunity limited by specified administrative exhaustion requirements.  *McCarthy* v. *Madigan*, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required.").  The United States' motion for partial summary judgment on the issue of damages is therefore granted.

## III.   Conclusion

In light of the foregoing, it is hereby ORDERED that NQGRG's Renewed Motion for Summary Judgment (ECF No. 67) is denied, the United States' Cross-Motion for Partial Summary Judgment (ECF No. 70) is granted, and the interim motions to seal (ECF Nos. 69 and 71) are denied.  A separate Order follows.

Date:  June 28, 2024                          _____/s/_____
                                             Erin Aslan
                                             United States Magistrate Judge