# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A. | * | |
| | * | |
| **Plaintiff,** | * | |
| v. | * | Civil Action No. EA-22-2129 |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| **Defendant.** | * | |
| | * | |

## MEMORANDUM OPINION

Plaintiff Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. (NQGRG) initiated this action on August 23, 2022, challenging a tax levy by Defendant United States of America and seeking injunctive and monetary relief, damages, and costs pursuant to 26 U.S.C. §§ 7426 and 7430. ECF No. 1. Pending before the Court is NQGRG's motion to reconsider the Court's denial of its renewed motion for summary judgment. ECF No. 89. The motion is fully briefed and no hearing is necessary. ECF Nos. 89, 94, 98; Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, NQGRG's motion is denied.

## I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(b) governs motions to reconsider interlocutory orders. *JTH Tax, Inc.* v. *Aime*, 984 F.3d 284, 289 n.2 (4th Cir. 2021). Rule 54(b) provides, in pertinent part, that "any order or other decision . . . that . . . does not end the action as to any of the claims or parties . . . may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). Denials of summary judgment fall squarely within the category of interlocutory orders encompassed within this rule. *Phoenix* v. *Amonette*, 95 F.4th 852, 856 (4th Cir. 2024). The "basic aim of Rule 54(b) is to give district courts 'flexibility to revise' their rulings 'as the litigation develops and new facts or arguments come to light.'" *Id.* at 857 (quoting *Carlson* v.

*Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)).  Rule 54(b) also affords a district court

discretion to correct a mistake in its application of the law.  *Nadendla* v. *WakeMed*, 24 F.4th 299,

304 (4th Cir. 2022).  This is because the "ultimate responsibility of the federal courts, at all

levels, is to reach the correct judgment under law."  *Id*.  That obligation, however, "may be

tempered at times by concerns of finality and judicial economy."  *American Canoe Ass'n* v.

*Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003).

Accordingly, the Fourth Circuit Court of Appeals "has stressed that the 'discretion'

afforded by Rule 54(b) 'is not limitless.'"  *Phoenix*, 95 F.4th at 856.  A district court's discretion

when deciding a Rule 54(b) motion "is 'subject to the caveat that where litigants have once

battled for the court's decision, they should neither be required, nor without good reason

permitted, to battle for it again.'"  *United States Tobacco Coop. Inc.* v. *Big S. Wholesale of Va.,*

*LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (quoting *Official Comm. of the Unsecured Creditors of*

*Color Tile, Inc.* v. *Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)); *see also*

*Nadendla*, 24 F.4th at 304 ("To be sure, allowing litigants a 'second bite at the apple' via a

motion to reconsider is disfavored.").

The Fourth Circuit has instructed that "a trial court should only reconsider and revise an

earlier ruling in three narrow circumstances: (1) if the trial produces substantially different

evidence; (2) if there is a change in applicable law; or (3) when the court has committed a clear

error resulting in a manifest injustice."  *Bethany Boardwalk Grp. LLC* v. *Everest Sec. Ins. Co.*,

No. 20-2319, 2022 WL 12324609, at *6 (4th Cir. Oct. 21, 2022); *see also Carlson*, 856 F.3d at

325.  With respect to the first circumstance, "a motion to reconsider is not an opportunity for a

losing party to present evidence that it could have presented before the adverse ruling."  *Bethany*

*Boardwalk Grp. LLC*, 2022 WL 12324609, at *6.  The second circumstance requires an actual

change in the applicable law; "it is not sufficient for a party to show that legal precedent could

support an alternative resolution." *Id.* With regard to the third circumstance, clear error does not mean "maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong." *Gunter* v. *Alutiiq Adv. Security Solutions, LLC*, No. 23-1229, 2024 WL 3949262, at *1 (4th Cir. Aug. 27, 2024) (quoting *United States Tobacco Coop. Inc.*, 899 F.3d at 258).

## II.    DISCUSSION[1]

NQGRG presents a plethora of arguments in support of its motion for reconsideration, most of which cluster around the third circumstance in which reconsideration is permitted—when a Court commits clear error. ECF No. 89 at 2.[2] NQGRG also attempts to leverage the second circumstance in which reconsideration is permitted—a change in the applicable law. *Id*. And, as the United States notes in its opposition, NQGRG also relitigates issues that have been resolved and presents arguments not previously advanced. ECF No. 94 at 3, 5–7. Each of NQGRG's arguments are addressed in turn below.

### A.    Clear Error

NQGRG's clear error arguments are grounded in its view that resolution of this case rests on the simple application of Maryland's corporate veil-piercing doctrine. This is not, however, a case in which a creditor seeks to pierce the corporate veil to recover damages from a shareholder, director, or other individual or entity affiliated with a corporation. This is a wrongful levy case that arises out of a tax liability that the United States sought to collect from the taxpayer's

---

[1] Familiarity with the underlying facts and arguments advanced on the parties' summary judgment motions is presumed. *Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.* v. *United States*, Civil Action No. EA-22-2129, 2024 WL 3234000 (D. Md. June 28, 2024); *see also Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.* v. *United States*, Civil Action No. BPG-22-2129, 2023 WL 2837338 (D. Md. Apr. 6, 2023).

[2] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system printed at the top of the cited document.

alleged alter ego.  Correct application of the law in the instant action requires appreciation of this important distinction.  This is because the United States Supreme Court has consistently emphasized, both in the text and substance of its decisions, that the United States as tax collector stands on different footing than an ordinary creditor.  *E.g.*, *United States* v. *National Bank of Com.*, 472 U.S. 713, 727 (1985) ("The Court of Appeals would remit the IRS to the rights only an ordinary creditor would have under state law.  That result 'compare[s] the government to a class of creditors to which it is superior.'") (alteration in original) (quoting *Randall* v. *H. Nakashima & Co.*, 542 F.2d 270, 274 n.8 (5th Cir. 1976)).  Further, resolution of one of the key elements and contested issues in this case—the nexus between the levied property and the taxpayer—"is ultimately a question of federal law," even if "[t]he answer to this federal question . . . largely depends upon state law."  *United States* v. *Craft*, 535 U.S. 274, 278 (2002).  A brief overview of the guiding legal framework is necessary to understand how these principles play out in the context of this case.

      1.    <u>Wrongful Levy Framework</u>

"To prove that a levy is wrongful, (1) a plaintiff must first show some interest in the property to establish standing, (2) the burden then shifts to the IRS to prove a nexus between the property and the taxpayer, and (3) the burden then shifts back to the plaintiff to prove the levy was wrongful, e.g., that the property in fact did not belong to the taxpayer."  *Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 2024 WL 3234000, at *5 (quoting *Oxford Cap. Corp.* v. *United States*, 211 F.3d 280, 283 (5th Cir. 2000)).  At issue here is the second step, *i.e.*, the nexus between the property (the funds in NQGRG's operating account) and the taxpayer (Lehcim Holdings, Inc.).  "[T]he United States may establish the requisite nexus between the levied property and the taxpayer through evidence that a third party holding the property is the taxpayer's alter ego.  *Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 2024 WL 3234000, at *5

(citing *Towe Antique Ford Found.* v. *Internal Revenue Serv.*, 999 F.2d 1387, 1390 (9th Cir. 1993) (collecting cases)).  "Alter ego means 'other self'—where one person or entity acts like, or, for another to the extent that they may be considered identical."  *United States* v. *Scherping*, 187 F.3d 796, 801 (8th Cir. 1999); *see also Prompt Staffing, Inc.* v. *United States*, 321 F. Supp. 3d 1157, 1170 (C.D. Cal. 2018) ("Alter ego focuses on whether the taxpayer's relationship to the title holder allows the taxpayer to retain the benefits of true ownership.").

The Supreme Court has outlined a two-step process that governs the nexus analysis.  The Court must "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property.'"  *Drye* v. *United States*, 528 U.S. 49, 58 (1999).  Importantly, state law determines only whether the taxpayer has an interest in or rights to the property at issue.  It does not determine the federal tax consequences associated with the property or rights to property.  *National Bank of Com.*, 472 U.S. at 722 ("'[O]nce it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the statute], state law is inoperative,' and the tax consequences thenceforth are dictated by federal law.") (alterations in original) (quoting *United States* v. *Bess*, 357 U.S. 51, 56-57 (1958)).

In a series of cases, the Supreme Court has rejected the application of state law that shields property from ordinary creditors as determinative of the federal government's ability enforce tax levies and liens.  For example, in *Bess*, the Court held that the Court of Appeals had erred in deciding that the property at issue (the cash surrender value of an insurance policy) was not subject to a federal tax lien because under New Jersey law such property was protected against liens, whether by either a private creditor or state agency.  357 U.S. at 56-57.  Several decades later, the Court ruled in *National Bank of Commerce* that the Court of Appeals had "misconceive[d] the role properly played by state law in federal tax-collection matters" when it

5

concluded that a federal tax levy was improper based on its "understanding of the Arkansas law of creditors' rights." 472 U.S. at 727. Thus, "the fact[ ] that under Arkansas law [the taxpayer's] creditors . . . could not exercise [the taxpayer's] right of withdrawal in their favor . . . [was] irrelevant." *Id.* Fourteen years later, *Drye* reiterated the principle that state law that removes property from the reach of ordinary creditors does not invalidate an otherwise enforceable federal tax lien. 528 U.S. at 53, 58-59. On this basis, the Supreme Court affirmed the Circuit Court's holding "that the state law consequences of Drye's right to his mother's estate, namely, the legal fiction that is created through Drye's disclaimer under [Arkansas law] is of no concern to the operation of the federal tax law." *Drye Fam. 1995 Tr.* v. *United States*, 152 F.3d 892, 898 (8th Cir. 1998), *aff'd sub nom.*, 528 U.S. 49. Finally, in *Craft*, the Court concluded that a taxpayer's "interest in the entireties property constituted 'property' or 'rights to property' for the purposes of the federal tax lien statute" even though "Michigan makes a different choice with respect to state law creditors." 535 U.S. at 288.

Two observations flow from this line of cases. First, "[i]n looking to state law, we must be careful to consider the substance of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them." *Craft*, 535 U.S. at 279. Second, "the [Internal Revenue] Code and interpretive case law place under federal, not state, control the ultimate issue whether a taxpayer has a beneficial interest in any property subject to levy for unpaid federal taxes." *Drye*, 528 U.S. at 57. It is therefore evident that state-created legal fictions that protect assets from creditors will not determine the federal government's ability to reach those assets in satisfaction of federal tax liability.

2.    <u>Application to this Case</u>

Here, the United States advances an alter ego nexus argument. As noted in the prior opinion, alter ego is a theory of liability that appears in many different areas of Maryland law.

*Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 2024 WL 3234000, at *7 (collecting cases). NQGRG contends that the first step of the nexus analysis is governed by *Hildreth* v. *Tidewater Equip Co.*, 378 Md. 724 (2003), a decision of Maryland's highest court that synthesizes Maryland veil-piercing case law and delineates the circumstances in which courts may disregard the corporate form. ECF No. 89 at 4. Yet, NQGRG can point to no case that holds that *Hildreth*—a breach of contract case in which the plaintiff sought to recover from a corporation's shareholder—governs the first step of the *Drye* analysis in an alter ego wrongful levy case. Indeed, neither party can point to any controlling authority that governs the determination of property interests in the factual scenario alleged in this case. As the United States Tax Court has ruminated:

> Before we can decide whether these four corporations were [the taxpayer's] alter egos, we logically must decide what alter-ego standard to use. This makes us like penguins. As graceful and sleek as they may be when swimming, penguins become awkward when they climb onto rocky land. But to get to decisions in these cases, we ourselves must leave the comfortable ocean of tax and scramble to the stony ground of a poorly charted and rarely visited corner of the law.

*Jenkins* v. *Commissioner of Internal Revenue*, 121 T.C.M. (CCH) 1418 (Tax Ct. 2021).

After a careful review of case law, the undersigned observed that although the Fourth Circuit has not yet addressed this issue, "the clear majority of other Circuit Courts of Appeals have approved of the application of state law to determine whether a third party is a taxpayer's alter ego in the context of a tax levy." *Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 2024 WL 3234000, at *6 (collecting cases). In so doing, courts typically apply veil-piercing law of the forum state. *E.g.*, *Oxford Cap. Corp.*, 211 F.3d at 284 ("An alter ego theory focuses more on those facts associated with a 'piercing the corporate veil' analysis."). Thus, the undersigned turned to *Hildreth* and related cases for guidance.

"Under Maryland law, 'a corporate entity may be disregarded when necessary to prevent fraud or to enforce a paramount equity.'" *Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 2024 WL 3234000, at *7 (quoting *Schlossberg* v. *Bell Builders Remodeling, Inc.*, 441 Md. 671, 672 (2015)). *Hildreth* explains that the alter ego doctrine is "subsumed . . . in the notion of paramount equity." 378 Md. at 739. This "doctrine has been applied 'where the corporate entity has been used as a subterfuge and to observe [the entity's corporate status] would work an injustice.'" *Holder* v. *Estes*, No. 61, Sept. Term, 2023, 2024 WL 1975249, at *17 n.32 (App. Ct. Md. May 3, 2024) (alteration in original) (quoting *Hildreth*, 378 Md. at 735). *Hildreth* sets forth a series of factors that guide the alter ego analysis that assess financial and structural aspects of a corporation, such as capitalization, solvency, comingling of assets, observation of corporate formalities, functionality of officers and directors, and maintenance of corporate records. 378 Md. at 735. As noted in the prior decision, application of the alter ego doctrine is fact-driven and thus often ill-suited for resolution on summary judgment. *Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 2024 WL 3234000, at *8.

Nevertheless, NQGRG argues that the Court committed clear error in denying its motion for summary judgment because Maryland law permits piercing the corporate veil to access shareholder assets only and it is undisputed that NQGRG is not a Lehcim Holdings, Inc. shareholder. ECF Nos. 67-1 at 21–23; 75 at 6–8, 10–13; 89 at 4–8. This argument was considered and rejected in the prior opinion, and it fares no better on reconsideration. *Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 2024 WL 3234000, at *9-11. First, NQGRG cannot identify controlling case law that supports this assertion. ECF No. 94-1 at 5 ("I don't know of a case that says like this one that it only applies to shareholders."). This is a far cry from the "dead wrong" standard that governs motions to reconsider based on clear error. On reconsideration NQGRG continues to press its same argument that *Hildreth* establishes the

purported ownership prerequisite for alter ego liability, which the Court previously rejected. Importantly, "a motion for reconsideration is not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request." *Lynn* v. *Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 620 (D. Md. 2013) (internal quotation marks omitted).

Second, the additional authority upon which NQGRG relies does not stand for the proposition asserted. NQGRG now points to a recent decision of this Court, *Timilon Corp.* v. *Empowerment Just. Ctr. Corp.*, 738 F. Supp. 3d 669 (D. Md. 2024), which it contends "confirmed" that the alter ego doctrine "requires pleading sufficient to show substantial ownership of the stock," ECF No. 89 at 3 (bold and italics removed). In actuality, *Timilon Corp* makes no mention of shareholders, stockholders, or ownership other than a block quote of another decision of this Court that, in turn, quotes from *Hildreth* and other veil-piercing decisions. *Timilon Corp.*, 738 F. Supp. 3d at 688 (quoting *Fidelity & Guar. Life Ins. Co.* v. *United Advisory Grp., Inc.*, Civil Action No. WDQ-13-0040, 2016 WL 158512, at *3-4 (D. Md. Jan. 12, 2016)). Further, the first line of this same block quote confirms the "stony ground" of this legal terrain, noting that Maryland's highest court "has declined to outline the precise circumstances that would warrant piercing the corporate veil to enforce a paramount equity." *Timilon Corp.*, 738 F. Supp. 3d at 688 (quoting *Fidelity & Guar. Life Ins. Co.*, 2016 WL 158512, at *3). The actual holding of this case with respect to veil-piercing is limited to the adequacy of pleadings. *Id*. at 689 ("Because Timilon has not plausibly alleged that piercing the corporate veil is necessary to prevent fraud or to enforce a paramount equity, it has failed to plead facts sufficient to justify its allegation that Dr. Abrams and Dr. Williams are personally liable on its breach of contract theory.").

It is difficult to reconcile NQGRG's shareholder argument with Supreme Court precedent that specifically acknowledges that a taxpayer need not have full ownership in the levied property. *National Bank of Com.*, 472 U.S. at 730 (noting that "collection provisions plainly contemplate that a taxpayer's interest in property may be less than full ownership" because "[t]he tax lien attaches not only to 'property' but also to 'rights to property'"). More fundamentally, in advancing this argument, NQGRG appears to misapprehend the role of state law in the nexus analysis. As set forth above, *see supra* II.A.1., at the first step of the *Drye* analysis the Court looks to state law to determine if the taxpayer had property interest or rights to property in the levied asset. To do so, the factfinder will assess at trial whether the United States has presented sufficient evidence to establish that NQGRG and Lehcim Holdings, Inc. were alter egos, guided by the multi-factor analysis set forth in *Hildreth* and the understanding that Maryland permits veil piercing only in cases of fraud or paramount equity. If the factfinder so concludes, then under the second step of the *Drye* analysis, federal law will determine the tax consequences. As noted, the fact that state law may shield certain assets from ordinary creditors does not dictate the recoverability of a federal tax debt. Suffice to say, NQGRG has not identified controlling authority to establish clear error on this basis.

NQGRG advances two additional arguments in support of clear error, both of which are unavailing. First, it contends that the prior decision conflated two "related but different bases for disregarding the corporate entity: (1) use of a corporation for the perpetration of a fraud and (2) the alter ego doctrine." ECF No. 89 at 5. The prior opinion correctly identified Maryland alter ego law as articulated in *Hildreth* and related decisions. *Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 2024 WL 3234000, at *7–8. The more generalized discussion of equitable theories of relief addressed NQGRG's shareholder argument in which it attempted to narrow the applicability of veil-piercing. *Id.* at *9.

Second, NQGRG argues—for the first time—that the alleged actions of Issac Neuberger and Hillel Tendler, who are both officers and/or directors of Lehcim Holdings, Inc. and NQGRG shareholders, cannot trigger liability for NQGRG. ECF No. 89 at 6–7; *see also* ECF No. 98 at 7–9. This argument is untimely. *Coulibaly* v. *J.P. Morgan Chase Bank, N.A.*, Civil Action No. DKC 10-3517, 2011 WL 6837656, at *2 (D. Md. Dec. 28, 2011), *aff'd sub nom.*, 526 Fed. Appx. 255 (4th Cir. 2013) (introduction of new arguments not raised previously are not appropriate grounds for reconsideration). Even so, this contention rests on disputed material facts and thus cannot supply a basis for reconsidering the denial of summary judgment. *Compare* ECF No. 89 at 6–7 *with* ECF No. 94 at 5–6.

### B.    Change in the Applicable Law

NQGRG attempts to leverage the Supreme Court's decision in *Loper Bright Enterprises* v. *Raimondo*, 603 U.S. 369 (2024), to advance a procedural challenge to the levy itself. ECF Nos. 89 at 10–11; 98 at 10–11. In essence, NQGRG contends that the levy is invalid because it was not afforded any pre-levy rights to contest its validity.[3] ECF No. 89 at 10–11. This appears to be a variation of NQGRG's earlier contention that the United States should be "judicially estopped" from arguing that NQGRG and Lehcim were alter egos because it would not allow NQGRG access to procedures and information that are reserved for taxpayers. ECF No. 67-1 at 33–35. Whether NQGRG attempts to relitigate an argument from its prior motion or advance a new argument related to alleged procedural defects, neither is an appropriate vehicle for reconsideration. *MBR Constr. Servs., Inc.* v. *Liberty Mut. Ins. Co.*, Civil Action No. GJH-15-14, 2016 WL 3190650, at *1 (D. Md. June 6, 2016) ("Importantly, a motion to reconsider is not proper where it only asks the Court to rethink its prior decision, or presents a better or more

---

[3] As set forth in the prior opinion, "NQGRG filed a Collection Appeal Request challenging the levy," but did not fully exhaust its administrative remedies before filing this action. *Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 2024 WL 3234000, at *13.

compelling argument that the party could have presented in the original briefs on the matter.'") (internal quotation marks and citation omitted). Even so, the change in law *Loper Bright Enterprises* effectuated has no bearing on this case. That decision overruled *Chevron, U.S.A., Inc.* v. *Natural Res. Def. Council*, *Inc*., 467 U.S. 837 (1984), and addressed the degree of deference due to agency interpretations of statutes they administer. Yet, no part of the prior decision denying summary judgment turned on statutory interpretation. Neither party asserted that any of the statutes implicated in this case are silent or ambiguous, and the Court did not grant deference, *Chevron* or otherwise, to the United States' interpretation of any such statutes. *Loper Bright Enterprises* is therefore inapposite.

Furthermore, NQGRG's argument that it was entitled to a taxpayer's pre-levy procedural protections does not appear to be supported by the applicable federal regulation or interpretive case law. *See* 26 C.F.R. § 301.6320-1(b)(1) (providing that a taxpayer is entitled to a Collection Due Process hearing); 26 C.F.R. § 301.6320-1(b)(2)(Q&A–B5) (explaining that a nominee or person holding the property of the taxpayer is not entitled to a Collection Due Process or equivalent hearing, although other administrative procedures are available); *Iames* v. *Commissioner of Internal Revenue*, 850 F.3d 160, 162 (4th Cir. 2017) (outlining the statutory framework for Collection Due Process hearings set forth in 26 U.S.C. § 6330 and identifying that this procedural safeguard is available for taxpayers); *911 Mgmt., LLC* v. *United States*, 657 F. Supp. 2d 1186, 1215 (D. Or. 2009) (finding no legal basis to support the claim the Internal Revenue Service was required to provide notice of the tax deficiency and intent to levy to a third party, who was the taxpayer's nominee or alter ego); *cf. Tompkins & McMaster* v. *United States*, Civil Action No. 95-1882, 1996 WL 389483, at *2, 91 F.3d 134 (Table) (4th Cir. July 12, 1996) ("A wrongful levy action is the exclusive remedy available to parties (other than the taxpayer) claiming an interest in property upon which the IRS has levied.").

12

C.    **Renewed Challenge to the Basis for the Levy**

Finally, NQGRG renews its argument that the United States had an insufficient basis to levy funds in NQGRG's operating account at the time of the levy. ECF Nos. 67-1 at 30–32; 75 at 13–17; 89 at 10; 98 at 10–11. Standing alone, this is an inadequate basis for reconsideration. *Lynn*, 953 F. Supp. 2d at 620. As noted in the prior opinion—and as is evident from a review of the parties' filings in connection with the pending motion—resolution of this argument involves disputed issues of fact, which precludes summary judgment. *Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 2024 WL 3234000, at *7-8.

NQGRG points to no change in law or authority compelling a finding of clear error. The only authority on which NQGRG relies—which was also cited in support of its summary judgment motion—is a concurring opinion from the Fifth Circuit Court of Appeals, which notes that the "Supreme Court has never directly addressed the issue of whether the existence of [ ] probable cause is necessary before the IRS may levy upon property." *Oxford Cap. Corp.*, 211 F.3d at 286-287 (Dennis, J., concurring). The concurrence also acknowledges that a wrongful levy action, such as this one, "is the exclusive remedy of a third person whose property has been seized." *Id.* at 289. NQGRG has chosen to challenge the levy through this very remedy and its claim will be adjudicated in due course.

It is unclear what role, if any, an assessment of probable cause at the time of the levy plays during a trial on the merits of a wrongful levy claim. The *Oxford Cap. Corp.* concurrence does not have broad support in case law. *E.g.*, *Scoville* v. *United States*, 250 F.3d 1198, 1201 n.3 (8th Cir. 2001) (declining to decide that the government must prove that it had probable cause at the time of the levy); *Steven N.S. Cheung, Inc.* v. *United States*, No. C04-2050RSM, 2006 WL 2473487, at *5 (W.D. Wash. Aug. 28, 2006) (declining to adopt the standard set forth in the *Oxford Capital Corp.* concurrence). Other decisions have noted that the "government's burden

13

of establishing a basis for its summary seizure will vary, depending on the type of relief sought and the timing of the judicial inquiry," *Valley Fin., Inc.* v. *United States*, 629 F.2d 162, 171 n.19 (D.C. Cir. 1980).  Thus, while a "showing of probable cause . . . can rebuff immediate challenges to the propriety of a levy . . . stronger support . . . is needed where . . . the basis for government action is explored in depth during discovery, and the trial court is rendering its final judgment." *Id.*; *see also Steven N.S. Cheung, Inc.*, 2006 WL 2473487, at *5 (deciding to "consider all of the evidence developed since defendant levied plaintiff's accounts, and which [wa]s properly before th[e] Court").  At this juncture, it suffices to say that such an argument does not call for reconsideration of the Court's denial of summary judgment.

## III.    CONCLUSION

In light of the foregoing, it is hereby ORDERED that NQGRG's motion for reconsideration (ECF No. 89) is DENIED.  A separate Order follows.

Date:  February 28, 2025

_____/s/_____
Erin Aslan
United States Magistrate Judge